## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIERA WASHINGTON,<br><br>                    Plaintiff,<br><br>        -against-<br><br>WALGREENS; WALGREENS CO.; DUANE READE; DUANE READE INC.; DUANE READE INTERNATIONAL, LLC; and Individually and Jointly, LOUIS DOE (Last Name Unknown; Plaintiff's Former Supervisor); DOE GERMAINE (First Name Unknown; Plaintiff's Former Supervisor); VIVIAN DOE (Last Name Unknown; Human Resources); and CRYSTAL BECKRUM.<br><br>                    Defendants. | Civil Action No.  17-cv-2393<br>          (ECF Case)<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1.      This is an employment case about Defendant employers Walgreens; Walgreens

Co.; Duane Reade; Duane Reade Inc.; Duane Reade International, LLC and their supervisors,

including, but not limited to, Defendants Louis Doe (Last Name Unknown); Doe Germaine (First

Name Unknown); Vivian Doe (Last Name Unknown); and Crystal Beckrum, discriminating

against, harassing and retaliating against Plaintiff employee, Ciera Washington, on a regular

basis because of the Plaintiff's African American race, color, ethnicity, national origin, sex,

gender, disability, requests for accommodations, medical leave(s), and legally protected

complaints. Defendants' unlawful abuse included, but was not limited to, calling Plaintiff a

**"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous

conditions at work; negligently causing Plaintiff to be violently assaulted and robbed at work;

requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's non-African American co-worker; suspending Plaintiff the same day that she returned to work after her medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

2.      Plaintiff's claims include, but are not limited to, harassment, discrimination, hostile work environment, and retaliation in violation of Section 1981, 42 U.S.C.A. § 1981, as amended by the Civil Rights Act of 1991 (collectively, "Section 1981"); the Rehabilitation Act, 29 U.S.C.A. § 791, *et seq.*, as amended ("Rehabilitation Act"); the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (NYCHRL"). Plaintiff's claims also include failure to pay earned wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the New York Labor Laws ("NYLL") Art. 19 §§ 650 *et seq.*.

3.      These claims are brought against Plaintiff's former employers Walgreens; Walgreens Co.; Duane Reade; Duane Reade Inc.; Duane Reade International, LLC (collectively, "Defendant Companies"); and against Plaintiff's former supervisors Louis Doe (Last Name Unknown) (hereinafter, "Defendant Louis"); Doe Germaine (First Name Unknown) (hereinafter, "Defendant Germaine"); Vivian Doe (Last Name Unknown) (hereinafter, "Defendant Vivian"); and Crystal Beckrum (hereinafter, "Defendant Beckrum") (collectively, "Defendants").

## PARTIES

4.      Plaintiff, Ciera Washington, is a natural person who, at all times relevant to this action, resided in Bronx County, New York.

5.      Defendant Walgreens is a domestic business entity.

2

6.      Defendant Walgreens Co. is a foreign business corporation, duly authorized to conduct business in New York State.

7.      Defendant Duane Reade is a domestic business entity.

8.      Defendant Duane Reade Inc. is a foreign business corporation, duly authorized to conduct business in New York State.

9.      Defendant Duane Reade International, LLC is a foreign limited liability corporation, duly authorized to conduct business in New York State.

10.     Defendant Louis is a natural person who, at all times relevant to this action, upon information and belief, resided in Bronx County, New York.

11.     Defendant Germaine is a natural person who, at all times relevant to this action, upon information and belief, resided in New York County, New York.

12.     Defendant Vivian is a natural person who, at all times relevant to this action, upon information and belief, resided in New York County, New York.

13.     Defendant Beckrum is a natural person who, at all times relevant to this action, upon information and belief, resided in New York County, New York.

14.     At all times relevant to this action, Defendant Companies engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

15.     At all times relevant to this action, upon information and belief, Defendant Companies had annual gross operating revenues in excess of $500,000.00.

16.     At all times relevant to this action, Defendant Company(ies) received some form of federal funding and/or assistance.

3

17.     For example, in 2015, Defendant Walgreen Co. received approximately $847,000 in federal funding.

18.     Plaintiff seeks to hold Defendants liable under various legal doctrines, including without limitation, vicarious liability, strict liability, respondeat superior, aiding and abetting liability and/or other grounds.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over the federal claims asserted herein in that they arise out of the laws of the United States.  *See* 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

20.     This Court has supplemental jurisdiction over Plaintiff's New York State and New York City law claims pursuant to 28 U.S.C. § 1367.

21.     Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

22.     On or around August 12, 2016, Plaintiff filed charges of discrimination, harassment and retaliation pursuant to Federal Law, including the Americans with Disabilities Act ("ADA") and Title VII, against Defendant Companies (hereinafter, the "Charges") with the United States Equal Employment Opportunity Commission ("EEOC").

23.     Plaintiff's Charges were also dually filed with the New York Human Rights Division.

24.     The EEOC notified Plaintiff that they are back-logged with cases and that they are still investigating Plaintiff's Charges.

25.     The EEOC has not yet provided Plaintiff with Defendant Companies' response(s) to Plaintiff's Charges.

26.     The EEOC has also not provided Plaintiff with a Notice of Right To Sue with respect to Plaintiff's Charges filed pursuant to the ADA and to Title VII.

27.     Accordingly, the herein Complaint does not include Plaintiff's Charges pursuant to the ADA and Title VII.

28.     Plaintiff reserves the right to file Charges in Federal Court pursuant to the ADA and Title VII upon receipt of a Notice of Right To Sue from the EEOC.

## RELEVANT FACTS

29.     Plaintiff, Ciera Washington, is an African American woman.

30.     Ms. Washington has a medium to dark-brown complexion.

31.     Defendant Companies hired Ms. Washington on or around June, 2015.

32.     Defendant Companies hired Ms. Washington to work as a store supervisor.

33.     Ms. Washington's salary was approximately $11/hour.

34.     Plaintiff worked over eighty (80) hours in a calendar year.

35.     Defendant Companies hired Ms. Washington to work at Defendant Companies' store #14489, located at 137th Street and Broadway.

36.     Defendant Louis was one of Ms. Washington's supervisors.

37.     On or around Ms. Washington's first day of employment, she notified Defendant Louis that she could not work on Tuesdays and Thursdays because she attended school on those days.

38.     At that time, Ms. Washington was a part-time student at Mercy College.

39.     Ms. Washington was studying education to become a teacher.

40.     Defendant Louis said that was fine.

41.     Defendant Louis scheduled Ms. Washington to work on non-school days.

42.     On or around September, 2015, Ms. Washington walked into Defendant Companies' office.

43.     Defendant Louis was eating.

44.     Ms. Washington asked Defendant Louis what he was eating.

45.     Defendant Louis responded that he was eating a type of Spanish food.

46.     Defendant Louis stated **"You Morenas don't know anything about this."**

47.     The term **"Morenas"** is Spanish for **"Black Girls/Women."**

48.     Defendant Louis stated **"You don't eat this type of food," meaning that Black girls/women, like Ms. Washington, do not eat Spanish food**.

49.     Ms. Washington responded that she does eat Spanish food.

50.     Defendant Louis said that Ms. Washington **does not know this type of food because it is homemade, not from a store** – assuming that because Ms. Washington is not of Spanish decent, she would have access to store bought Spanish cuisine only.

51.     Ms. Washington complained about Defendant Louis' racist, sexist comments.

52.     Ms. Washington maintained a good work performance record.

53.     On or around October, 2015, Defendant Companies transferred Ms. Washington to their store location on 568 West 125th Street.

54.     Ms. Washington's salary was still approximately $11/hour.

55.     Defendant Germaine was one of Ms. Washington's supervisors.

56.     Defendant Beckrum was one of Ms. Washington's supervisors.

57.     On or around the first week in November, 2015, Ms. Washington told Defendant Beckrum that she could not work on Tuesdays and Thursdays.

58.     Defendant Beckrum said that was fine.

59.     Defendant Beckrum told Ms. Washington that Defendant Louis had already notified Defendant Beckrum that Ms. Washington should not be scheduled to work on school days.

60.     Defendant Beckrum said that was fine because the employee work schedules were very flexible.

61.     Approximately 35 people worked in Defendant Companies' 568 West 125th Street location.

62.     From those approximately 35 workers, approximately 4-5 workers were African American.

63.     The majority of the approximately 35 workers were White and/or fair-skinned and/or were of Hispanic descent.

64.     Defendant Louis is White and/or fair-skinned.

65.     Defendant Louis is of Hispanic descent.

66.     Defendant Beckrum is White and/or fair-skinned.

67.     Defendant Beckrum is of Hispanic descent.

68.     On or around October, 2015, there were also approximately 5 supervisors in Defendant Companies' 568 West 125th Street location.

69.     On or around October, 2015, of the approximately 5 supervisors in Defendant Companies' 568 West 125th Street location, 2 were African-American/Black and 3 were Hispanic.

70.    On or around November, 2015, there was a supervisor meeting

71.    Ms. Washington was a supervisor.

72.    Ms. Washington was not notified of the meeting.

73.    Ms. Washington was going into Defendant Companies' back office to retrieve her purse.

74.    Ms. Washington inadvertently walked in on the supervisor meeting.

75.    The 3 Hispanic supervisors were in the office having a meeting together.

76.    Defendant Beckrum was one of the supervisors present in the meeting.

77.    Jeffrey (last name unknown) (hereinafter, "Supervisor Jeffrey") was one of the supervisors present in the meeting.

78.    Supervisor Jeffrey is White and/or fair-skinned.

79.    Supervisor Jeffrey is of Hispanic descent.

80.    Defendant Louis was one of the supervisors present in the meeting.

81.    Another supervisor, Tyrone (last name unknown) (hereinafter, "Supervisor Tyrone"), was not present in the meeting.

82.    Supervisor Tyrone is Black/African-American.

83.    Ms. Washington walked in and asked what the purpose of the supervisor meeting was.

84.    The supervisors stopped speaking with each other.

85.    The supervisors told Ms. Washington that they were having a meeting.

86.    The supervisors told Ms. Washington that the supervisor meeting did not require Ms. Washington's involvement.

87.    Ms. Washington left the meeting.

88.     After Ms. Washington left the meeting, a co-worker told Ms. Washington that the supervisors had been talking about Ms. Washington during the meeting.

89.     The co-walker stated that he had walked into the room and heard the supervisors saying that the **"Morena" with the black sweater was trying to take over**.

90.     That day, Ms. Washington had been wearing a black sweater.

91.     On or around a couple days after the meeting, Defendant Beckrum said that there were going to be a lot of changes in the workplace.

92.     Defendants changed Ms. Washington's work schedule.

93.     Before the schedule change, Ms. Washington worked Sundays, Mondays, Wednesdays and Fridays, and had school on Tuesdays and Thursdays.

94.     On the new schedule, Ms. Washington was scheduled to work Mondays through Fridays.

95.     Ms. Washington complained about Defendants' discriminatory and retaliatory activities.

96.     Ms. Washington also reminded Defendant Beckrum that she could not work on the days that Ms. Washington had school.

97.     Defendant Beckrum said that Ms. Washington had to work on her school days.

98.     Ms. Washington stopped attending school, so that she could continue to work for Defendants because Ms. Washington needed the income.

99.     Upon information and belief, other non-African American employees were scheduled to work on non-school days.

100.    Upon information and belief, Defendants accommodated the school schedules of other non-African American workers.

101. Defendant Companies' 568 West 125th Street store was located in a relatively high crime area.

102. Defendant Companies' 568 West 125th Street store was also very large relative to other stores.

103. During Ms. Washington's employment, Defendant Companies' 568 West 125th Street store had front and back door entrances/exits that were at opposite ends of the store.

104. Therefore, opening the store alone required that a person open one of the entrances, then leave that entrance unattended while the person opened the other entrance at the other end of the store.

105. Opening Defendant Companies' 568 West 125th Street store alone also required that the one person open and count the contents of the Defendants' money safe and prepare the cash registers while one or both of the store entrances were open for any member of the general public to enter the store.

106. Upon information and belief, at some time during Ms. Washington's employment, Defendant Companies' 568 West 125th Street store had a policy that at least 2 supervisors/workers be scheduled to open the store together.

107. Upon information and belief, Defendant Companies' 568 West 125th Street store had a policy that at least 2 supervisors/workers be scheduled to open the store together, in part, to avoid dangerous situations from occurring.

108. Ms. Washington opened Defendant Companies' 568 West 125th Street store alone on at least 3-5 occasions.

109.    Upon information and belief, non-African American employees and/or employees of Hispanic descent in Defendant Companies' 568 West 125th Street store were not scheduled to open the store alone on at least 3-5 occasions during Ms. Washington's employment.

110.    For example, Supervisor Jeffrey opened the store with worker Brent Mosses on at least 3-5 occasions during Ms. Washington's employment.

111.    Defendant Beckrum opened the store with worker Josh (last name unknown) on at least 3-5 occasions during Ms. Washington's employment.

112.    Defendant Louis opened the store with employee Julie (last name unknown) on at least 3-5 occasions during Ms. Washington's employment.

113.    On or around November, 2015, Ms. Washington was scheduled to begin working at approximately 6:30am.

114.    Ms. Washington was scheduled to open Defendant Companies' 568 West 125th Street store.

115.    On that day (i.e., on or around November, 2015), Ms. Washington arrived at work at approximately 6:15am for her 6:30am shift.

116.    Ms. Washington was the only employee who opened Defendant Companies' 568 West 125th Street store that day.

117.    Ms. Washington completed her opening tasks, including, but not limited to, unlocking the store doors and unlocking the store gates.

118.    Ms. Washington was going to walk into the back office to count the money in the store's safe.

119.    Ms. Washington hesitated because there was no one else in the store.

120.     Ms. Washington did not want to go into the back office to count the safe yet because that would leave the entire store unattended.

121.     A man came into Defendant Companies' 568 West 125th Street store.

122.     Ms. Washington heard items falling off the store shelf.

123.     Ms. Washington found out that the man was stealing from the store.

124.     Ms. Washington told the man that he cannot steal from the store.

125.     The man said that he was homeless.

126.     The man said that he was either going to take the items voluntarily or he was going to take the items by force; i.e., physically assaulting Ms. Washington.

127.     The man then stole items and left the store.

128.     Ms. Washington called Defendant Beckrum immediately.

129.     Ms. Washington again complained.

130.     Defendant Beckrum told Ms. Washington that she would not be scheduled to open Defendant Companies' 568 West 125th Street store alone again.

131.     Defendant Beckrum confirmed that such potential danger was the reason that workers were not supposed to open Defendant Companies' 568 West 125th Street store alone.

132.     On or around December, 2015, Ms. Washington walked into Defendant Companies' 568 West 125th Street store at approximately 7:15am.

133.     Ms. Washington was scheduled to begin working at approximately 9am on that day.

134.     Employee Julie (last name unknown) asked Defendant Beckrum what supervisors were working on that day.

12

135.   Defendant Beckrum responded, **"Ciera, you know I can't stand that Black Bitch!"**

136.   At that time, Ms. Washington was in a products isle near the register where they were speaking.

137.   Ms. Washington heard Defendant Beckrum's racist, sexist comment.

138.   On or around December, 2015, Ms. Washington was in Defendant Companies' 568 West 125th Street store office.

139.   Ms. Washington was completing work related documents.

140.   Defendant Beckrum was on the speaker phone with Defendant Louis.

141.   Upon information and belief, Defendant Louis did not know that Ms. Washington was also in the office.

142.   Ms. Washington heard Defendant Louis say **"Where's the Morena at?"**

143.   Ms. Washington heard Defendant Louis say **"where's your boss at, the Morena?"**

144.   Defendant Beckrum turned off the speaker phone.

145.   Defendant Louis was still speaking loudly.

146.   Ms. Washington heard Defendant Louis say **"Did the Morena come to work today?"**

147.   Ms. Washington heard Defendant Louis ay **"Is she still bossing you around?"**

148.   On or around beginning of December, 2015, Ms. Washington was wearing a black sweater.

149.   When Ms. Washington walked into Defendant Companies' 568 West 125th Street store, Supervisor Jeffrey told Ms. Washington **"you are as Black as your sweater!"**

150.    Supervisor Jeffrey started laughing at Ms. Washington.

151.    Ms. Washington complained.

152.    On or around mid-December, 2015, Ms. Washington walked into the office to clock in in the beginning of her work shift.

153.    Defendant Beckrum saw a tattoo on Ms. Washington's hand and arm.

154.    Defendant Beckrum said **"you should have gotten color shaded in your tattoo because your skin is blacker than your tattoo."**

155.    Defendant Beckrum said **"You can't see your tattoo because your skin is too Black!"**

156.    Defendants' discriminatory, harassing and retaliatory activities further escalated after Ms. Washington's legally protected complaints.

157.    Defendants also continued to schedule Ms. Washington to open the store alone.

158.    On December 16, 2015, Ms. Washington arrived at work at approximately 6:15am for her 6:30am shift.

159.    Ms. Washington discovered that she had been scheduled to open Defendant Companies' 568 West 125th Street store alone.

160.    That day (i.e., on or around December 16, 2015), the next employee was not scheduled to work in Defendant Companies' 568 West 125th Street store until approximately 8am.

161.    Ms. Washington completed her opening tasks, including unlocking the store doors and unlocking the store gates.

162.    When Ms. Washington opened the gates, a man pushed Ms. Washington into the door and closed the door behind him.

14

163.    The man put a gun to Ms. Washington's head and ordered Ms. Washington to disable the store alarm.

164.    After Ms. Washington disabled the alarm, the man violently pistol-whipped Ms. Washington, punching Ms. Washington in the face with his gun.

165.    The man fractured Ms. Washington's jaw and the left side of Ms. Washington's face.

166.    The man kept pushing Ms. Washington to open the safe in the back of the office.

167.    When they entered the back office, the man punched Ms. Washington in the face with his pistol again, causing Ms. Washington to fall over the office chair.

168.    Ms. Washington fell on the floor and was stumbling to get up.

169.    The man ordered Ms. Washington "Bitch, open the safe!"

170.    The man punched Ms. Washington across the face with his gun again, ordering her to open the safe.

171.    The man stole money then ordered Ms. Washington to give him her identification card.

172.    Ms. Washington gave the man her driver's license and the man left the store.

173.    Ms. Washington called the police.

174.    Ms. Washington also called Defendant Companies' District Manager, Robert (last name unknown) (hereinafter, "DM Robert").

175.    DM Robert did not respond to Ms. Washington's call or voice mail message.

176.    There was no security person working in Defendant Companies' 568 West 125th Street store location on or around December 16, 2015 during the time when the man was assaulting Ms. Washington and robbing Defendant Companies' store.

177.    There was no security person working in Defendant Companies' 568 West 125th Street store location on or around November, 2015, during the time when the homeless man threatened Ms. Washington and stole items from Defendant Companies' store.

178.    Upon information and belief, Defendants scheduled security guards to work in Defendant Companies' 568 West 125th Street store on at least 5-10 occasions during the time when non-African American employees and/or Hispanic employees were scheduled to open Defendant Companies' 568 West 125th Street store in 2015.

179.    Ms. Washington was hospitalized at Mount Sinai hospital.

180.    Ms. Washington suffered a fractured jaw and the left side of her face was also fractured.

181.    Ms. Washington had swelling in her brain.

182.    Ms. Washington also had a sprained ankle.

183.    The doctor at Mount Sinai told Ms. Washington to not go back to work for at least 7 days.

184.    The doctor told Ms. Washington to see her primary care physician before she tried to return to work.

185.    The Mount Sinai doctor also gave Ms. Washington a note stating that she could not return to work for at least 7 days.

186.    Defendants were also notified.

187.    On or around December 19, 2015, Defendant Germaine called Ms. Washington on the telephone.

188.    Defendant Germaine asked Ms. Washington when she was going to return to work.

189.    Ms. Washington told Defendant Germaine that her face was still severely injured.

190.    Ms. Washington told Defendant Germaine that the doctor told her to not return to work yet.

191.    Defendant Germaine contacted Ms. Washington on at least 5 occasions during her medical leave.

192.    Defendant Germaine scrutinized when Ms. Washington would be returning to work.

193.    On or around December 20, 2015, Defendant Louis called Ms. Washington during her medical leave.

194.    Defendant Louis asked Ms. Washington when she was going to return to work.

195.    Ms. Washington told Defendant Louis that her face was still severely injured.

196.    Ms. Washington told Defendant Louis that the doctor told her to not return to work yet.

197.    Defendant Louis contacted Ms. Washington on at least 5 occasions during her medical leave.

198.    Defendant Louis scrutinized when Ms. Washington would be returning to work.

199.    Defendant Louis told Ms. Washington to return to work, despite doctors' orders that she not return to work yet.

200.    Ms. Washington told Defendant Louis that her doctor had not yet cleared her to return to work.

201.    Ms. Washington told Defendant Louis that she had an appointment to see her doctor on or around January 5, 2016.

202.    Upon information and belief, on or around January 5, 2016 was the soonest date that Ms. Washington's doctor was available to meet with her.

203.    Defendant Louis told Ms. Washington to return to work.

204.    Defendant Louis told Ms. Washington that Defendant Companies did not need to have her doctor's clearance note before she returned to work.

205.    Defendant Louis also told Ms. Washington to not worry about getting a clearance from her primary care physician.

206.    On or around December 27, 2015, Ms. Washington returned to work as Defendant Louis had instructed.

207.    Ms. Washington saw Defendant Louis waiting at the front door of Defendant Companies' 568 West 125th Street store location.

208.    Ms. Washington gave Defendant Louis the note from the Mount Sinai doctor stating that she could not return to work for at least 7 days.

209.    Defendant Louis brought Ms. Washington to the back office in Defendant Companies' 568 West 125th Street store location.

210.    A man in the back office told Ms. Washington that he was from Defendants' loss prevention department.

211.    The man told Ms. Washington that he knew Ms. Washington was supposed to be on medical leave at that time.

212.    The man told Ms. Washington that on or around September/October, 2015, employee Gregory (last name unknown) modified the pricing of some of the items that Ms. Washington had purchased.

213.    Ms. Washington did not ask employee Gregory (last name unknown) to modify the prices of the items that Ms. Washington had purchased.

214.    Ms. Washington did not know that employee Gregory (last name unknown) had modified the prices of the items that she had purchased.

215.    Employee Gregory (last name unknown), is of Hispanic descent.

216.    Approximately one or two months later, but before Ms. Washington was assaulted at work, Defendant Louis told Ms. Washington that employee Gregory (last name unknown) had modified the prices of items that several employees had bought, including Ms. Washington.

217.    Ms. Washington offered to pay for the modified amount.

218.    Defendant Louis said to not worry about it.

219.    Defendant Louis told Ms. Washington that he was just notifying her of what was going on so that Ms. Washington could keep an eye out to see if she noticed it happening again.

220.    Nonetheless, Ms. Washington paid for the modified amount.

221.    The modified amount was approximately $25.

222.    Before her assault and medical leave in December, 2015, Ms. Washington showed Defendant Louis a receipt showing that she had paid the modified amount.

223.    Before her assault and medical leave in December, 2015, Ms. Washington showed Supervisor Joelle (last name unknown) a receipt showing that she had paid the modified amount.

224.    Approximately one month later (i.e., on or around December 27, 2015), Defendants' loss prevention worker claimed that he did not have any information on file related to Ms. Washington's payment of the modified amount.

225.    Defendants' loss prevention worker also told Ms. Washington that she was on suspension until further notice.

226.    Defendants suspended Ms. Washington, even though employee Gregory (last name unknown) modified the prices of items on several occasions.

227.    Defendants suspended Ms. Washington, even though Ms. Washington had not modified the prices of items on several occasions.

228.    Defendants suspended Ms. Washington, even though Ms. Washington showed Defendant Louis a receipt showing that she had paid the modified amount approximately one month before.

229.    Defendants suspended Ms. Washington, even though Ms. Washington showed Supervisor Joelle a receipt showing that Ms. Washington had paid the modified amount approximately one month before.

230.    Upon information and belief, employee Gregory (last name unknown) was not suspended in 2015 for modifying the prices of items on several occasions.

231.    Upon information and belief, employee Gregory (last name unknown) was not disciplined in 2015 for modifying the prices of items on several occasions.

232.    Defendants also did not pay Ms. Washington since December 15, 2015.

233.    At that time (i.e., as of December, 2015), Ms. Washington had approximately 4 accrued, but unused paid sick days.

234.    Defendants did not pay Ms. Washington for her accrued, but unused paid sick days.

235.    On or around January 3, 2016, Ms. Washington called Defendant Vivian.

236.    At that time (i.e., on or around January, 2016), Defendant Vivian worked in Defendant Companies' human resources department.

237.    Ms. Washington contacted Defendant Vivian to further complain about Defendants' unlawful discrimination, harassment and retaliation.

238.    Defendant Vivian told Ms. Washington to contact management.

239.    Ms. Washington told Defendant Vivian that management (i.e., her supervisors) were the ones discriminating against, harassing, and retaliating against her.

240.    Ms. Washington also notified Defendant Vivian that she was not paid monies owed to her.

241.    Defendant Vivian told Ms. Washington to tell management.

242.    Defendant Vivian made it clear to Ms. Washington that Defendant Vivian was not interested in hearing any more of Ms. Washington's legally protected complaints.

243.    Ms. Washington also complained to Defendant Companies' case manager for workers' compensation (first and last name unknown) that she was being discriminated and retaliated against.

244.    The case manager told Ms. Washington to complain to company management.

245.    The case manager told Ms. Washington that she took care of workers' compensation claims only.

246.    The case manager also said that Defendants had not submitted Ms. Washington's workers' compensation application, which was very unusual.

247.    On or around January 5, 2016, Ms. Washington saw her primary care physician.

248.    Upon information and belief, Ms. Washington's face was still fractured.

249.    Ms. Washington's doctor told her to not return to work until she healed further.

250.    Ms. Washington suffered severe emotional trauma from the violent assault she suffered in Defendants' workplace.

251.    Ms. Washington suffered severe emotional trauma from Defendants' discrimination, harassment and retaliation.

252.    Ms. Washington updated Defendant(s) on the status of her recovery.

253.    Ms. Washington's doctor(s) updated Defendant(s) on the status of Ms. Washington's recovery.

254.    On or around February 1, 2016, Ms. Washington received a letter from Defendants saying that her employment was terminated.

255.    Ms. Washington called Defendant Vivian on at least 3 occasions to complain regarding Defendants' unlawful activities.

256.    Defendant Vivian did not return Ms. Washington's phone calls.

## AS FOR THE FIRST CAUSE OF ACTION
## FOR RACE/COLOR/ETHNICITY DISCRIMINATION UNDER SECTION 1981

257.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

258.    This Count is brought under 42 U.S.C.A. § 1981, as amended by the Civil Rights Act of 1991 (collectively, "Section 1981"), and reference is made to Section 1981 its entirety.

259.    42 USC Section 1981 states, in relevant part, as follows:

"(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

260.    the clause "to make and enforce contracts" in Section 1981 "includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

261.    Defendants subjected Plaintiff to discrimination and harassment with misconduct, including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

262.    Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiff' positions would find that Plaintiff's work environment was hostile or abusive.

263.    Plaintiff reasonably believed that their work environment was hostile or abusive as a result of Defendants' conduct.

264.    Upon information and belief, Defendants' discrimination and harassment was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

265.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, attorneys' fees and costs, emotional pain, emotional suffering,

inconvenience, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

266.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience, and lasting embarrassment and humiliation.

267.    As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.


## AS FOR THE SECOND CAUSE OF ACTION
## FOR RACE/COLOR/ETHNICITY RETALIATION UNDER SECTION 1981

268.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

269.    This Count is brought under 42 U.S.C.A. § 1981, as amended by the Civil Rights Act of 1991 (collectively, "Section 1981"), and reference is made to Section 1981 its entirety.

270.    42 USC Section 1981 states, in relevant part, as follows:

"(a) Statement of equal rights


All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

271.   the clause "to make and enforce contracts" in Section 1981 "includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

272.   Defendants' misconduct violated Section 1981.

273.   Plaintiff complained about Defendants' unlawful conduct.

274.   In response to Plaintiff's complaints, Defendants retaliated with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

275.   Upon information and belief, Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff' federally protected rights.

276.   Upon information and belief, Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

277.   As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered

future pecuniary losses, attorneys' fees and costs, emotional pain, emotional suffering, inconvenience, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

278.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience, and lasting embarrassment and humiliation.

279.    As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

## AS FOR THE THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE REHABILITATION ACT

280.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

281.    This Count is brought under the Rehabilitation Act, 29 U.S.C.A. § 791, et seq., as amended in 1992 (the "Rehabilitation Act"), including §§ 794 and 504, and reference is made to the Rehabilitation Act in its entirety.

282.    Defendant Walgreen is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

283.    Walgreen Co. is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

284.    Defendant Duane Reade is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

285.    Defendant Duane Reade Inc. is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

286.    Defendant Duane Reade International, LLC is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

287.    Defendant Louis is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

288.    At all relevant to this lawsuit, Defendant Louis had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the Rehabilitation Act.

289.    Defendant Germaine is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

290.    At all relevant to this lawsuit, Defendant Germaine had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the Rehabilitation Act.

291.    Defendant Vivian is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

292.    At all relevant to this lawsuit, Defendant Vivian had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others,

including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the Rehabilitation Act.

293. Defendant Beckrum is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

294. At all relevant to this lawsuit, Defendant Beckrum had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the Rehabilitation Act.

295. Defendants discriminated against Plaintiff on the basis of disability with misconduct, including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

296. Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

297. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, compensatory damages and attorneys' fees from Defendants under the Rehabilitation Act.

## AS FOR THE FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE REHABILITATION ACT

298.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

299.    This Count is brought under the Rehabilitation Act, 29 U.S.C.A. § 791, et seq., as amended in 1992 (the "Rehabilitation Act"), including §§ 793 [retaliation], 794 and 504, and reference is made to the Rehabilitation Act in its entirety.

300.    Defendants' misconduct violated the Rehabilitation Act.

301.    Plaintiff complained about Defendants' misconduct.

302.    In response to Plaintiff's complaints, Defendants retaliated against Plaintiff, including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

303.    Upon information and belief, each and every Defendant contributed to the discrimination and retaliation, was aware of the discrimination and retaliation, did nothing to resolve the discrimination and retaliation and/or was complicit in the misconduct.

304.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, compensatory damages and attorneys' fees from Defendants under the Rehabilitation Act.

**AS AND FOR THE FIFTH CAUSE OF ACTION
FOR UNLAWFUL FAILURE TO PAY EARNED COMPENSATION
UNDER THE FAIR LABOR STANDARDS ACT**

305.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

306.     This claim is authorized and instituted pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter, the "FLSA"), and specifically under the provisions of 29 U.S.C. § 20729 U.S.C. § 207 (a)(1), to recover from Defendant Companies unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees.

307.     At all relevant times, Defendant Walgreen was and is an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

308.     At all relevant times, Defendant Walgreen Co. was and is an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

309.     At all relevant times, Defendant Duane Reade was and is an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

310.    At all relevant times, Defendant Duane Reade Inc. was and is an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

311.    At all relevant times, Defendant Duane Reade International, LLC was and is an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

312.    At all relevant times, Defendant Louis was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the FLSA.

313.    At all relevant times, Defendant Germaine was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the FLSA.

314.    At all relevant times, Defendant Vivian was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the FLSA.

315.    At all relevant times, Defendant Beckrum was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do

more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the FLSA.

316. At all relevant times, Defendant Companies has employed workers, including Plaintiff.

317. At all relevant times, upon information and belief, Defendant Companies had gross operating revenues in excess of $500,000.00.

318. Plaintiff worked in excess of forty hours per workweek without lawful overtime compensation.

319. Despite the hours worked by Plaintiff, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay Plaintiff accrued, but unused sick days.

320. Upon information and belief, Defendants failed to accurately record, report, and/or preserve records of hours worked by Plaintiff, and Defendants also failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq..

321. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), entitling Plaintiff to an award of liquidated damages and such other legal and equitable relief as the Court deems just and proper.

322. Plaintiff further seeks recovery of her attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

### AS AND FOR THE SIXTH CAUSE OF ACTION FOR RETALIATION
### UNDER THE FAIR LABOR STANDARDS ACT

323.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

324.     This claim is authorized and instituted pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter, the "FLSA").

325.     Defendants violated the FLSA.

326.     Plaintiff complained about Defendants' FLSA violations.

327.     In response to Plaintiff's complaints, Defendants retaliated with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

328.     Upon information and belief, Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff' federally protected rights.

329.     Upon information and belief, Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

330.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), entitling Plaintiff to an award of liquidated damages and such other legal and equitable relief as the Court deems just and proper.

331.   Plaintiff further seeks recovery of her attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS FOR THE SEVENTH CAUSE OF ACTION
## FOR DISABILITY DISCRIMINATION UNDER THE STATE LAW

332.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

333.   This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

334.   At all times relevant to this lawsuit, Defendant Walgreen was and is an employer within the meaning of the NYSHRL.

335.   At all times relevant to this lawsuit, Defendant Walgreen Co. was and is an employer within the meaning of the NYSHRL.

336.   At all times relevant to this lawsuit, Defendant Duane Reade was and is an employer within the meaning of the NYSHRL.

337.   At all times relevant to this lawsuit, Defendant Duane Reade Inc. was and is an employer within the meaning of the NYSHRL.

338.   At all times relevant to this lawsuit, Defendant Duane Reade International, LLC was and is an employer within the meaning of the NYSHRL.

339.   At all relevant times, Defendant Louis was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do

more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

340.    At all relevant times, Defendant Germaine was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

341.    At all relevant times, Defendant Vivian was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

342.    At all relevant times, Defendant Beckrum was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

343.    At all relevant times, Plaintiff was and is a person and employee within the meaning of the NYSHRL.

344.    At all relevant times, Plaintiff was and is Black/African-American.

345.    At all relevant times, Plaintiff was disabled, regarded as disabled and/or had a record of a disability from within the meaning of the NYSHRL.

346.    At all relevant times, Defendants were aware of Plaintiff's disabilities, race, color, ethnicity, and national origin.

347.    Defendants regarded Plaintiff as disabled.

348.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

349.    Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

350.    Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

351.    Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

352.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

353.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

354.     Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

355.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE EIGHTH CAUSE OF ACTION
## FOR DISABILITY RETALIATION UNDER THE STATE LAW

356.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

357.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

358.     Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

359.     Plaintiff complained about Defendants' unlawful misconduct.

360.     Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to

be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

361.   Upon information and belief, each and every Defendant contributed to the discrimination/retaliation, was aware of the discrimination/retaliation, did nothing to resolve the discrimination/retaliation and/or was complicit in the misconduct.

362.   Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

363.   Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

364.   Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

365.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

366.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

367.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

### AS FOR THE NINTH CAUSE OF ACTION
### FOR RACE/COLOR/ETHNICITY DISCRIMINATION UNDER THE STATE LAW

368.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

369.    This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

370.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

371.    Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

372.    Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

373.    Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

374.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

375.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

376.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

377.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE TENTH CAUSE OF ACTION
## FOR RACE/COLOR/ETHNICITY RETALIATION UNDER THE STATE LAW

378.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

379.   This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

380.   Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

381.   Plaintiff complained about Defendants' unlawful misconduct.

382.   Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

383.   Upon information and belief, each and every Defendant contributed to the discrimination/retaliation, was aware of the discrimination/retaliation, did nothing to resolve the discrimination/retaliation and/or was complicit in the misconduct.

384.   Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

385.   Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing,

authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

386. Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

387. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

388. Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

389. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE ELEVENTH CAUSE OF ACTION
## FOR NATIONAL ORIGIN DISCRIMINATION UNDER THE STATE LAW

390. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

391. This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

392. Defendants engaged in unlawful employment practices prohibited by the NYSHRL with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff

return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

393.    Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

394.    Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

395.    Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

396.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

397.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

398.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

399.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE TWELFTH CAUSE OF ACTION
## FOR NATIONAL ORIGIN RETALIATION UNDER THE STATE LAW

400.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

401.    This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

402.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

403.    Plaintiff complained about Defendants' unlawful misconduct.

404.    Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

405.    Upon information and belief, each and every Defendant contributed to the discrimination/retaliation, was aware of the discrimination/retaliation, did nothing to resolve the discrimination/retaliation and/or was complicit in the misconduct.

406.    Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

407.    Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

408.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

409.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

410.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

411.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.


**AS FOR THE THIRTEENTH CAUSE OF ACTION
FOR SEX/GENDER DISCRIMINATION UNDER THE STATE LAW**

412.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

413.    This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

414.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

415.    Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

416.    Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

417.    Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

418.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

419.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

420.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

421.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE FOURTEENTH CAUSE OF ACTION
## FOR SEX/GENDER RETALIATION UNDER THE STATE LAW

422.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

423.    This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

424.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

425.    Plaintiff complained about Defendants' unlawful misconduct.

426.    Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to

be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

427.   Upon information and belief, each and every Defendant contributed to the discrimination/retaliation, was aware of the discrimination/retaliation, did nothing to resolve the discrimination/retaliation and/or was complicit in the misconduct.

428.   Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

429.   Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

430.   Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

431.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

432.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

433.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE FIFTEENTH CAUSE OF ACTION
## FOR FAILURE TO PAY EARNED SICK PAY
## UNDER THE NEW YORK LABOR LAW

434.    Plaintiff hereby repeats and realleges each allegation contained above with the same force and effect as though fully set forth herein.

435.    This Count is brought under the New York Labor Law, N.Y. Lab Law § 190, et seq. ("NY Lab Law"), and reference is made to the NY Lab Law in its entirety.

436.    At all relevant times, Plaintiff was a "clerical and other worker" within the meaning of the NY Lab Law.

437.    At all relevant times, Plaintiff was and is an employee within the meaning of the NY Lab Law.

438.    At all relevant times, Defendant Companies were and are employers within the meaning of the NY Lab Law.

439.    Defendants did not pay Plaintiff's accrued, unused sick pay.

440.    As Defendants' misconduct was also in willful disregard for the NY Lab Law, Plaintiff is also entitled to an additional amount as liquidated damages equal to one hundred percent (100%) of the total of such underpayments found to be due under the NY Lab Law, including N.Y. Lab Law § 663.

## AS FOR THE SIXTEENTH CAUSE OF ACTION
## FOR RETALITION UNDER THE NEW YORK LABOR LAW

441.    Plaintiff hereby repeats and realleges each allegation contained above with the same force and effect as though fully set forth herein.

442.    This Count is brought under the New York Labor Law, N.Y. Lab Law §§ 215, et seq. and 190, et seq. ("NY Lab Law"), including § 215(a)(iii), and reference is made to the NY Lab Law in its entirety.

443.    Section 215 of the NY Lab Law states, in relevant part, that an employer shall not:

discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . (i) because such employee has made a complaint to his or her employer . . . N.Y. Lab. Law § 215(a)(iii).

444.    Defendants' misconduct violated the NY Lab Law.

445.    Plaintiff complained about Defendants' misconduct.

446.    In response to Plaintiff's complaints, Defendants retaliated against Plaintiff with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

447.    Plaintiff is entitled to compensation for lost wages, together with lost benefits, liquidated damages, costs, all reasonable attorneys' fees, and prejudgment interest under the NY Lab Law § 215.

## AS FOR THE SEVENTEENTH CAUSE OF ACTION
## FOR DISABILITY DISCRIMINATION UNDER THE CITY LAW

448.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

449.    This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

450.     At all times relevant to this lawsuit, Defendant Walgreen was and is an employer within the meaning of the NYCHRL.

451.    At all times relevant to this lawsuit, Defendant Walgreen Co. was and is an employer within the meaning of the NYCHRL.

452.    At all times relevant to this lawsuit, Defendant Duane Reade was and is an employer within the meaning of the NYCHRL.

453.    At all times relevant to this lawsuit, Defendant Duane Reade Inc. was and is an employer within the meaning of the NYCHRL.

454.    At all times relevant to this lawsuit, Defendant Duane Reade International, LLC was and is an employer within the meaning of the NYCHRL.

455.    At all relevant times, Defendant Louis was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire

employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

456.    At all relevant times, Defendant Germaine was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

457.    At all relevant times, Defendant Vivian was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

458.    At all relevant times, Defendant Beckrum was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

459.     At all relevant times herein, Plaintiff was and is a person within the meaning of the NYCHRL.

460.    At all relevant times, Plaintiff was and is a person with a disability within the meaning of the NYCHRL.

461.    At all relevant times, Plaintiff requested reasonable accommodations within the meaning of the NYCHRL.

462.   Plaintiff was and is a person within the meaning of the NYCHRL.

463.   Defendants engaged in unlawful employment practices prohibited by the NYCHRL with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

464.   Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

465.   Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

466.   Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

467.   As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

468.     As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

469.     Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## AS FOR THE EIGHTEENTH CAUSE OF ACTION
## FOR DISABILITY RETALIATION UNDER THE CITY LAW

470.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

471.   This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

472.   Defendants engaged in unlawful employment practices prohibited by the NYCHRL.

473.   Plaintiff complained about Defendants' unlawful misconduct.

474.   Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days;

delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

475.    Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

476.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination/retaliation.

477.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

478.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

479.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

480.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## AS FOR THE NINTEENTH CAUSE OF ACTION
## FOR RACE/COLOR/ETHNICITY DISCRIMINATION UNDER THE CITY LAW

481.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

482.   This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

483.   Defendants engaged in unlawful employment practices prohibited by the NYCHRL with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

484.   Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

485.   Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

486.   Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under

the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

487.   As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

488.   As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

489.   Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## AS FOR THE TWENTIEETH CAUSE OF ACTION
## FOR RACE/COLOR/ETHNICITY RETALIATION UNDER THE CITY LAW

490.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

491.   This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

492.   Defendants engaged in unlawful employment practices prohibited by the NYCHRL.

493.   Plaintiff complained about Defendants' unlawful misconduct.

494.     Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

495.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

496.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination/retaliation.

497.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

498.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

499.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

500.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.


### AS FOR THE TWENTY-FIRST CAUSE OF ACTION
### FOR NATIONAL ORIGIN DISCRIMINATION UNDER THE CITY LAW

501.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

502.    This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

503.    Defendants engaged in unlawful employment practices prohibited by the NYCHRL with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

504.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

505.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

506.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

507.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

508.     As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

509.     Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

**AS FOR THE TWENTY-SECOND CAUSE OF ACTION
FOR NATIONAL ORIGIN RETALIATION UNDER THE CITY LAW**

510.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

511.   This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

512.   Defendants engaged in unlawful employment practices prohibited by the NYCHRL.

513.   Plaintiff complained about Defendants' unlawful misconduct.

514.   Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

515.   Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

516.   Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination/retaliation.

517.   Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under

the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

518.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

519.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

520.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## AS FOR THE TWENTY-THIRD CAUSE OF ACTION
## FOR SEX/GENDER DISCRIMINATION UNDER THE CITY LAW

521.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

522.    This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

523.    Defendants engaged in unlawful employment practices prohibited by the NYCHRL with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff

return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

524.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

525.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

526.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

527.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

528.     As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

529.     Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## AS FOR THE TWENTY-FOURTH CAUSE OF ACTION
## FOR SEX/GENDER RETALIATION UNDER THE CITY LAW

530.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

531.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, and reference is made to the NYCHRL in its entirety.

532.     Defendants engaged in unlawful employment practices prohibited by the NYCHRL.

533.     Plaintiff complained about Defendants' unlawful misconduct.

534.     Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, calling Plaintiff a **"Black Bitch!"**, **"Morena"** and other bigoted slurs; negligently exposing Plaintiff to hazardous conditions at work; causing Plaintiff to be violently assaulted and robbed at work; requiring that Plaintiff return to work before her medical leave was completed; suspending Plaintiff for the unlawful activity of Plaintiff's co-worker who is not African American; suspending Plaintiff the same day that she returned to work after hedr medical leave; not paying Plaintiff's accrued, but unused paid sick days; delaying in submitting Plaintiff's application for workers' compensation benefits; and terminating Plaintiff's employment.

535.    Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

536.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination/retaliation.

537.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

538.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

539.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

540.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that the Defendants engaged in unlawful employment practices prohibited by Section 1981; the Rehabilitation Act; the FLSA; the New York State Human Rights Law; the New York City Human Rights Law; and the New York Labor Law.

B.  Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed;

C.  Awarding damages to Plaintiff, retroactive to the date of Plaintiff's employment termination, for all lost wages and benefits, past and future, back pay and front pay, and liquidated damages, resulting from Defendants' unlawful discrimination and retaliation, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D.  Awarding Plaintiff compensatory damages for mental and emotional injury, and injury to reputation;

E.  Awarding Plaintiff punitive damages under Section 1981 and the NYCHRL;

F.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action under Section 1981, the Rehabilitation Act and the NYCHRL;

G.  Awarding Plaintiff liquidated damages under the FLSA and NYLL in the maximum amount permissible by statute given Defendants' willful misconduct;

H.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, NY
       April 3, 2017

                Respectfully submitted,

                LAW OFFICES OF LAURIE E. MORRISON

                By_____
                    Laurie E. Morrison, Esq.
                    100 Church Street, 8th Floor
                    New York, New York10007
                    (212) 721-4051 (office)
                    (646) 651-4821 (fax)
                    morrison@lemorrisonlaw.com
                    *Attorney for Plaintiff*

**TO:**

Walgreen
568 West 125th Street
New York, New York 10027

Walgreen Co.
568 West 125th Street
New York, New York 10027
**VIA SECRETARY OF STATE**
C/O Corporation Service Company
80 State Street
Albany, New York, 12207-2543

Duane Reade
568 West 125th Street
New York, New York 10027

Duane Reade Inc.
568 West 125th Street
New York, New York 10027
**VIA SECRETARY OF STATE**
C/O Corporation Service Company
80 State Street
Albany, New York, 12207-2543

Duane Reade International, LLC

**<u>VIA SECRETARY OF STATE</u>**
C/O Corporation Service Company
80 State Street
Albany, New York, 12207-2543

Crystal Beckrum
C/o Walgreen (Defendant's Place of Business)
568 West 125th Street
New York, New York 10027

Louis Doe (Last Name Unknown)
C/o Walgreen (Defendant's Place of Business)
568 West 125th Street
New York, New York 10027

Germaine (First Name Unknown)
C/o Walgreen (Defendant's Place of Business)
568 West 125th Street
New York, New York 10027

Vivian Doe (Last Name Unknown)
C/o Walgreen (Defendant's Place of Business)
568 West 125th Street
New York, New York 10027