# EXHIBIT B

Page 1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Civil Case No. 17-CV-02393
-------------------------x
CIERA WASHINGTON,
                    Plaintiff,
       -against-
WALGREENS; WALGREENS CO.; DUANE READE;
DUANE READE INC.; DUANE READE
INTERNATIONAL, LLC; and Individually and
Jointly; LUIS GUERRERO; GERMAINE ALLEN;
VIVIAN GHOBRIAL; and CRYSTAL BECKRUM,
                    Defendants.
-------------------------x

                         1250 Broadway
                         New York, New York
                         February 7, 2018
                         10:00 a.m.

         PORTIONS CONFIDENTIAL,
         ATTORNEYS' EYES ONLY

    DEPOSITION of MICHAEL GEYER, a witness
appearing on behalf of the Defendants in
the above-entitled action, held at the
above time and place, taken before Brian
Brenner, a Shorthand Reporter and Notary
Public of the State of New York, pursuant
to the Federal Rules of Civil Procedure,
Court Order and stipulations between
Counsel.
```

Page 56

1      M. GEYER - CONFIDENTIAL
2  your ability to testify accurately today?
3      A    No.
4           MS. MORRISON:  We can come out
5      of confidentiality now.
6      Q    Now, you earlier said that you
7  didn't know -- correct me if I am wrong --
8  really anything about the specifics of any
9  discipline that Plaintiff received, right?
10     A    That's correct.
11     Q    So you don't really know any
12 specifics related to Plaintiff being
13 suspended?
14     A    No, I do not.
15     Q    And you don't know any specifics
16 related to Plaintiff being fired?
17     A    No, I do not.
18     Q    And you don't know any specifics
19 related to Defendants' claim that
20 Plaintiff somehow had something to do with
21 price modifications at the store?
22     A    Specifically, like, what those
23 were?  The transactions that are in
24 question?  Just do I know that there was
25 something about price modifications that

```
 1                    M. GEYER
 2   led to her termination?
 3        Q      Broadly.
 4        A      Yes, I know that.
 5        Q      So you know that her termination
 6   was --
 7               MS. MORRISON:  Strike that.
 8        Q      You know that Defendants are
 9   claiming that they fired Plaintiff because
10   she somehow had something to do with a
11   price modification?
12        A      Correct.
13        Q      Do you know anything more beyond
14   that?
15        A      I do not.
16        Q      Do you know who's alleging that
17   Plaintiff was fired because of being
18   involved with some price modifications?
19        A      Who's alleging?  No.
20        Q      Do you know any information that
21   was provided related to Plaintiff
22   allegedly having something to do with a
23   price modification?
24        A      Have I seen the documentation?
25        Q      Do you know anything about it?
```

                                                           Page 58

1              M. GEYER
2    A    No.
3    Q    So really all you know just
4    generally is Defendants claim they fired
5    Plaintiff because they claim she was
6    allegedly involved with price
7    modification?
8    A    Correct.
9    Q    But you don't know any specifics
10   related to that?
11   A    I do not.
12   Q    In any way?
13   A    In any way.
14   Q    So when we're talking about --
15        MS. MORRISON:   Strike that.
16        Mark these as the first
17   exhibits, please.
18        [Whereupon, the above-mentioned
19   documents were marked Plaintiff's
20   Exhibits 1 through 3 for
21   identification.]
22   Q    I'm handing you documents marked
23   as Plaintiff's Exhibits 1, 2, and 3.
24   Please take a look at them (handing).
25        Pay particular attention to the

```
                                                   Page 84
 1                  M. GEYER
 2      A     Probably the manager.  It could
 3   have been reviewed at the time of hire.
 4   We had central orientations that were
 5   given to new hires that might have
 6   discussed the progressive discipline, you
 7   know, actions, the steps in that regard.
 8   Not in this particular handbook, but I
 9   believe in subsequent handbooks it was
10   outlined a little bit differently.
11      Q     But again, Plaintiff's Exhibit 5
12   is the only employee handbook and the only
13   written document containing any and all
14   workplace policies during Plaintiff's
15   employment, correct?
16      A     Yes.
17      Q     You are saying progressive
18   discipline was discussed with employees
19   including Plaintiff during their
20   employment, just not put in the employee
21   handbook, correct?
22      A     I can't say specifically for
23   Ms. Washington or any other specific
24   employee, but I believe that was to be a
25   practice that was applied in a store
```

```
                                          Page 118
 1                  M. GEYER
 2    what the circumstances were or are that
 3    something was written later, you know,
 4    months later.
 5         Q     Because that's unusual, correct?
 6               MS. WELCH:   Objection.
 7         A     It's not typical.
 8         Q     If someone --
 9               MS. MORRISON:   Strike that.
10         Q     Again you said you've never --
11    you don't know anything specific about
12    Plaintiff with respect to this at all,
13    right?
14         A     I do not.
15         Q     How about the following pages of
16    this document, 177 through 188?  Do you
17    have any knowledge of the significance of
18    these documents produced by Defendant with
19    respect to Plaintiff?
20         A     Specifically to her, no, I do
21    not.  I mean, I know what they are.
22         Q     What are they?
23         A     So these are electronic captures
24    of specific transactions.  That's on 177.
25    Then after that, 178 through 188, they
```

```
                                             Page 147
 1              M. GEYER
 2      A      That is correct.
 3      Q      In terms of topic number one,
 4   any and all policies and/or practices
 5   regarding opening and closing Defendants'
 6   store located at 568 West 125th Street, do
 7   you know any specifics with respect to
 8   Plaintiff in that regard?
 9      A      No, I don't.
10      Q      Do you know any specifics with
11   respect to people who are assigned to open
12   the store alone or otherwise?
13      A      I do not.
14      Q      So you just know the general --
15   what you've already testified to?
16      A      Correct.
17      Q      Is there anything else that you
18   know with respect to topic number one,
19   those policies and/or practices that may
20   pertain to Plaintiff or to this case in
21   general that you haven't already testified
22   to?
23      A      I don't believe so, no.
24             MS. MORRISON:   Just give me a
25      minute.
```