# EXHIBIT D

1

2   UNITED STATES DISTRICT COURT

3   SOUTHERN DISTRICT OF NEW YORK
    - - - - - - - - - - - - - - - - - - -x
4   CIERA WASHINGTON,
                        Plaintiff,
5           -against-
    WALGREENS; WALGREENS CO.; DUANE READE;
6   DUANE READE INC.; DUANE READE
    INTERNATIONAL, LLC; and Individually and
7   Jointly; LUIS GUERRERO; GERMAINE ALLEN;
    VIVIAN GHOBRIAL; and CRYSTAL BECKRUM,
8                        Defendants.
    Civil Case No. 17-CV-02393
9   - - - - - - - - - - - - - - - - - - -x
10                      1250 Broadway
                        New York, New York
11
                        April 3, 2018
12                      1:07 p.m.
13
14      CONTINUED DEPOSITION of MICHAEL GEYER,
15  a witness appearing on behalf of the
16  Defendants in the above-entitled action,
17  held at the above time and place, taken
18  before Brian Brenner, a Shorthand Reporter
19  and Notary Public of the State of New
20  York, pursuant to the Federal Rules of
21  Civil Procedure, Court Order and
22  stipulations between Counsel.
23              *       *       *
24
25

```
 1                    M. GEYER
 2      A      Not really anything.
 3      Q      How about the Complaint in this
 4  action?  Did you review that?
 5      A      I did.  I should add that I
 6  looked at the interrogatory responses as
 7  well.
 8      Q      Defendants' interrogatory
 9  responses?
10      A      Yes.
11      Q      Why did you do that?
12      A      Just to familiarize myself with
13  again what I might be asked about with
14  regards to today's testimony.
15      Q      Any other documents or
16  information you might have reviewed or
17  that you reviewed?
18      A      Not that I recall.
19      Q      With respect to Defendants'
20  interrogatory responses, when did you
21  review those documents?
22      A      Yesterday.
23      Q      What about any other time before
24  then?
25      A      Yeah.  Probably a week or so
```

```
 1              M. GEYER
 2  ago.
 3      Q     Any other time?
 4      A     I don't recall.  I don't believe
 5  so.
 6      Q     So you had never seen
 7  Defendants' interrogatory responses before
 8  a week ago?
 9      A     Not that I recall.
10      Q     How about the information
11  contained in --
12            MS. MORRISON:   Strike that.
13      Q     How about knowledge of the
14  information contained in Defendants'
15  responses?  Did you --
16      A     I am not sure what you mean by
17  contained.
18      Q     You got it.  I initially asked
19  you -- and again I'm just trying to know
20  when you reviewed documents or when you
21  were aware of information contained in
22  those documents.  That's what I'm asking
23  you.  So you already testified as to when
24  you reviewed Defendants' interrogatory
25  responses themselves.
```

```
 1                    M. GEYER
 2      A      Yes.
 3      Q      And you said to your knowledge
 4   you didn't review them before a week ago.
 5      A      Yes.
 6      Q      So how about -- so contrary to
 7   you reviewing the actual documents, you're
 8   aware that Defendants made interrogatory
 9   responses, right?
10      A      Yes.
11      Q      And so you're aware of the
12   responses in sum and substance that
13   Defendants made to Plaintiff's
14   interrogatories, correct?
15      A      Yes.
16      Q      That information, the
17   information contained therein, in
18   Defendants' interrogatory responses, when
19   did you first become aware of that
20   information?
21      A      I believe it's one and the same.
22   Like, a week ago.
23      Q      A week ago?
24      A      Yes.
25      Q      But not before a week ago?
```

```
 1                    M. GEYER
 2        A     I don't believe so.
 3        Q     How about the Complaint? When
 4   did you become aware -- when did you
 5   review the Complaint?
 6        A     I mean, prior to the first time
 7   I was here, and I believe that was
 8   February or so, so maybe December-ish,
 9   something like that.
10        Q     Of what year?
11        A     It would have been, I guess,
12   '17.
13        Q     So you didn't review the
14   Complaint before 2017?
15        A     No, I don't believe so.
16        Q     When did you become aware of the
17   allegations, the sum and substance
18   contained in the Complaint, if you are
19   aware?
20        A     I would be guessing, to be
21   honest with you, so as just an educated
22   guess I would say maybe six months prior.
23   Maybe the end of the -- the end of the
24   summer, maybe, something like that, '17.
25        Q     But not prior to 2017 did you
```

```
 1                   M. GEYER
 2      Q      And why did you review the
 3  handbook?
 4      A      Just to try to familiarize
 5  myself again with some things that are
 6  there that maybe is not at the top of mind
 7  for me right now.  Stuff like that.
 8      Q      Understood, and again I'm just
 9  going through this just to figure out the
10  reasons for reviewing documents.  That's
11  all.
12      A      Okay.
13      Q      When you reviewed the
14  interrogatories a week ago or within the
15  last week, the Defendants' interrogatory
16  responses, I should say, is that when you
17  learned what Defendants' interrogatory
18  responses were in sum and substance?
19      A      I think -- I believe that's
20  accurate.  Yes.
21      Q      I'm doing this to refresh my
22  recollection now.  That's why I am
23  pausing, just so you know.  Do you recall
24  testifying in your last deposition day
25  that you didn't have any information
```

Page 192

```
 1                  M. GEYER
 2   related to Plaintiff Ciera Washington
 3   specifically?
 4       A     Correct.
 5       Q     So that statement when you made
 6   that statement was accurate?
 7       A     It is contract.
 8       Q     And it's still accurate?
 9       A     It's still accurate.
10       Q     So you have no information,
11   personal knowledge, what have you, with
12   respect to Plaintiff specifically; is that
13   correct --
14             MS. MORRISON:   Strike that.
15       Q     Let me say that differently.
16   You don't know specifically about
17   Plaintiff's specific claims and what
18   happened, correct?
19       A     I was not involved in her
20   situation directly.  The only way that I
21   knew things was just in gathering
22   information for the lawyers and regards to
23   -- to have access to this file or this
24   particular situation or what do you know,
25   so in that regard I know some things
```

```
1                    M. GEYER
2    because I've read things, but again I was
3    not involved with being part of her --
4    part of the specific information in Duane
5    Reade, so I know of it and became -- I
6    will use the term educated just reading
7    documents and having conversations.
8    That's all.
9        Q     So you provided documents to
10   defense counsel in connection with
11   responses to Defendants' interrogatories,
12   right?
13       A     Yes.
14       Q     Do you recall testifying -- I
15   don't want to put words in your mouth so
16   correct me if what I'm saying is wrong or
17   inaccurate in any way, okay?
18       A     Yes.
19       Q     Do you remember testifying in
20   your first deposition day that the only
21   information you know about with respect to
22   Plaintiff --
23             MS. MORRISON:   Strike that.
24       Q     You know only general
25   information related to the policies that
```

Page 194

1               M. GEYER

2    you were testifying to as a 30(b)(6)

3    witness?

4         A     Yes.

5               MS. WELCH:    Objection to the

6         question.

7         Q     And do you recall testifying

8    that in sum and substance you didn't know

9    any specific information related to

10   Plaintiff?

11        A     I recall that.

12        Q     And was that a correct

13   statement?

14        A     That was.

15        Q     So with respect to -- for

16   instance, with respect to Defendants'

17   policies at the time in 2015 or around

18   2016 --

19               MS. MORRISON:    Strike that.

20        Q     So with respect to Defendants'

21   policies with respect to employees

22   complaining of discrimination, for

23   example, you have no knowledge regarding

24   Plaintiff's specific complaints or lack

25   thereof?

Page 195

```
1              M. GEYER
2         MS. WELCH:   Objection.
3    Q    Is that right?
4         MS. WELCH:   Objection.
5         Go ahead.
6    A    I do not have any knowledge
7  about that specifically.
8    Q    So that's a correct --
9    A    That is a correct statement.  It
10 was then.  It is now.
11   Q    And it is now?
12   A    Yes.
13   Q    Do you recall reviewing --
14        MS. MORRISON:   Strike that.
15   Q    When I say do you have any
16 knowledge, let's just define it otherwise
17 it's going to be long questions from now
18 on.  When I say knowledge or when you say
19 knowledge, can we agree that knowledge is
20 broad?  In other words, you don't have to
21 personally have seen Plaintiff do
22 something or personally witnessed
23 something being done, but your knowledge
24 would include reviewing documents and
25 speaking to people related to that topic.
```

1                    M. GEYER

2    Is that fair to say?

3        A      I can agree to that.

4        Q      So let me ask you the question

5    again: When you said you had no knowledge

6    -- when you testified in your first

7    deposition before today whether or not

8    Plaintiff complained of discrimination,

9    was that a -- do you recall making that

10   discrimination?

11       A      I could.

12       Q      And was that an accurate

13   statement?

14       A      I believed that to be accurate.

15       Q      So you have no knowledge with

16   respect to whether Plaintiff complained of

17   discrimination or didn't complain of

18   discrimination, either way?

19       A      Not either way, correct.

20       Q      And either way you have no

21   knowledge with respect to whether or not

22   Plaintiff complained of being retaliated

23   against at work, correct?

24       A      I might have read that that

25   happened somewhere, but that would be,

```
 1                    M. GEYER
 2      Q      How about harassed?
 3      A      I don't recall that
 4  specifically.
 5      Q      So you don't know if -- you've
 6  never reviewed or been privy to or any
 7  information related to whether or not
 8  Plaintiff complained that she was being
 9  harassed at work?
10      A      No, I don't.
11      Q      When I say retaliation or
12  harassment -- let me take them one at a
13  time.  When I say harassment what do you
14  understand that term to mean?  I think you
15  did this already before in your statement,
16  but --
17      A      I mean, there's many forms of
18  harassment, both physical and nonphysical.
19  It could be harassed for sexual
20  orientation, you know, or gender or
21  whatnot.
22      Q      Understood, so when I say
23  harassment or when I said harassment today
24  or during this deposition is it fair to
25  say that your understanding of harassment
```

```
 1              M. GEYER
 2   when I used that term was that someone was
 3   doing something to someone else or
 4   harassing them because of their race or
 5   their gender or sexual orientation or what
 6   have you?
 7        A    Yes.
 8        Q    And how about discrimination?
 9   When I said discrimination today and you
10   responded, did you -- was your
11   understanding that discrimination meant
12   that someone was treating someone
13   negatively in some way because of their
14   race or their gender or disability or what
15   have you?
16        A    Yes.
17        Q    And how about retaliation? When
18   we were discussing retaliation -- when we
19   were discussing retaliation, do you
20   understand retaliation to mean that
21   someone was treating someone negatively
22   because they were retaliating against the
23   complaint of discrimination?
24        A    Yes.
25        Q    So when you responded that you
```

Page 201

```
 1              M. GEYER
 2   might have reviewed something that
 3   indicated that Plaintiff complained of
 4   retaliation that was your understanding of
 5   retaliation when you made that response
 6   earlier?
 7       A     Yes.
 8       Q     We talked about harassment,
 9   discrimination, retaliation, and we talked
10   about your understanding of that, so let's
11   keep that understanding if either one of
12   us mentions those terms at any point
13   during this deposition just to make things
14   clear.
15       A     I understand.
16       Q     How about -- do you have any
17   knowledge of whether Plaintiff --
18             MS. MORRISON:   Strike that.
19       Q     Do you recall testifying at your
20   first deposition in sum and substance that
21   you have no knowledge, again broadly
22   defined, regarding who may have scheduled
23   Plaintiff for work shifts or regarding who
24   might have been involved in any way with
25   scheduling Plaintiff's work shifts?
```

Page 203

1                  M. GEYER

2   -- or would a manager write a schedule?

3       Q     Good distinction.   Thank you.

4   I'm saying specifics.   I understand that

5   you already testified that you might know

6   generally policies with respect to work

7   scheduling, right?

8       A     Correct.

9       Q     But I remember in sum and

10  substance that you -- again correct me if

11  my memory is incorrect or if I am wrong,

12  okay?

13      A     Yes.

14      Q     I remember you testifying that

15  scheduling work shifts with respect to

16  scheduling Plaintiff's work shifts you

17  have absolutely no knowledge, again

18  broadly defined with respect to knowledge,

19  who may have been involved in scheduling

20  the Plaintiff's work shifts; is that

21  correct?

22      A     That's correct.

23      Q     And you've never had such

24  knowledge?

25      A     I don't have any knowledge of

1                    M. GEYER

2   that.

3       Q     And you've never had any

4   knowledge?

5       A     Never had any knowledge of that.

6       Q     Because you again testified

7   during your deposition that you had no

8   knowledge -- again broadly defined with

9   knowledge -- with respect to Plaintiff

10  specifically?

11            MS. WELCH:   Objection.  Asked

12       and answered.

13      A     No, correct.

14      Q     And at no time did you have such

15  knowledge with respect to Plaintiff

16  specifically, correct?

17            MS. WELCH:   Objection.  Asked

18       and answered.

19      A     Correct.

20      Q     This might be another quick

21  deposition for you, just so you know.

22            Do you have any knowledge of

23  whether the --

24            MS. MORRISON:   Strike that.

25      Q     Have you ever had any knowledge

1                    M. GEYER

2       Q       Okay, no need to allude.  What

3    are you referring to in terms of your

4    deposition statement?

5       A       I mean --

6       Q       I'm not looking at your -- just

7    so you know, I'm not looking at your

8    deposition statement.

9       A       I mean, well, specifically, I

10   know who her former store managers are.

11      Q       Okay, do you know -- do you have

12   any knowledge with respect to who

13   specifically supervised her?

14      A       Well, I mean...

15      Q       Other than that generally

16   speaking store managers are supposed to

17   supervise someone?

18      A       Obviously that statement is

19   true, right, that the store managers are

20   going to supervise their employees, but

21   additionally so could her assistant

22   managers as well.  With some regards, you

23   know, you might take some task direction

24   from a shift leader too as well, so

25   specifically I don't know who was giving

Page 207

                    M. GEYER
1
2    her...
3        Q     Who was supervising her at all?
4        A     Day in and day out, no, but I
5    know who the store managers were in the
6    location in which she worked.
7        Q     Understood, so your knowledge as
8    to who may have been involved in
9    Plaintiff's supervision is based on just
10   generally who would be involved in such
11   things?
12       A     General.  General knowledge.
13       Q     Again as you've testified to on
14   your first day?
15       A     Correct.
16       Q     You have no only general
17   knowledge about policies and practices; is
18   that correct?
19       A     Correct.
20       Q     You don't have any knowledge
21   with respect to Plaintiff specifically?
22       A     Not Plaintiff specifically.
23       Q     And the same is true with
24   respect to --
25             MS. MORRISON:   Strike that.

```
 1                    M. GEYER
 2       Q      Did anyone ever ask you to
 3  review Defendants' interrogatory responses
 4  and verify whether or not those responses
 5  were accurate?
 6       A      Yes.
 7       Q      Was it one of your attorneys?
 8       A      Yes.
 9       Q      Do you know when they asked you
10  to do that? It doesn't have to be an exact
11  date.  A month and a year would be great.
12       A      A week or so ago.
13       Q      A week ago or so?
14       A      Yes.
15       Q      Not before a week or so ago?
16       A      Not that I recall.
17       Q      We are in 2018.
18       A      Correct.
19       Q      We're in the year 2018.  Did
20  anyone ask you to review Defendants'
21  interrogatory responses to verify or
22  confirm that those responses are accurate
23  in 2017?
24       A      I don't recall that.
25       Q      But you don't think so?
```

Page 234

```
 1                    M. GEYER
 2      Q      Is it possible that you signed
 3   the document and Aaron Warshaw signed the
 4   document within a -- longer than a few
 5   days' time lapse?
 6              MS. WELCH:   Objection to the
 7      form.
 8              Go ahead.
 9      A      I suppose that's possible.
10      Q      More than a week time lapse
11   between the two?  Is that possible?
12      A      It's possible.
13      Q      I am just trying to understand.
14   So to your knowledge, you do not know when
15   Aaron Warshaw signed this document and
16   serving as the notary public, correct?
17      A      I do not know when he signed it.
18              MS. WELCH:   You do know there's
19      an H in Warshaw?
20              MS. MORRISON:   Oh, that's my
21      pronunciation.  I'm saying Warsaw
22      instead of Warshaw.  Sorry.
23      Q      But you understand we are
24   talking about defense counsel, right?
25      A      Yes.
```

Page 248

```
 1              M. GEYER
 2   Guerrero, Crystal Beckrum, Miguel Brito,
 3   and Germaine Allen."
 4           Brito is spelled B-R-I-T-O.  Do
 5   you see that?
 6      A    Yes.
 7      Q    Do you have any reason to
 8   believe that that statement that
 9   Defendants made in response to
10   interrogatory number ten was inaccurate
11   when made?
12      A    No.
13      Q    Do you have any reason to
14   believe that that statement by Defendants
15   was inaccurate at any time?
16      A    No.
17      Q    Now, with respect to Defendants'
18   interrogatory number ten's response, did
19   you --
20           MS. MORRISON:   Strike that.
21      Q    Did you have any basis upon
22   which to conclude whether or not
23   Defendants' interrogatory response to
24   number ten was accurate?
25      A    I don't know that I understand
```

Page 249

                        M. GEYER

1

2    you 100 percent.

3        Q    Not a problem.  You just

4    testified that you had no reason to

5    believe that Defendants' response to

6    interrogatory number ten is inaccurate,

7    correct?

8        A    Correct.

9        Q    So do you have any basis,

10   support, or information at all to support

11   your claim that Defendants' interrogatory

12   response to number ten is accurate or not

13   accurate?

14       A    I do not.

15       Q    Did you have any knowledge --

16   again, knowledge as we stated before,

17   generally and broadly stated, meaning did

18   you ever review any documents or witness

19   personally or see anything or be told

20   anything, what have you, upon which to --

21   for you to reliably conclude whether or

22   not Defendants' interrogatory response to

23   number ten was accurate?

24       A    No.

25       Q    So you have no basis upon which

```
 1              M. GEYER
 2      explain that you should please just
 3      say objection.  Please don't say the
 4      source of your objection.  In other
 5      words, don't say asked and answered or
 6      whatever else.
 7              MS. WELCH:   Sure.  Sure.
 8              MS. MORRISON:   Gotcha.
 9      Q     You can answer.
10      A     Oh, can you read back the
11 question?
12              MS. WELCH:   Read back the
13      question, please.
14              [Whereupon, the requested
15      portion of the record was read back by
16      the Court Reporter.]
17      A     That is correct.
18      Q     How about Defendants' response
19 to interrogatory number six that we
20 discussed earlier?  What is your basis, if
21 you have any basis, upon which to whether
22 or not whether or not Defendants' response
23 to interrogatory number six is accurate or
24 not accurate?
25      A     Six or nine?
```

Page 252

```
 1              M. GEYER
 2              MS. WELCH:   Number six?
 3       Q      Interrogatory number six on page
 4    nine.
 5       A      No, I don't.
 6       Q      You have no basis upon which to
 7    determine whether or not Defendants'
 8    response to interrogatory number six is
 9    accurate or inaccurate?
10       A      I do not.
11       Q      Correct?
12       A      Correct.
13       Q      Meaning you have no personal
14    knowledge?  In other words, you never
15    witnessed or reviewed any information or
16    spoke to anyone or otherwise to determine
17    or to know any information related to
18    whether or not someone was involved in
19    responding to the Plaintiff's complaints?
20       A      No, I don't.
21       Q      And how about Defendants'
22    response to interrogatory number five?  Do
23    you have any knowledge -- and again
24    broadly -- whether you reviewed any
25    documents, spoke to anyone, witnessed
```

Page 253

```
 1            M. GEYER
 2  personally, or anything of the like upon
 3  which to make a determination of whether
 4  or not Defendants' response to
 5  interrogatory number five is accurate or
 6  inaccurate?
 7            MS. WELCH:   Objection.
 8            Go ahead.
 9      A    No.
10      Q    Meaning you have no basis upon
11  which to conclude --
12      A    No.
13      Q    -- the veracity or lack thereof
14  of Defendants' interrogatory number five's
15  response?
16      A    Correct.
17      Q    And how about interrogatory --
18  actually, I'll go to the page first and
19  then I'll give you the interrogatory
20  number.
21      A    Yes.
22      Q    How about page six?  It says
23  responses and objections to Plaintiff's
24  first set of interrogatories.  Do you see
25  that?
```

1              M. GEYER

2      Q      At the time when you reviewed

3  did you understand that where it says

4  response to interrogatory number one that

5  was Defendants' response to interrogatory

6  number one?

7      A      Yes.

8      Q      Please turn the page, page

9  seven.  Go to the top of page seven.  It

10  says: "Subject to and without waiving

11  these objections the Walgreens and Duane

12  Reade Defendants respond.  Ciera

13  Washington, Luis Guerrero, Crystal

14  Beckrum, Vivian Ghobrial, Germaine Allen,

15  Troy Hennessy, and Robert Petrarchi."

16              Petrarchi is spelled

17  P-E-T-R-A-R-C-H-I.  Do you see that?

18      A      Yes.

19      Q      You understand that that is part

20  of Defendants' response to interrogatory

21  number one, correct?

22      A      Yes.

23      Q      And do you have any basis upon

24  which to determine if that response is

25  accurate?

```
 1                    M. GEYER
 2      A     Nope.
 3      Q     Did you ever have any basis upon
 4   which to determine if that response was
 5   accurate?
 6      A     No.
 7      Q     Turning to interrogatory number
 8   two, it says: "Identify each person with
 9   dates who was involved in any way,
10   directly, indirectly, authorized,
11   unauthorized, formal, informal, in
12   supervising Plaintiff's work performance
13   directly or indirectly, formally or
14   informally, at any time during Plaintiff's
15   employment with Defendants."
16            Do you see that?
17      A     I do.
18      Q     And do you see below this it
19   says the response to interrogatory number
20   two?
21      A     Yes.
22      Q     At the time when you reviewed
23   the -- and you reviewed this interrogatory
24   response as well?
25      A     Correct.
```

Page 258

1                    M. GEYER

2    of these, you understand I mean, do you

3    have any knowledge at all reviewing

4    documents, what have you?

5        A      Correct.

6        Q      And when responding that you

7    have no basis at any time during this

8    deposition during this last line of

9    questioning, the last half hour, that's

10   your understanding of the basis; is that

11   correct?

12       A      Correct.

13       Q      So again you don't really have

14   -- at the time that you reviewed

15   Defendants' response to tho interrogatory

16   as well, you had no information upon which

17   to definitively state whether this

18   response was accurate, correct?

19       A      Correct.

20       Q      So let's now turn to the next

21   page, eight.  It says interrogatory number

22   four.

23       A      Yes.

24       Q      That says: "Identify each person

25   with dates who was involved in any way

Page 259

```
 1                    M. GEYER
 2   directly on indirectly, authorized,
 3   unauthorized, formal, informal, in
 4   investigating or looking into purported
 5   claims that Plaintiff was involved in the
 6   robbery that occurred on Defendants' work
 7   premises or around December 2015."
 8              Do you see that?
 9       A     I do.
10       Q     And below that it says response
11   to interrogatory number four?
12       A     Yes.
13       Q     And again when you reviewed --
14   you reviewed this response as well,
15   correct?
16       A     Yes.
17       Q     And at the time that you
18   reviewed this response to determine if it
19   was accurate your understanding it was
20   Defendants' response to interrogatory
21   number four, correct?
22       A     Yes.
23       Q     And it states: "Subject to and
24   without waiving these objections Walgreens
25   and Duane Reade respond Defendants are not
```

```
                                     Page 260
  1                 M. GEYER
  2   aware of any person who was involved in
  3   any way in investigating or looking into
  4   the purported claim that Plaintiff was
  5   involved in robbery that occurred on
  6   Defendants' work premises on or around
  7   December 2015."
  8            Do you see that?
  9       A    Yes.
 10       Q    At the time when you reviewed
 11   Defendants' response to interrogatory
 12   number four, did you have any information
 13   whatsoever including reviewing documents,
 14   speaking to people or witnessing anything
 15   yourself, any information, what have you,
 16   to determine if Defendants' response here
 17   is accurate?
 18       A    No.
 19       Q    Have you ever had any
 20   information upon which to determine if
 21   Defendants' response to interrogatory
 22   number four was accurate?
 23       A    No.
 24       Q    And the same -- I apologize if
 25   I'm asking a duplicative question, but the
```

Page 261

```
 1            M. GEYER
 2  same is true with respect to
 3  Defendants' --
 4            MS. MORRISON:   Strike that.
 5      Q    Interrogatory number three, page
 6  seven states: "Identify each person with
 7  dates who was involved in any way
 8  directly, indirectly, authorized,
 9  unauthorized, formal, informal, in
10  investigating or looking into the assault
11  of Plaintiff and related robbery that
12  occurred on Defendants' work premises on
13  or around December 2015."
14            Do you see that?
15      A    I do.
16      Q    And do you see below that it
17  says response to interrogatory number
18  three?
19      A    I do.
20      Q    And at the time when you
21  reviewed this response to determine if it
22  was accurate, you understood that this was
23  Defendants' response to interrogatory
24  number three, correct?
25      A    Correct.
```

Page 262

```
 1              M. GEYER
 2     Q     It says: "Subject to and without
 3  waiving its objections, Walgreens and
 4  Duane Reade Defendants respond Robert
 5  Petrarchi."
 6              Do you see that?
 7     A     Yes.
 8     Q     At the time that you reviewed
 9  Defendants' response to interrogatory
10  number three, did you have any information
11  at any time to be able to determine if
12  Defendants' response was accurate?
13     A     No.
14     Q     Have you ever had any
15  information to determine if Defendants'
16  response to interrogatory number three is
17  accurate?
18     A     No.
19     Q     Turn to the next page.
20  Interrogatory number four states: "In
21  response Defendants are not aware of any
22  person who was involved in any way in
23  investigating or looking into the
24  purported claims that Plaintiff was
25  involved in the robbery that occurred on
```

Page 264

```
 1                    M. GEYER
 2   ever had any --
 3                MS. MORRISON:    Strike that.
 4       Q      At the time when you reviewed
 5   Defendants' response to interrogatory
 6   number five to determine if it was
 7   accurate, did you have any information at
 8   all upon which to make that determination?
 9       A      No.
10       Q      Have you ever had any
11   information at all either witnessing or
12   reviewing documents or speaking to anyone,
13   any information at all upon which to
14   determine if Defendants' response to
15   interrogatory number five was accurate?
16       A      No.
17       Q      And how about the same response
18   with respect to Defendants' interrogatory
19   number six?  Have you ever had any
20   information upon which to determine if
21   Defendants' response to interrogatory
22   number six was accurate?
23       A      No.
24       Q      Including at the time when you
25   reviewed Defendants' response to
```

```
 1                    M. GEYER
 2   interrogatory number six to determine if
 3   it was accurate?
 4        A     No.
 5        Q     So it includes that.  At the
 6   time when you reviewed Defendants'
 7   responses to interrogatory number six, you
 8   had no information whatsoever upon which
 9   to determine if Defendants' response to
10   interrogatory number six was accurate,
11   correct?
12        A     No, correct.
13        Q     Okay, Mr. Geyer, let's now turn
14   to the last page of Defendants'
15   interrogatory responses.  That is page 12.
16   Do you see it says interrogatory number
17   13?
18        A     Yes.
19        Q     Interrogatory number 13 states:
20   "State whether the answers to these
21   interrogates are based solely upon the
22   personal knowledge of the individual
23   person citing the interrogatories, and is
24   the answer is other than an unqualified
25   yes, please identify," and it lists A, B,
```

Page 267

1                        M.  GEYER
2      accurate, did you review that statement,
3      "state whether the answers to these
4      interrogatories are based solely upon the
5      personally knowledge of the individuals
6      signing the interrogatories"?
7           A      Yes.
8           Q      At the time when you reviewed
9      that interrogatory, was it your
10     understanding that you were the person
11     that was signing Defendants'
12     interrogatories?
13          A      Yes.
14          Q      And was it your understanding at
15     that time that you were the person who was
16     signing all of Defendants' interrogatory
17     responses?
18          A      Yes.
19          Q      At the time when you reviewed
20     each and every one of Defendants'
21     interrogatory responses, you already
22     testified that you didn't have any
23     knowledge or information upon which to
24     determine if each and every one of
25     Defendants' interrogatory responses were

```
 1                    M. GEYER
 2   correct, right?
 3        A     Yes.
 4        Q     At the time when you reviewed
 5   Defendants' interrogatory responses to
 6   determine if they were accurate did you
 7   have any information upon which to respond
 8   to the question "please identify each
 9   person on whose personal knowledge the
10   answer to any interrogatory or any part of
11   the interrogatory is based in whole or in
12   part"?
13        A     No.
14        Q     And you understand what that
15   means?
16        A     Um-hmm, yes.
17        Q     So at the time that you reviewed
18   interrogatory number 13 to determine if
19   it's accurate -- if Defendants can make an
20   accurate response, you did not have any
21   personal knowledge with respect to
22   Defendants' interrogatory responses but
23   you also did not know if anyone else did,
24   correct?
25        A     That is correct.
```