UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| CIERA WASHINGTON, : | |
| : | |
| Plaintiff, : | |
| : | |
| -against- : | |
| : | Case No.: 17-cv-2393 (JMF) |
| WALGREENS; WALGREENS CO.; DUANE : | |
| READE; DUANE READE INC.; DUANE READE : | |
| INTERNATIONAL, LLC; and Individually and : | |
| Jointly, LUIS GUERRERO; GERMAINE ALLEN; : | |
| VIVIAN GHOBRIAL; and CRYSTAL : | |
| BECKRUM. : | |
| : | |
| Defendants. : | |

------------------------------------------------------------x


**DEFENDANTS WALGREEN CO., DUANE READE INC., DUANE READE
INTERNATIONAL, LLC, GERMAINE ALLEN, AND VIVIAN GHOBRIAL'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**


Dated:  New York, New York
          June 20, 2018


Aaron Warshaw
Shabri Sharma
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
1745 Broadway, 22nd Floor
New York, New York 10019
(212) 492-2500

*Attorneys for Defendants Walgreens, Walgreens Co.,
Duane Reade, Duane Reade Inc., Duane Reade
International, LLC, Germaine Allen, and Vivian Ghobrial*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .................................................................... 1

II.   STATEMENT OF UNDISPUTED FACTS .............................................. 2

      A.    Washington's Employment with Duane Reade .............................. 2

      B.    Washington Read and Agreed to Various Duane Reade Policies.......................... 2

      C.    Washington's Shift Leader Responsibilities .................................. 3

      D.    The Alleged November 2015 Robbery .................................. 4

      E.    The December 2015 Robbery ................................................. 5

      F.    Washington's Time Off From Work Following the
            December 2015 Robbery .......................................................... 6

      G.    The Continuing Investigation of Washington's Participation
            in Two Fraudulent Transactions ............................................... 6

      H.    Washington's Employment Was Terminated for Violating
            Company Policy........................................................................ 8

      I.    Washington's Unfounded Complaints About Defendant
            Guerrero ................................................................................... 9

III.  ARGUMENT ............................................................................................. 9

      A.    Applicable Legal Standard........................................................ 10

      B.    Washington's Discrimination Claims Under Section 1981, Title VII, the ADA,
            the NYSHRL, and the NYCHRL Fail as a Matter of Law and Fact .................. 11

            1.    Washington Cannot Establish Any *Prima Facie*
                  Claim of Discrimination ................................................ 12

                  a.    Washington Was Not Qualified for Her Position ......................... 12

                  b.    Washington Cannot Prove That She Was Terminated Under
                        Circumstances Giving Rise to an Inference of Race, Color and
                        Ethnicity, Disability, or National Origin Discrimination.............. 13

                  c.    Washington Cannot Establish a *Prima Facie* Case of Sex and
                        Gender Discrimination................................................ 16

                  d.    Washington Cannot Establish Her *Prima Facie* Case of
                        Disability Discrimination............................................ 16

2.   Washington's Employment Was Terminated Due to Her
     Misconduct and Violation of Company Policy.........................................18

3.   Washington Cannot Prove That Defendants' Proffered Reason for
     Terminating Her Employment Is Pretext.................................................18

C.   Washington's Retaliation Claims Under Title VII, the NYSHRL, and the
     NYCHRL Fail as a Matter of Fact and Law ...........................................20

1.   Washington Cannot Prove a *Prima Facie* Case of Retaliation
     Under Title VII or the NYSHRL ...........................................................20

2.   Defendants Have Articulated Legitimate, Non-Retaliatory
     Reasons for Their Actions .....................................................................21

3.   Washington Cannot Prove That, But For Her Alleged Protected
     Activities or Any Alleged Complaint, She Would Not Have Been
     Discharged ...........................................................................................21

4.   Washington's Retaliation Claim Under the NYCHRL
     Should Be Dismissed ............................................................................22

D.   Washington Cannot Establish She Was Subjected to a Hostile
     Work Environment.................................................................................23

E.   Washington's Aiding and Abetting Claims Should Be Dismissed.....................24

F.   Washington's Claims Under the Fair Labor Standards Act and the
     NYLL Fail as a Matter of Fact and Law................................................25

IV.   CONCLUSION...............................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Citizens Advice Bureau,*
    187 F.3d 315 (2d Cir. 1999)............................................................................17

*BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.,*
    77 F.3d 603 (2d Cir. 1996)............................................................................11

*Boston v. Taconic Eastchester Mgm't LLC,*
    2016 WL 5719751 (S.D.N.Y. Sept. 30, 2016).........................................14

*Caldarola v. Calabrese,*
    298 F.3d 156 (2d Cir. 2002)............................................................................11

*Colwell v. Suffolk Cty. Police Dept.,*
    158 F.3d 635 (2d Cir. 2003)............................................................................17

*Conway v. Microsoft Corp.,*
    414 F. Supp. 2d 450 (S.D.N.Y. 2006).........................................................19

*Costanzo v. U.S. Postal Serv.,*
    No. 00-CV-5044 (NRB), 2003 WL 1701998 (S.D.N.Y. Mar. 31, 2003) ...............................14

*Crews v. Trustees of Columbia Univ. in City of New York,*
    452 F. Supp. 2d 504 (S.D.N.Y. 2006).........................................................13

*Davis v. Avaya, Inc.,*
    295 F. App'x 380 (2d Cir. 2008) ...................................................................18

*Davis-Bell v. Columbia Univ,*
    851 F. Supp. 2d 650 (S.D.N.Y. 2012).....................................................13, 24

*Dawkins v. Wilco Corp.,*
    103 F. Supp. 2d 688 (S.D.N.Y. 2000).........................................................12

*Derdiarian v. Felix Contracting Corp.,*
    51 N.Y.2d 308, 434 N.Y.S.2d 166 (1980) ...............................................16

*EEOC v. Bloomberg L.P.,*
    967 F. Supp. 2d 816 (S.D.N.Y. 2013).........................................................22

*El Sayed v. Hilton Hotels Corp.,*
    627 F.3d 931 (2d Cir. 2010)............................................................................22

*Falchenberg v. N.Y. State Dep't of Educ.*,
    338 Fed. App'x 11 (2d Cir. 2009) ........................................................................24

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004) ...............................................................................24

*Figueroa v. City of New York*,
    No. 00-CV-7559(SAS), 2002 WL 31163880 (S.D.N.Y. Sept. 27, 2002) .............13

*Fincher v. Depository Tr. & Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010) ...............................................................................20

*Fleming v. MaxMara USA, Inc.*,
    371 Fed. Appx. 115 (2d Cir. 2010) .................................................................19, 20

*Francis v. Pactiv Corp.*,
    No. CV 04-0417 (WD), 2007 WL 879672 (E.D.N.Y. Mar. 21, 2007) ...................16

*Fullwood v. Assoc. for the Help of Retarded Children, Inc.*,
    2010 WL 3910429 (S.D.N.Y. 2010) .................................................................13, 24

*Galabya v. New York City Bd. of Educ.*,
    202 F.3d 636 (2d Cir. 2000) ...............................................................................12

*Gallo v. Prudential Residential Servs., Ltd. P'Ship*,
    22 F.3d 1219 (2d Cir. 1994) ...............................................................................19

*Gonzalez v. City of Schenectady*,
    728 F.3d 149 (2d Cir. 2013) ...............................................................................10

*Greene v. Brentwood Union Free Sch. Dist.*,
    966 F. Supp. 2d 131 (E.D.N.Y. 2013) ................................................................22

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) ...............................................................................16

*Holcomb v. Iona College*,
    521 F.3d 130 (2d Cir. 2008) ...............................................................................12

*Huminski v. Corsones*,
    396 F.3d 53 (2d Cir. 2005) .................................................................................10

*Joseph v. Owens & Minor Distrib., Inc.*,
    5 F. Supp. 3d 295 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 29 (2d Cir. 2015) ..............15, 22

*Kaytor v. Electric Boat Corp.*,
    609 F.3d 537 (2d Cir. 2010) ...............................................................................23

*Kush v. City of Buffalo*,
   59 N.Y.2d 26, 462 N.Y.S.2d 831 (1983) ............................................................16

*Malena v. Victoria's Secret Direct, LLC*,
   886 F. Supp. 2d 349 (S.D.N.Y 2012) ...................................................................25

*Martin v. City of New York*,
   793 F. Supp. 2d 583 (E.D.N.Y. 2011) .................................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................11

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) .................................................................................11, 20, 22

*McLee v. Chrysler Corp.*,
   109 F.3d 130 (2d Cir. 1997) ................................................................................13

*Melman v. Montefiore Med. Cntr.*,
   98 A.D.3d 107 (1st Dep't 2012) ....................................................................12, 22

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
   715 F.3d 102 (2d Cir. 2013) ...........................................................................11, 23

*Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*,
   869 F.2d 100 (2d Cir. 1989) ................................................................................22

*Mormol v. Costco Wholesale Corp.*,
   364 F.3d 54 (2d Cir. 2004) ..................................................................................23

*Mullins v. Consol. Edison Co. of N.Y, Inc.*,
   No. 13 Civ. 6800 (LGS), 2015 WL 4503648 (S.D.N.Y. July 22, 2015) ...............24

*Pacenza v. IBM Corp.*,
   363 F. App'x 128 (2d Cir. 2010) .........................................................................18

*Powell v. Syracuse Univ.*,
   580 F.2d 1150 (2d Cir.), *cert. denied*, 439 U.S. 984 (1978)..................................12

*Primmer v. CBS Studios, Inc.*,
   667 F. Supp. 2d 248 (S.D.N.Y. 2009)..................................................................19

*Raneri v. McCarey*,
   712 F. Supp. 2d 271 (S.D.N.Y. 2010)..................................................................25

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
   369 F.3d 113 (2d Cir. 2004).................................................................................10

*Rodriguez v. City of New York,*
    644 F. Supp. 2d 168 (E.D.N.Y. 2008) ...........................................................................19, 20

*SEC v. Res. Automation Corp.,*
    585 F.2d 31, 33 (2d Cir. 1978)......................................................................................19, 20

*Singh v. State of N.Y. Office of Real Property Serv.,*
    40 A.D.3d 1354 (3d Dep't 2007) .........................................................................................16

*Summa v. Hofstra Univ.,*
    708 F.3d 115 (2d Cir. 2013)................................................................................................20

*Univ. of Texas Southwestern Med. Ctr. v. Nassar,*
    133 S. Ct. 2517 (2013).......................................................................................................20

*Vasquez v. Empress Ambulance Service, Inc.*
    835 F.3d 267, 276 (2d Cir. 2016)........................................................................................14

*Weber v. City of N.Y.,*
    2013 73 F. Supp. 2d 227 (E.D.N.Y. 2013) ..........................................................................23

*Weinstock v. Columbia Univ.,*
    224 F.3d 33 (2d Cir. 2000)..................................................................................................18

*Williams v. New York City Housing Auth.,*
    872 N.Y.S.2d 27 (1st Dep't 2009) ......................................................................................23

*Williams v. Salvation Army,*
    108 F. Supp. 2d 303 (S.D.N.Y. 2000)..................................................................................17

*Ying Jing Gan v. City of N.Y.,*
    996 F.2d 522 (2d Cir. 1993)................................................................................................11

**Statutes and Other Authorities**

42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ...................................................10, 11

Americans with Disabilities Act .......................................................................10, 11, 16, 17

Fair Labor Standards Act ...................................................................................................10, 25

Fed. R. Evid. 801(d)....................................................................................................................6

New York City Human Rights Law............................................................................... *passim*

New York Labor Law .............................................................................................................10, 25

NYSHRL.......................................................................................................................... *passim*

Rehabilitation Act ............................................................................................................10, 11, 16

Title VII ....................................................................................................................... *passim*

## I.   <u>PRELIMINARY STATEMENT</u>

Defendants Walgreen Co. ("Walgreens"), Duane Reade Inc. ("Duane Reade") (Walgreens and Duane Reade collectively, the "Duane Reade Defendants"), Duane Reade International, LLC, Germaine Allen ("Allen"), and Vivian Ghobrial ("Ghobrial") (all defendants are collectively referred to herein as "Defendants") respectfully submit this memorandum of law in support of their summary judgment motion to dismiss the claims of Plaintiff Ciera Washington ("Washington").[1]

Washington, a former employee of Duane Reade, alleges a kitchen's sink worth of discrimination, retaliation, and unpaid wage claims. When boiled down, Washington alleges that: her Store Manager Luis Guerrero ("Guerrero") and Assistant Store Manager Crystal Beckum ("Beckum") allegedly used terms such as "Morena" (meaning "black girl") to refer to Washington; Beckum discriminatorily scheduled Washington to open her store alone and, as a result, Washington was a robbery victim; and the company terminated Washington's employment as prextext for discrimination and retaliation. Her claims fail as a matter of fact and law because: Washington's employment was terminated following the company's thorough and well-documented investigation of two fraudulent transactions involving Washington, from which she benefitted; the company treated Washington no worse than two others involved in the fraudulent transactions, whose employment was also terminated or who quit before being interviewed; there is no evidence that Guerrero or Beckum were at all involved in the decision to terminate Washington's employment; Washington was treated no worse than co-workers who were also

---

[1]      The undersigned does not represent individually named defendants Luis Guerrero and Crystal Beckum (sued herein as Crystal Beckrum), who have either not been properly served and/or have never appeared. Washington also incorrectly named "Walgreens" and "Duane Reade" as defendants. Although those are Defendants' trade names, they are not legal entities. Further, Duane Reade International, LLC is not a proper party at interest in this case.

scheduled to open the store alone; and, other than Washington's self-serving allegations, there is no evidence that she ever complained to Defendants about alleged discrimination or retaliation.

For these reasons, and the reasons below, Washington has failed to articulate sufficient facts to support her *prima facie* claims, let alone to raise genuine issues of material fact to prevent summary judgment. Defendants therefore respectfully request that the Court grant their motion for summary judgment and dismiss each of Plaintiff's claims with prejudice.

## II.    STATEMENT OF UNDISPUTED FACTS[2]

### A.    Washington's Employment with Duane Reade

On or about September 14, 2015, Washington began working for Duane Reade as a Shift Leader at Store No. 14489 located at 3387 Broadway, New York, New York. (56.1, ¶ 1.) Upon hire, Washington earned $10 per hour. (*Id.*, ¶ 2.) When Washington was hired, Guerrero was the Store Manager of Store No. 14489. (*Id.*, ¶ 3.) On or about November 15, 2015, Washington was transferred to Store No. 14417, located at 568 West 125th Street. (*Id.*, ¶ 4.) Washington's rate of pay and title did not change as a result of the transfer. (*Id.*, ¶ 5.) Store No. 14417 is approximately two blocks away from Store No. 14489, and both locations are the same distance from Washington's home. (*Id.*, ¶ 6.) Washington is unsure why she was transferred stores. (*Id.*, ¶ 7.)

At the time Washington transferred, Beckum was the Assistant Store Manager of Store No. 14417. (*Id.*, ¶ 8.) In December 2015, Defendant Germaine Allen ("Allen") became the Store Manager at Store No. 14417. (*Id.*, ¶ 9.) Washington worked as a Shift Leader for Duane Reade until her termination on or about February 23, 2016. (*Id.*, ¶ 10.)

### B.    Washington Read and Agreed to Various Duane Reade Policies

---

[2]    The undisputed facts cited herein are contained in Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("56.1").

Upon hire, Washington was required to read and agree to Duane Reade's policies, including, but not limited to, conduct of business. (56.1, ¶ 11.) She was also provided access to Duane Reade's Employee Handbook, which contained, among other things, Duane Reade's policies on Equal Employment Opportunity, Harassment and Discrimination, Complaint Procedure, Employee Theft, and the Code of Ethics. (*Id.*, ¶ 12.) Washington received training on these and other topics via online modules, which also included register procedures, line voids, refunds, price modifications, and verifications. (*Id.*, ¶ 13.) Failure to follow policies contained in the Employee Handbook and other guidelines of the Company standards subjected Washington to disciplinary action, up to and including termination of employment. (*Id.*, ¶ 14.)

Duane Reade strictly enforces a policy of zero tolerance regarding theft of merchandise, regardless of title or length of service. (*Id.*, ¶ 15.) The definition of "theft" includes, but is not limited to, "ringing merchandise into the register for under the regular price." (*Id.*, ¶ 16.) Any employee who becomes aware of employee theft must immediately report it. (*Id.*, ¶ 17.) Any employee who fails to do so or otherwise violates the policy is subject to disciplinary action, up to and including termination of employment. (*Id.*)

Duane Reade's Employee Handbook also contains the "Reporting Misconduct or Unacceptable Behavior" policy, which states that "[b]usiness risks include [t]heft and dishonesty." (*Id.*, ¶¶ 18-19.) The Employee Handbook also states that, "[i]rresponsible and unacceptable behavior that will result in disciplinary action, up to and including termination" of employment, includes "[g]ross insubordination, misconduct or negligence, [d]ishonesty, stealing and vandalism." (*Id.*, ¶ 21.)

**C.     Washington's Shift Leader Responsibilities**

3

As a Duane Reade Shift Leader, Washington was responsible for managing and tracking store financial performance, cash control, and inventory. (56.1, ¶ 23.) Shift Leaders are also responsible for opening and closing the store in the absence of store management. (*Id.*, ¶ 25.)

Store No. 14417 would generally open at 7:00am. (*Id.*, ¶ 26.)  In  November and December 2015, the schedule at Duane Reade's Store No. 14417 included  a single Manager or Shift Leader scheduled to arrive at 6:30am, and then a second employee (typically a cashier) scheduled to begin working when the store opened at 7:00am. (*Id.*, ¶ 27.) Although Washington makes much ado over the fact that she was scheduled to open Store 14417 alone, the schedule shows that she was treated no differently than co-workers. (*Id.*, ¶ 28.) Specifically, between November and December 2015, numerous employees *other than Washington* were also scheduled to open Store No. 14417 alone, including Beckum, Store Manager Michael Brito, Shift Leader Tyrone Rice, General Clerk Joshua Bryant, Shift Leader Jeffrey Nunez, and Shift Leader Brent Moss ("Moss"). (*Id.*, ¶ 29.)

When Washington's co-Shift Leader Moss opened Store No. 14417, he would typically arrive at 6:45am or 6:50am to turn on the lights, count the safe, and count the registers to have the store ready to open at 7:00am.  (*Id.*, ¶ 30.) During that time, he typically closed the front door, and would then let in the cashiers by the time the store opened at 7:00am. (*Id.*, ¶ 31.)

Washington was scheduled to open Store No. 14417 on November 25, 2015, December 1, 2015, December 2, 2015, and December 16, 2015. (*Id.*, ¶ 32.) On those days, she was scheduled to arrive at 6:30am. (*Id.*, ¶ 33.) On other days in November and December 2015, other employees described above would open the store and were scheduled at 6:30am. (*Id.*, ¶ 34.)

**D.    The Alleged November 2015 Robbery**

Washington alleges that, in November 2015, she was opening the store alone when a "homeless man" robbed the store. (56.1, ¶ 35.) Washington claims that, while she was in the office counting the safe, the man entered the store, Washington confronted him, the man threatened to

4

attack her, and he then left the store. (*Id.*, ¶ 36.) Washington claims that the man left the store with stolen items, and she did not see whether he had a weapon. (*Id.*, ¶ 37.)

## E.      The December 2015 Robbery

On or about December 16, 2015, Washington's store was allegedly robbed while she was working. (56.1, ¶ 38.) Washington was scheduled to begin her shift at 6:30am that day. (*Id.*, ¶ 39.) The surveillance camera footage shows Washington entering the store at approximately 6:21am and going to the alarm panel. (*Id.*, ¶ 42.) Very soon after, a man came in through the doors and approached her at the alarm panel. (*Id.*, ¶ 43.) He then guided Washington back to the office in the rear of the store. (*Id.*, ¶ 44.) Upon entering the office, Washington can be seen stumbling. (*Id.*, ¶ 45.) While in the office, Washington opened the safe while the man stood behind her and removed some cash. (*Id.*, ¶ 46.) They left the office and went to the front register. (*Id.*, ¶ 47.) There, he appears to say something to her, and she took out her identification card from her purse and gave it to him. (*Id.*, ¶ 48.) Washington called the police (911) after the incident, and she was taken to the Mount Sinai Hospital's Emergency Room (the "Emergency Room") shortly after. (*Id.*, ¶ 49.)

The incident does not appear to be physically violent. (*Id.*, ¶ 50.) The video contains no indication that the man carried or used a gun or weapon. (*Id.*, ¶ 51.) Yet, Washington claims that she was told by the doctors at the Emergency Room that she had facial contusions and fractures. (*Id.*, ¶ 68.) Notably, these injuries are not indicated on any Emergency Room reports. (*Id.*, ¶ 69.) Following the robbery, Walgreens' Asset Protection Manager David Jenny ("Jenny") was contacted to conduct an investigation into the incident. (*Id.*, ¶ 70.) During his investigation, at least four police offers at scene informed Jenny that they did not believe a gun was involved in the robbery, and that Washington's statements had changed between the incident and by the time she got to the hospital. (*Id.*, ¶ 71.) The police officers also informed Jenny that Washington's account of the incident did not match with what they saw on the surveillance cameras and what she relayed

at the hospital. (*Id.*, ¶ 72.) For instance, Washington stated that she was pistol whipped by a handgun in the face and that her jaw was broken. (*Id.*, ¶ 73.) However, they did not see any injuries consistent with what she reported. (*Id.*, ¶ 74.)[3]

**F.     Washington's Time Off From Work Following the December 2015 Robbery**

After the alleged December 16, 2015 robbery, Washington did not return to work, and Walgreens' leave department was notified about the alleged robbery and her absence. (56.1, ¶ 75.) As a result, Washington received two weeks of short-term disability benefits, comprising $252.21, and a Workers' Compensation claim was submitted to the carrier Sedgwick. (*Id.*, ¶ 76.) On January 12, 2016, Walgreens' leave department called Washington seeking additional documentation. (*Id.*, ¶ 77.) However, Washington claimed she had already submitted documentation from the Emergency Room, and Washington became hostile at the leave department representative. (*Id.*, ¶ 78.) The leave department representative explained that Washington would need to submit medical records to support her continued time off work. (*Id.*, ¶ 79.) However, Washington did not provide such documentation yet remained off work. (*Id.*, ¶ 80.)

On February 22, 2016, Washington returned to work at Store No. 14489 and she presented a doctor's note for the first time. (*Id.*, ¶ 81.) Thereafter, the leave department representative continued to try to contact Washington seeking documentation to support her time off work and potential claim for Workers' Compensation benefits. (*Id.*, ¶ 82.) Washington never submitted any additional documentation (*Id.*, ¶ 83.)

**G.     The Continuing Investigation of Washington's Participation in Two Fraudulent Transactions**

---

[3]       The police officers' statements are offered to show the inconsistencies in Washington's various statements. Fed. R. Evid. 801(d); 613(b).

Prior to the alleged robbery and Washington's leave of absence, on October 8 and 13, 2015, Washington was involved in at least two fraudulent transactions rung up by her co-worker Greg Spears ("Spears"). (56.1, ¶ 84.) During the October 8th transaction, Spears rung up Washington for the following items: Crest 3D toothpaste, valued at $4.49; an Oral B toothbrush, valued at $9.49; a Travel Kit, valued at $1.29; Colgate mouthwash, valued at $6.99; Listerine mouthwash, valued at $5.49; and Always panty liners, valued at $10.99. (*Id.*, ¶ 85.) Washington should have paid a total of $38.74 for this transaction; yet Spears rang up each of the items for between $0.37 and $0.42, such that the total price of the transaction came out to $2.47. (*Id.*, ¶ 86.)

During the October 13th transaction, Washington purchased three items: Colgate toothpaste, valued at $4.99; Gillette Venus razors, valued at $9.00; and Crest 3D White Strips, valued at $55.99. (*Id.*, ¶ 87.) Notably, Spears voided Washington's purchase of Crest 3D White Strips, but Washington nonetheless can be seen exiting the store with the item in her bag, which was valued at $55.99, (*Id.*, ¶ 88.) Washington should have paid a total of $69.98 for this transaction; yet Spears rang up the two remaining items for $0.42 each, such that the total price of the items came out to $0.84. (*Id.*, ¶ 89.)

Spears' fraudulent transactions, which also included giving similar unauthorized discounts to at least one other employee, was noticed by Guerrero, who then notified Walgreens' Asset Protection department. (*Id.*, ¶ 90.) Asset Protection Manager Troy Hennessy ("Hennessy") was assigned to conduct an investigation. (*Id.*, ¶ 91.) Hennessy conducted an investigation that initially included interviewing Guerrero and Spears. (*Id.*, ¶ 92.) Hennessy concluded that Spears had been making unauthorized price modifications and giving employees unauthorized discounts. (*Id.*, ¶ 93.) Spears admitted to his involvement, and, on November 12, 2015, his employment was terminated. (*Id.*, ¶ 94.) At that point, Hennessy determined that Shayna Davis ("Davis") was also

involved in the modifications. (*Id.*, ¶ 95.) However, Davis resigned before Hennessy could interview her. (*Id.*, ¶ 96.) Hennessy's investigation continued following Spears' termination and Davis' resignation. (*Id.*, ¶ 97.)

Hennessy discovered Washington's involvement by reviewing the October 8 and 13, 2015 transactions described above. (*Id.*, ¶ 98.) By reviewing the transaction reports and video recordings of the transactions, Hennessy concluded that Washington had purchased items that had been rung up by Spears at a suspiciously discounted price. (*Id.*, ¶ 99.) By the time that Hennessy discovered that Washington was also involved in the fraudulent transactions, Washington was off work following the December 16, 2015 robbery. (*Id.*, ¶ 100.)  Due to Washington's absence, Hennessy was unable to interview her until she returned from leave on February 22, 2016. (*Id.*, ¶ 101.)

## H.     Washington's Employment Was Terminated for Violating Company Policy

When Washington returned to work on February 22, 2016, Hennessy interviewed Washington regarding her involvement in the price modifications. (56.1, ¶ 102.) Initially, she claimed that she was distracted during the transactions because she was on her phone. (*Id.*, ¶ 103.) However, the video footage of the transactions does not show that Washington was on her cell phone. (*Id.*, ¶ 104.) In response to Hennessy's investigation, Washington provided a written statement claiming that, in October 2015, she realized that her purchased items had been rung up at a discounted price. (*Id.*, ¶ 105.) According to Washington's statement, Guerrero met with her regarding the modification, and told Washington that all she had to do was pay for the full price of the items because she was new to the company. (*Id.*, ¶ 106.) Guerrero also provided a statement to Hennessy that, on October 16, 2015, it came to his attention that Spears was modifying prices of items purchased by employees, including Washington. (*Id.*, ¶ 107.) He stated that, although he told Washington that she would not be disciplined because she did not know company policies, he still reported the modifications to Asset Protection. (*Id.*, ¶ 108.)

Based on his interview with Washington, Hennessy concluded that Washington was aware of the price modifications at the time she purchased her items and knowingly accepted the unauthorized discounts. (*Id.*, ¶ 109.) Hennessy relayed his findings and the supporting evidence to Ghobrial. (*Id.*, ¶ 110.) As a result, on February 23, 2016, Ghobrial decided to terminate Washington's employment for her misconduct and violation of rules. (*Id.*, ¶ 111.)

**I.     Washington's Unfounded Complaints About Defendant Guerrero**

Washington alleges that, in or around September 2015, Guerrero (allegedly of Spanish decent) made comments toward her that she views as racist and sexist: "You Morenas don't know anything about this" and "You don't eat this type of food," and that she complained about such comments. (56.1, ¶ 112.) Washington also claims that, after she transferred to Store No. 14417, she overheard Guerrero tell Beckum on the phone, "Is the Morena Mujer taking over?" (*Id.*, ¶ 113.) Washington understood that the comment was referring to her, and she believes it is racist. (*Id.*, ¶ 114.) Other than this alleged comment, Washington had no contact with Guerrero after she transferred to Store No. 14417 on November 15, 2015. (*Id.*, ¶ 115.)

Washington also claims that her co-workers called her a "Black Bitch!" and "Morena." (*Id.*, ¶ 118.) Washington further asserts that her co-workers made alleged comments that she was "too black to have tattoos" and was "black like my sweater." (*Id.*, ¶ 119.) Washington also claims that, in or around November 2015, she was left out on a "supervisor meeting" held by Guerrero and Beckum, who allegedly referred to Washington as "Morena" during the meeting. (*Id.*, ¶ 120.) Washington claims she called Ghobrial to complain about Guerrero. (*Id.*, ¶ 116.) However, Ghobrial denies that Washington ever complained to her about Guerrero. (*Id.*, ¶ 117.) In fact, Washington never complained of discrimination, harassment, or retaliation at any point during her employment. (*Id.*, ¶ 121.)

**III.     ARGUMENT**

9

Washington's Amended Complaint alleges: (1) discrimination and retaliation based on race, color, and ethnicity (Black) under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); (2) discrimination and retaliation based on national origin (African-American) under Title VII, the NYSHRL, and the NYCHRL; (3) discrimination and retaliation based on disability under the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act, the NYSHRL, and the NYCHRL; (4) discrimination and retaliation based on gender (female) under Title VII, the NYSHRL, and the NYCHRL; and (5) claims for unpaid wages (failure to pay accrued but unused sick pay) under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and retaliation under the FLSA and the NYLL.[4]

## A.      Applicable Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (quotations omitted); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that it is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Once the moving party has met its burden, "'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The nonmoving party may _not_ "rely

---

[4]      Washington's 86-page Amended Complaint sets forth thirty-two (32) Causes of Actions, For sake of brevity, and to adhere to the 25-page limit set forth in the Court's Individual Rules, Defendants have grouped Washington's causes of actions and responded to them collectively.

simply on conclusory statements . . . or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532-533 (2d Cir. 1993) (quotations and citations omitted). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (*quoting SEC v. Res. Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978*). Under this standard, no trier of fact could find for Washington on any of her claims.

**B.    Washington's Discrimination Claims Under Section 1981, Title VII, the ADA, the NYSHRL, and the NYCHRL Fail as a Matter of Law and Fact**

Washington's First through Twelfth, Fifteenth through Nineteenth, Twenty-First, Twenty-Second, Twenty-Fifth, Twenty-Seventh, Twenty-Ninth, and Thirty-First Causes of Actions are for race, color and ethnicity, national origin, disability and sex and gender discrimination under Section 1981, Title VII, the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL. These claims are analyzed under the burden-shifting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework.[5] Under that framework, Washington must demonstrate: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) the adverse employment action took place under circumstances giving a rise to an inference of discrimination based on Washington's membership in the protected class. *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008); *Melman v. Montefiore Med. Cntr.*, 98 A.D.3d 107, 112-13 (1st Dep't 2012). If Washington satisfies her *prima facie* burden, the burden shifts to Defendants to articulate a legitimate, non-

---

[5]    It is unclear whether the *McDonnell Douglas* and "mixed-motive" framework is still applicable under the NYCHRL. *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013). Nonetheless the NYCHRL is not a "general civility code," and Washington "still bears the burden of showing that the conduct is caused by a discriminatory motive." *Id.* at 102 (citation omitted).

discriminatory reason for their business decisions. *Id*. Washington retains the ultimate burden to prove that Defendants' proffered reason was merely pretext for intentional discrimination. *Id.*

### 1.   Washington Cannot Establish Any *Prima Facie* Claim of Discrimination

Under the third element of her *prima facie* case, Washington's transfer to Store No. 14417 was not an adverse employment action because her job title, pay, and duties remained the same, and the stores are only two blocks away from each other and therefore the same distance from Washington's home. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000) (transfer not adverse action because no evidence that change in assignment was materially less prestigious, less suited to plaintiff's skills and expertise, or less conducive to career advancement). As such, Washington's discrimination claims based upon the transfer are not actionable.

Assuming *arguendo* that Washington otherwise satisfied all elements of her *prima facie* case, she cannot prove that: (1) she was qualified for her position; or (2) the termination of her employment occurred under circumstances giving rise to an inference of discriminatory animus.

### a.   Washington Was Not Qualified for Her Position

To meet the second prong of her *prima facie* case, Washington "must show that [she] was qualified for the position at the time of the discharge, regardless of whether [she] had performed the position satisfactorily in the past." *Dawkins v. Wilco Corp.*, 103 F. Supp. 2d 688, 696 (S.D.N.Y. 2000) (citing *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir.), *cert. denied*, 439 U.S. 984 (1978) (to establish second prong of *prima facie* case, plaintiff must show that "[her] performance was of sufficient quality to merit continued employment.")). Washington's involvement in the fraudulent transactions – and, at the very least, her failure to report Spears' obvious fraud – makes her unqualified for the position of Shift Leader. Indeed, theft does not equate to satisfactory job performance. *Crews v. Trustees of Columbia Univ. in City of New York*, 452 F. Supp. 2d 504, 522

(S.D.N.Y. 2006) ("'Satisfactory performance' by definition does not include theft."). For this reason alone, Washington has failed to prove her *prima facie* case of discrimination.

> **b.**   **Washington Cannot Prove That She Was Terminated Under Circumstances Giving Rise to an Inference of Race, Color and Ethnicity, Disability, or National Origin Discrimination**

To resolve the fourth element of Washington's *prima facie* case, the Court must determine whether her proffered evidence shows circumstances that would permit a rational fact-finder to infer a discriminatory motive. *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997). Even under the more demanding NYCHRL, courts readily dismiss discrimination claims arising from attenuated allegations. *Davis-Bell v. Columbia Univ*, 851 F. Supp. 2d 650, 674-75 (S.D.N.Y. 2012) (dismissing NYCHRL claim where co-worker made race-based comments); *Fullwood v. Assoc. for the Help of Retarded Children, Inc.*, 2010 WL 3910429, at *9 (S.D.N.Y. 2010) (same).

Washington's discrimination claims rest solely on her uncorroborated belief that her co-workers Guerrero and Beckum possessed discriminatory animus toward her, and that they somehow influenced the decision to terminate her employment. At most, Washington has merely asserted a personality conflict with her co-workers Beckum and Guerrero, but that alone is not evidence of discriminatory animus. *Figueroa v. City of New York*, No. 00-CV-7559(SAS), 2002 WL 31163880, at *3 (S.D.N.Y. Sept. 27, 2002) ("Courts have repeatedly granted summary judgment where the evidence points, not to gender or racial animus, but rather to the fact that plaintiff's personality is the motivation for the harassment.") (collecting cases). Even if Washington could prove that she was left out of a manager's meeting (which she was not), neither this fact alone nor in combination with the alleged comments amount to evidence of discriminatory animus. *Costanzo v. U.S. Postal Serv.*, No. 00-CV-5044 (NRB), 2003 WL 1701998, at *9 (S.D.N.Y. Mar. 31, 2003) ("Considered either alone or in combination, these alleged acts [including being left off a meeting agenda] simply cannot be characterized as either continuous or

13

concerted" and thus do not constitute a discriminatory conduct). Moreover, there is no evidence to support Washington's claim that she ever complained about alleged discriminatory comments or being left out of the alleged "supervisor meeting."

Critically, even if Guerrero and Beckum's alleged comments did occur (which Defendants deny), they do not demonstrate that Washington's termination of employment occurred due to discriminatory animus. As the Second Circuit held in *Vasquez v. Empress Ambulance Service, Inc.*, a plaintiff may only sustain a "cat's paw" theory of liability if she can show that a decision-maker negligently relied upon a co-worker's discriminatory intent in reaching an employment decision. 835 F.3d 267, 276 (2d Cir. 2016) (where defendant "knew or should have known" that coworker's accusations "were the product of retaliatory intent and thus should not have been trusted," defendant chose to "ignore these warning signs and instead blindly credited" the coworker's account, thus creating issue of fact that precluded summary judgment); *see also Boston v. Taconic Eastchester Mgm't LLC*, 2016 WL 5719751, at *7-8 (S.D.N.Y. Sept. 30, 2016) (applying *Vasquez* and granting summary judgment where plaintiff failed to produce evidence that decision makers relied upon discriminatory intent of co-workers to terminate employment).

There is no evidence whatsoever that Ghobrial (who made the decision to terminate Washington's employment) or Hennessy (who conducted the investigation into the fraudulent transactions) relied upon any statement by Guerrero or Beckum to terminate Washington's employment. In fact, the evidentiary record shows that Hennessy conducted an independent investigation and concluded for himself that Washington was aware of the price modifications at the time that she purchased her items, and that she knowingly accepted the unauthorized discounts. This conclusion is plainly supported by the video evidence submitted herein, which shows – contrary to Washington's claim at the time she was interviewed that she was distracted by her cell

14

phone – that she was fully engaged with Spears during the transactions. As a result of Hennessy's conclusion, which is wholly supported by the evidentiary record, Ghobrial decided to terminate Washington's employment for her misconduct and violation of rules.

Moreover, per Washington's statement to Hennessy, Guerrero attempted to treat Washington favorably because he told Washington that all she had to do was pay for the full price of the items. As such, it was only due to Hennessy's ongoing investigation that Ghobrial made the decision to terminate Washington's employment, but there is no evidence that Hennessy or Ghobrial relied upon any discriminatory or retaliatory statement by Guerrero or Beckum to conclude that Washington had engaged in the fraudulent transactions.

Washington nonetheless believes <u>all</u> actions taken against her were discriminatory and that she was subject to conditions at work to which other employees were not exposed. However, Washington's "mere subjective belief that [s]he was discriminated against . . . does not sustain [her] . . . discrimination claim." *Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 309 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 29 (2d Cir. 2015) (citations omitted). Washington's claim that she was discriminated against when required to open the store alone is meritless because the evidentiary record shows that her co-workers were also scheduled to open Store No. 14417 alone many occasions, and therefore she was treated no worse than her colleagues. Even assuming *arguendo* that a reasonable jury would somehow agree with Washington that she was singled out to open the store by herself, she cannot offer any evidence that this decision was motivated by

discriminatory animus toward her.[6] In light of Washington's inability to offer any evidence that the termination of her employment or any other adverse employment action occurred under circumstances giving rise to an inference of discrimination, no genuine issue of material fact exists and her *prima facie* case of discrimination fails as a matter of law.

> **c.      Washington Cannot Establish a *Prima Facie* Case of Sex and Gender Discrimination**

In addition to the arguments above, Plaintiff has not alleged that anyone made any comment or reference to her gender, which is fatal to her gender discrimination claims. *Francis v. Pactiv Corp.*, No. CV 04-0417 (WD), 2007 WL 879672, at *13 (E.D.N.Y. Mar. 21, 2007) (dismissing claims and holding that absence of discriminatory comments precludes inference of discrimination); *Singh v. State of N.Y. Office of Real Property Serv.*, 40 A.D.3d 1354 (3d Dep't 2007) (dismissing claims where plaintiff unable to offer evidence of discriminatory comments).

> **d.      Washington Cannot Establish Her *Prima Facie* Case of Disability Discrimination**

Washington's Third, Fifth, Fifteenth, and Twenty-Fifth Causes of Actions are for disability discrimination under the ADA,[7] NYSHRL, and NYCHRL. As a threshold matter, Washington's disability claims fail because she cannot prove she was disabled or perceived as

---

[6]      At the very least, Washington's theory that being required to open the store alone caused the robbery, which then caused her miscarriage, is completely attenuated and not recoverable as a matter of law. *Martin v. City of New York*, 793 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) ("When there is an intervening act or omission that is 'extraordinary under the circumstances' and is 'not foreseeable in the normal course of events' it may break the causal chain of events and remove liability from an earlier acting defendant.") (citing *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 170 (1980)); *see also Kush v. City of Buffalo*, 59 N.Y.2d 26, 33, 462 N.Y.S.2d 831, 835 (1983) ("An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant."). Even if Washington could *arguendo* succeed in proving that her supervisors possessed discriminatory intent when they scheduled her to open the store alone, it is far too attenuated to blame Defendants for the fact that the store was robbed while she was working.

[7]      Washington's Amended Complaint includes a claim under the Rehabilitation Act. Such claims are analyzed under the same framework as the ADA. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (noting only "subtle distinctions" between the two acts).

16

disabled under any federal, state, or city laws. "It is not enough . . . that the employer regarded [an] individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled *within the meaning of the ADA*." *Colwell v. Suffolk Cty. Police Dept.*, 158 F.3d 635, 646 (2d Cir. 2003) (emphasis in original). In fact, the evidence shows that Washington did not suffer any significant injuries as a result of the purported robbery, much less anything that would constitute a disability. Even if *arguendo* Washington were "pistol whipped" or twisted her ankle as she claimed at the time, such temporary impairments do not constitute a disability because, to establish a disability under the ADA, Washington must provide proof of permanency. *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316–17 (2d Cir. 1999) (temporary neck, back, and knee injury lasting three and a half months not disability); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998) (temporary impairment of seven months not substantially limiting); *Williams v. Salvation Army*, 108 F. Supp. 2d 303, 312–13 (S.D.N.Y. 2000) ("[T]emporary, non-chronic impairments of short duration, with little or no long-term or permanent impact, are usually not disabilities.").

Moreover, Washington failed to provide any medical documentation to Duane Reade indicating that she needed a medical accommodation due to any disability, injury, or diagnosis. Duane Reade nonetheless allowed Washington to remain on unapproved leave for approximately two months, which shows positive treatment toward her. The first time that Washington provided a doctor's note was when she finally returned to work on February 22, 2016. Yet, the note merely stated she could leave work if she felt nervous. The note did not reference the December 2015 robbery, her alleged injuries resulting from the robbery, nor her need for leave or any other accommodation following the robbery. Even if Washington could prove she was disabled – which she cannot do – she cannot establish that she was qualified to perform the essential functions of

17

her job, or that she suffered an adverse employment action *because of* her disability, or was refused a reasonable accommodation. Her *prima facie* case of disability discrimination thus fails.

### 2. Washington's Employment Was Terminated Due to Her Misconduct and Violation of Company Policy

Even assuming Washington could prove her *prima facie* discrimination case – which she cannot do – Defendants have articulated a legitimate, non-discriminatory reason for terminating Washington's employment: Washington engaged in theft and violated company policy when she knowingly purchased suspiciously discounted products, and she failed to report Spears' actions. The company reasonably determined that Washington collaborated with Spears to engage in what the handbook defines as theft.[8] Washington's blatant disregard of company policies is a well-established legitimate, non-discriminatory basis for discharge. *Pacenza v. IBM Corp*., 363 F. App'x 128, 131 (2d Cir. 2010) (finding plaintiff failed to establish pretext where plaintiff's conduct was clear violation of defendant's policies, and there was no reason to conclude that Plaintiff was singled out or treated more harshly than similarly situated co-workers). Defendants therefore satisfy their burden at this stage.

### 3. Washington Cannot Prove That Defendants' Proffered Reason for Terminating Her Employment Is Pretext

To satisfy her ultimate burden, Washington must rebut evidence of Defendants' legitimate, nondiscriminatory reason for her dismissal with specific evidence tending to show not only that that reason was pretext, but that unlawful discrimination was the real reason for the employment decision. *Davis v. Avaya, Inc.,* 295 F. App'x 380, 382 (2d Cir. 2008) (*citing Weinstock v. Columbia Univ*., 224 F.3d 33, 42 (2d Cir. 2000). Washington cannot do so.

---

[8]     Indeed, the evidentiary record shows that Washington engaged in actual theft – she took an item (Crest White Strips) valued at $55.99 but did not pay for the item. (56.1, ¶¶ 87-89.) Although there is no evidence that Hennessey or Ghobrial discovered this fact when they concluded that Washington had engaged in fraudulent transactions, this evidence surely shows that their conclusion was fully justified.

Ghobrial decided to terminate Washington's employment following Hennessy's extensive investigation into the October price modification incidents, which included Hennessy gathering witness statements and reviewing the video footage of the transactions. Washington's actions were deemed unacceptable because Ghobrial concluded that Washington had engaged in fraudulent misconduct in violation of company policies. This determination led to Washington's discharge – not discrimination or her alleged disability or any other protected characteristic.

Washington cannot prove that this decision was pretext for unlawful discrimination. Washington's subjective disagreement with the termination of her employment is insufficient to prove pretext. *Fleming v. MaxMara USA, Inc.*, 371 Fed. Appx. 115, 117-18 (2d Cir. 2010) (plaintiff's "disagreement with defendants over whether her behavior was inappropriate does not show that their stated reasons for terminating her were not their true reasons"); *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008) ("[T]he fact that an employee disagrees with an employer's decision regarding termination, or even has evidence that the decision was objectively incorrect or was based on a faulty investigation, does not automatically demonstrate, by itself, that the employer's proffered reasons are a pretext for termination."); *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 464 (S.D.N.Y. 2006) ("While plaintiff may wish to criticize [disciplinary] procedures, 'courts must be careful not to second guess an employer's judgment that it makes in good faith.'") (quoting *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1226 (2d Cir. 1994)).

Moreover, Spears's employment was also terminated for his involvement in the fraudulent price modifications, and Davis quit her employment before she could be interviewed. *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 261 (S.D.N.Y. 2009) (A plaintiff may show pretext "by demonstrating that similarly situated employees outside the protected class were *treated*

19

*differently.*") (emphasis added, citation omitted). As described above, Duane Reade's decision to terminate Washington's employment was solely a business decision, and the Court's role is not to second guess such decisions. *Fleming*, 371 Fed. Appx. at 117-18; *Rodriguez*, 644 F. Supp. 2d at 187. As such, Washington cannot establish pretext.

## C.     Washington's Retaliation Claims Under Title VII, the NYSHRL, and the NYCHRL Fail as a Matter of Fact and Law

Washington's Second, Fourth, Sixth, Eighth, Tenth, Twelfth, Sixteenth, Eighteenth, Twentieth, Twenty-Sixth, Twenty-Eighth, Thirtieth, Thirty-Second Causes of Action are for retaliation under Title VII, the NYSHRL, and the NYCHRL. Retaliation claims under Title VII and the NYSHRL are analyzed under the *McDonnell Douglas* burden-shifting framework. In order to establish a *prima facie* case of retaliation, Washington must show that: (1) she engaged in a protected activity; (2) Defendants were aware of this activity; (3) Defendants took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). If Washington succeeds in establishing a *prima facie* case, the burden shifts to Defendants to articulate a legitimate, non-retaliatory reason for its action. *Id*. If Defendants succeed at the second stage, the presumption of retaliation dissipates, and Washington must show that, but for the protected activity, she would not have been subjected to an adverse employment action. *Id.*; *Summa v. Hofstra Univ.*, 708 F.3d 115, 129 (2d Cir. 2013) (plaintiff must show that retaliation was the determinative factor); *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2520-21 (2013) (Title VII retaliation claims "require proof that the desire to retaliate was the but-for cause of the challenged employment action.")

### 1.     Washington Cannot Prove a *Prima Facie* Case of Retaliation Under Title VII or the NYSHRL

Washington's *prima facie* retaliation case fails because she cannot establish a causal nexus between a protected activity and adverse action. Other than Washington's own self-serving testimony, there is no evidence that Washington ever complained about discrimination. Moreover, Washington unilaterally took a leave of absence and refused to provide any documentation to support her need to remain out on leave. The company nonetheless treated Washington favorably by allowing her to take an unapproved leave and to return to work when she wished. To the extent Washington relies on the temporal proximity between her return to work and her termination as circumstantial evidence of causation, that too is insufficient. As explained above, Hennessy was unable to conclude his investigation while Washington was on leave. Moreover, Washington was terminated as soon as Ghobrial determined that Washington violated company policies – not due to her disability or leave. Washington therefore cannot prove that any protected activity was the but-for cause of her dismissal.

### 2. Defendants Have Articulated Legitimate, Non-Retaliatory Reasons for Their Actions

Assuming *arguendo* that Washington can establish a *prima facie* case of retaliation (which she cannot), as set forth above, Defendants have articulated their legitimate reason for their actions: Washington engaged in misconduct and violated company policy. As such, Defendants have met their burden of articulating legitimate, non-retaliatory explanations for Washington's discharge.

### 3. Washington Cannot Prove That, But For Her Alleged Protected Activities or Any Alleged Complaint, She Would Not Have Been Discharged

Washington must prove that she would not have been discharged but for her complaints. "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Joseph*, 5 F. Supp. 3d at 319 (citations omitted). Whether Defendants' decision to terminate Washington was misguided or "wrong"

should be of no interest to the Court; rather, the Court must only determine whether the termination was retaliatory – which it was not. *Greene v. Brentwood Union Free Sch. Dist*., 966 F. Supp. 2d 131, 156 (E.D.N.Y. 2013) ("Federal courts do not have a 'roving commission to review business judgments,' and may not 'sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions.'") (*quoting Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989)). Moreover, "the temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp*., 627 F.3d 931, 933 (2d Cir. 2010).

Washington cannot prove pretext or that retaliation was the but-for cause of her discharge. As explained above, Washington has failed to come forward with any evidence that the reason Defendants terminated her was in any way false or pretexual. To the contrary, Washington was terminated for violating company policy for knowingly participating in two fraudulent transactions. *Supra* B.2. Washington's mere disagreement with her termination does not suffice to prove pretext. Indeed, there is no evidence that her alleged protected activity played any role in the termination. There is nothing on the face of the termination itself or in Washington's testimony that can be construed as evidence of pretext. For all the foregoing reasons, Plaintiff's retaliation claims under Title VII and the NYSHRL must be dismissed as a matter of law.

### 4.    Washington's Retaliation Claim Under the NYCHRL Should Be Dismissed

Retaliation claims under the NYCHRL are analyzed under both the "mixed-motive" framework and the *McDonnell Douglas* framework. *Melman*, 98 A.D.3d at 113; *EEOC v. Bloomberg L.P*., 967 F. Supp. 2d 816, 836 (S.D.N.Y. 2013). To prevail on a retaliation claim, "the plaintiff must show that she took an action opposing her employer's discrimination . . . and that,

*as a result*, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (*citing Williams v. N.Y. City Housing Auth.*, 872 N.Y.S.2d 27, 33-34 (1st Dep't 2009)) (emphasis added). Even under the more liberal NYCHRL standard, a plaintiff opposing summary judgment must still demonstrate "evidence that 'link[s] her complained-of [treatment] to a retaliatory motivation.'" *Weber v. City of N.Y.*, 2013 73 F. Supp. 2d 227, 272-73 (E.D.N.Y. 2013) (dismissing NYCHRL retaliation claim because no reasonable jury could have found that plaintiff's poor performance evaluations, leading to his suspension, were motivated by retaliatory animus). As set forth above, Washington has failed to prove that Defendants' termination of her employment was a result of retaliatory motive in response to her alleged complaint, protected characteristic, her disability, or absence from work. For these reasons, as well as those discussed above, Washington's NYCHRL retaliation claim fails.

**D.     Washington Cannot Establish She Was Subjected to a Hostile Work Environment**

For substantially the same reasons that her discrimination and retaliation claims fail, no reasonable jury would find that Washington's co-workers acted with disrespect toward her, let alone that they did so due to Washington's protected status. Even if the Court were to credit Washington's uncorroborated allegations, which it should not do, her purported evidence fails to sustain a hostile work environment claim as a matter of law. *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547-48 (2d Cir. 2010) ("Facially neutral incidents" may be considered in evaluating hostile work environment claim provided that plaintiff presents "some circumstantial or other basis for inferring that incidents [race-]neutral on their face were in fact discriminatory."); *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir. 2004) ("mere offensive utterance" does not suffice to state acclaim for Title VII hostile work environment); *Mullins v. Consol. Edison Co. of N.Y., Inc.*, No. 13 Civ. 6800 (LGS), 2015 WL 4503648, at *5 (S.D.N.Y. July 22, 2015) (granting

23

summary judgment on NYCHRL claim where plaintiff relied solely on "occasional jokes" with racial tint, and on comment that she "speaks well"); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 676 (S.D.N.Y. 2012) (under NYCHRL, "single statement [that defendant did not like blacks] is insufficient to establish that Plaintiff was subject to a hostile work environment because of her race").  The alleged comments here, *supra* II.I, do not rise to the level of a hostile work environment under federal, state, and city law. *See, e.g.*, *Davis-Bell v. Columbia Univ*, 851 F. Supp. 2d 650, 674-75 (S.D.N.Y. 2012) (dismissing NYCHRL claim where co-worker told plaintiff that "the University and herself did not like blacks" and plaintiff was only African-American employee at facility and only one required to clean carpets); *Fullwood v. Assoc. for the Help of Retarded Children, Inc*., 2010 WL 3910429, at *9 (S.D.N.Y. 2010) (dismissing NYCHRL claim where manager made two race-based comments regarding "colored [persons who] don't have such great attitudes" and black employee who was "in the cotton fields").

### E.      Washington's Aiding and Abetting Claims Should Be Dismissed

To the extent Washington alleges aiding and abetting claims under the NYSHRL and NYCHRL against Allen and Ghobrial, such claims must fail because "aiding and abetting is only a viable theory where an underlying violation has taken place." *Falchenberg v. N.Y. State Dep't of Educ.*, 338 Fed. App'x 11, 14 (2d Cir. 2009) (district court did not err in dismissing claims for aiding and abetting where no underlying violation of NYCHRL); *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (applying same standard to NYSHRL and NYCHRL aiding and abetting claims). Washington's NYSHRL and NYCHRL discrimination claims against the Duane Reade Defendants fail, and therefore none of the individual defendants can be deemed to have been an aider and abettor under those statutes.

Even if Washington could establish that Ghobrial and Allen engaged in discriminatory conduct against her, which she cannot, they cannot be liable as an aider or abettor because one

cannot aid or abet his or her own conduct. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y 2012) (citation and alterations omitted) ("an individual may not be held liable merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating' that law"); *Raneri v. McCarey*, 712 F. Supp. 2d 271, 282 (S.D.N.Y. 2010) ("An individual cannot aid and abet his own alleged discriminatory conduct.") (citations omitted). As such, the discrimination aiding and abetting claims fail.[9]

**F.      Washington's Claims Under the Fair Labor Standards Act and the NYLL Fail as a Matter of Fact and Law**

Washington also cannot establish that she is owed unpaid wages for her unused sick time under the FLSA or NYLL. The evidence shows that Washington lacked any accrued sick or vacation leave at the time her employment was terminated.  (56.1 ¶ 122.) Washington's retaliation claim under the NYLL also fails because at no time did Washington ever complain of any violation of the NYLL.

## IV.      CONCLUSION

Based on the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in favor of Defendants and dismiss all of Washington's claims in full and with prejudice, and award such other relief as the Court deems just and proper.

---

[9]      To the extent Washington's aiding and abetting claims against the individual Defendants are based on retaliation, there is absolutely no evidence in the record from which a reasonable jury could conclude that any of the individual Defendants retaliated against Washington in any way.

Dated:  New York, New York
         June 20, 2018

                         Respectfully submitted,

                         OGLETREE, DEAKINS, NASH,
                          SMOAK & STEWART, P.C.

                         By /s Aaron Warshaw
                             Aaron Warshaw
                             Shabri Sharma
                         599 Lexington Avenue, 17th Floor
                         New York, New York 10022
                         (212) 492-2500
                         aaron.warshaw@ogletree.com
                         shabri.sharma@ogletree.com

                         *Attorneys for Defendants Walgreens, Walgreens Co., Duane Reade, Duane Reade Inc., Duane Reade International, LLC, Germaine Allen, and Vivian Ghobrial*

                                         34368325.6