**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------**X**

CIERA WASHINGTON,

       Plaintiff,      **Civil Action No.: 17-cv-2393 (JMF)**

   -against-


WALGREENS; WALGREENS CO.; DUANE
READE; DUANE READE INC.; DUANE READE
INTERNATIONAL, LLC; and Individually and
Jointly, LUIS GUERRERO; GERMAINE ALLEN;
VIVIAN GHOBRIAL; and CRYSTAL BECKRUM.

     Defendants.

-----------------------------------------------------------------**X**




## MEMORANDUM OF LAW IN OPPOSITION

## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LAW OFFICES OF LAURIE E. MORRISON
*Attorney for Plaintiff*
100 Church Street, Suite 801
New York, New York 10007
(212) 721-4051 (office)
(646) 651-4821 (fax)
morrison@lemorrisonlaw.com

## <u>CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

POINT I ............................................................................................................................... 2

GENUINE FACTUAL DISPUTES EXIST TO DEFEAT DEFENDANTS' MOTION IN
ITS ENTIRETY ................................................................................................................... 2

A.   SUMMARY JUDGMENT STANDARD ................................................................... 2

B.   KEY FACTUAL DISPUTES WARRANTING DENIAL OF DEFENDANTS' MOTION
       3

   1)   Defendants Paid Plaintiff Disability Benefits During Her Leave ........................... 3

   2)   Defendants' Awareness of Plaintiff's Medical Leave ........................................... 3

   3)   Defendants' Awareness of Plaintiff's Medical/Health Conditions And Hospitalization ....... 4

   4)   Plaintiff's Complaints Regarding The November, 2015 Robbery In Defendants' Store ....... 4

   5)   Defendants Did Not Assert Claims Against Plaintiff Until 3-5 Weeks After Plaintiff's
Workplace Injuries And Medical Leave .................................................................. 5

POINT II .............................................................................................................................. 5

A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY
DISCRIMINATED AGAINST PLAINTIFF BASED ON PLAINTIFF'S DISABILITIES
AND MEDICAL LEAVE .................................................................................................... 5

A.   DISCRIMINATION PRIMA FACIE CASE ............................................................. 5

   1)   ADAAA and The New York State Human Rights Law ......................................... 5

   2)   The New York City Law Is More Broadly Construed Than The ADAAA And The New
York State Law ......................................................................................................... 6

B.   PLAINTIFF WAS DISABLED AS A MATTER OF LAW ....................................... 6

   1)   Defendants Regarded Plaintiff As Disabled .......................................................... 7

   2)   Plaintiff's Actual Disabilities ................................................................................. 8

   3)   Plaintiff's Record Of Disabilities ......................................................................... 10

C.   A REASONABLE JURY CAN FIND THAT PLAINTIFF WAS QUALIFIED TO
PERFORM HER JOB ......................................................................................................... 11

D.   A REASONABLE JURY CAN FIND CAUSATION AND THAT DEFENDANTS'
PROFFERED REASONS FOR SUSPENDING AND FIRING PLAINTIFF WERE
PRETEXTUAL ................................................................................................................... 12

   1)   Defendants' Questionable Timing Demonstrates Causation And Pretext ................ 12

a.   Defendants Learned That Spears Price Modified Plaintiff's Items In October, 2015 ....... 12

b.   Once Plaintiff Was Notified, She Reimbursed Defendants For The Total Amount That Spears Discounted In October, 2015 ................................................................................... 13

2)   **Close Proximity Between Plaintiff's Workplace Injuries/Medical Leave And Defendants' Adverse Actions** ................................................................................... 13

a.   Plaintiff's Suspension Pending Defendants' Investigation Was An Adverse Employment Action .......................................................................................................... 14

b.   Plaintiff's Firing Was An Adverse Employment Action ................................................ 14

c.   Defendants Suspended Plaintiff  11 Days After She Was Hospitalized And Placed On Medical Leave ................................................................................................................ 15

d.   Defendants Fired Plaintiff On The Same Day Plaintiff's Medical Leave Ended ............. 15

3)   **Defendants' Proffered Reasons For Their Adverse Actions Are "Unworthy Of Credence"** ...................................................................................................................... 16

4)   **Defendants' Allegations Against Plaintiff Regarding Price Modifications Are Baseless** ...................................................................................................................... 17

a.   Gregory Spears Price Modified Plaintiff's Items, Not Plaintiff ...................................... 17

b.   Spears' Price Modifications Regarding Plaintiff's Items Were $25 ................................. 17

c.   Plaintiff Was Not Included As A "Person Of Interest" In Defendants' Primary Investigation .................................................................................................................. 17

d.   Defendants Have No Explanation For Why Plaintiff Was Not Included As A "Person Of Interest" In Their Primary Investigations ........................................................................ 18

C.   **Defendants Fired Every Person Allegedly Involved In Spears' Activities In October/November, 2015** ............................................................................................ 19

D.   **Defendants Did Not Investigate Plaintiff Until 4 Months After The Price Modifications Occurred And Spears Was Fired** ............................................................ 19

i.   Defendants Did Not Interview Witnesses Regarding Plaintiff Until 4 Months Later ....... 20

ii.   Defendants Did Not Investigate The November, 2015 Robbery Until 5 Weeks Later -- After Plaintiff Was Robbed For A Second Time .................................................................. 20

E.   **Defendants' Claims Are Contradicted By Their Own Investigation File** .................. 21

5)   **Defendants Suspended And Fired Plaintiff In Violation Of Their Own Company Policies** ...................................................................................................................... 22

6)   **Defendants' Allegations Regarding Purported Violations Of Company Policies Are Baseless** ...................................................................................................................... 23

a.   Defendants Do Not Have A Company Policy Regarding Price Modifications Performed By Third Parties ................................................................................................................ 23

b.  Defendants Did Not Have A Company Policy Requiring Termination For Not Checking Bags Before Leaving Defendants' Store ............................................................................. 24

c.  Defendants Recanted Their Claim That Plaintiff Purchased Items During Working Hours 24

**7)  Plaintiff's Account Of The December, 2015 Robbery Is Consistent With The Police Report And With Defendants' Investigation File** .................................................. 25

**POINT III** ................................................................................................. 25

**A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFF BASED ON RACE/COLOR, ETHNICITY, SEX AND GENDER** ...................................................................................... 25

**1)  Plaintiff Sets Forth Discriminatory Comments Directed Towards Plaintiff's Protected Classes** ...................................................................................... 25

**2)  Scheduling Plaintiff To Open Defendants' Store Alone Was An Adverse Employment Action** .................................................................................. 26

**POINT IV** ................................................................................................. 27

**A REASONABLE JURY CAN FIND THAT DEFENDANTS CREATED A HOSTILE WORK ENVIRONMENT** ................................................................................ 27

**A.  Prima Facie Case** .............................................................................. 27

**B.  The Evidence Must Be Evaluated As A Whole, Not Separately As Defendants Incorrectly Assert** ................................................................................. 28

**C.  Plaintiff's Claims Demonstrate A Hostile Work Environment** ................... 29

**POINT V** ................................................................................................. 30

**A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY RETALIATED AGAINST PLAINTIFF** ............................................................. 30

**A.  Plaintiff Complained Against Defendants' Unlawful Activities** ................. 31

**POINT VI** ................................................................................................. 31

**A REASONSBLE JURY COULD FIND THAT DEFENDANTS VIOLATED THE FLSA AND THE NEW YORK LABOR LAW** .............................................................. 31

**CONCLUSION** .......................................................................................... 32

**INTRODUCTION**

Defendants' motion warrants denial in its entirety.  The "facts" set forth in Defendants' Brief and Statement of "Undisputed" and Material Facts bear little resemblance to the actual facts contained in the evidentiary record.

Defendants also misstate and/or outright ignore key, undisputed facts that warrant summary judgment *in Plaintiff's favor*. Such undisputed facts include Defendants' inability to articulate *any* company policies that Plaintiff violated; Defendants subsequent recanting claims that Plaintiff violated any company policies; and the fact that Defendants did not allege that Plaintiff was somehow involved in Gregory Spears' price modifications until *4 months after* the modifications occurred and Defendants fired Mr. Spears.

Nonetheless, Defendants suspended and fired Plaintiff (claiming that she was somehow involved in Spears' activities) – 5 weeks after Plaintiff was severely injured at work and hospitalized on December 16, 2015, and the same day that Plaintiff's medical leave was scheduled to end on February 22, 2016.

Defendants also improperly recite contested "facts" in a light most favorable to themselves, rather than granting Plaintiff those inferences as Fed. R. Civ. P. 56 requires.  To request that this Court to grant the extreme remedy of summary judgment on the basis of a record replete with genuinely disputed key facts does a disservice to the Court and violates Plaintiff's Seventh Amendment rights.

## STATEMENT OF FACTS

To avoid duplicative factual summaries, Plaintiff respectfully refers the Court to Plaintiff's annexed Counter-Statements to Defendants' Rule 56.1 Statements and to the facts asserted in the legal argument sections of the herein memorandum.

## POINT I

## GENUINE FACTUAL DISPUTES EXIST TO DEFEAT DEFENDANTS' MOTION IN ITS ENTIRETY

### A.  SUMMARY JUDGMENT STANDARD

"A motion for summary judgment may not be granted unless the court determines that there is _no_ genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." Cronin v. Aetna Life Ins. Co., No. 94-7419, 1995 U.S. App. LEXIS 1552, *202 (2d Cir., Jan. 25, 1995) (emphasis added); Fed. R. Civ. P. 56(c). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment." Id.; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Further, the Court's role in determining a summary judgment motion is "limited to issue finding not issue resolving." Rotuba Extrudens v. Ceppos, 46 NY2D 223 (1978); _see also_ Amatulli v. Delhi Construction Corp., 77 NY2d 525, 531-532 (1991) (same).  As the Second Circuit held in Cronin v. Aetna Life Ins. Co., "[o]n a motion for summary judgment, 'a court cannot try issues of fact; it can only determine whether there are issues to be tried.'" No. 94-7419, 1995 U.S. App. LEXIS 1552, *202, _quoting_ Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987) (internal quotes omitted). Courts are further required to "resolve all

ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." Cronin, No. 94-7419, 1995 U.S. App. LEXIS 1552.

The Second Circuit has long recognized that courts must be cautious when granting summary judgment in employment discrimination cases because the employer's intent is frequently at issue – as is the case here. Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1998); Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989).

Here, not just one – but *several* genuine disputes of material fact exist to defeat Defendants' motion in its entirety.  For those facts not in dispute, the evidence weighs heavily, if not entirely, in Plaintiff's favor.

## B. KEY FACTUAL DISPUTES WARRANTING DENIAL OF DEFENDANTS' MOTION

Examples of factual disputes requiring denial of Defendants' motion – and examples of indisputable evidence belying Defendants' claims -- include, but are not limited to, the following:

1)  Defendants Paid Plaintiff Disability Benefits During Her Leave

Belying Defendants' claims that they somehow did not regard Plaintiff as disabled, payroll records show that **on "12/29/15" and on "1/13/2016" --** during Plaintiff's leave -- Defendants paid Plaintiff a combined $262.21 for what Defendants called **"Temporary Total Disability."** (Defendants' Payroll Records, Bates No. 100-101, attached to Morrison Decl., EXHIBIT 1).

2)  Defendants' Awareness of Plaintiff's Medical Leave

Further belying Defendants' claim that Plaintiff's leave was somehow not medically/health related:

3

- Defendant Germaine Allen testified that **"[he] was there at the time of the robbery, that's when [Plaintiff] said she get injured in her face, that when she went on relief [] I mean on medical leave."** (Allen Dep., attached to Morrison Decl., <u>EXHIBIT 2</u>, 185:13-186:4);

- Defendant Vivian Ghobrialtestified that **"According to [Plaintiff] she went to the hospital and she's seeking medical benefits. …** (Ghobrial Dep., <u>EXHIBIT 3</u>, 91:21-92:14).

3) <u>Defendants' Awareness of Plaintiff's Medical/Health Conditions And Hospitalization</u>

Belying Defendants' claims that Plaintiff somehow did not provide medical documents to support her approved leave; or that Plaintiff somehow never requested a medically/heath required accommodation (Defendants' Brief, 24-26 of 34) -- Defendants received a letter from Mount Sinai Hospital, stating that:

- **"Ciera Washington was seen at the World Trade Center Health Program/Selikoff Centers for Occupational Health on 2/19/16. She may return to work on 02/22/16 at which time if she feel any way nervous or threatened she may leave work to avoid a panic attack."** (Letter from Mount Sinai Hospital, Bates No. DR 000034, attached to Morrison Decl., <u>EXHIBIT 4</u>).

4) <u>Plaintiff's Complaints Regarding The November, 2015 Robbery In Defendants' Store</u>

Belying Defendants' claim that Plaintiff somehow never complained about the November, 2015 robbery, Defendants' Internal Investigation Form states that:

- **"Reporting Party" Ciera Washington reported that a "Theft or Fraud" occurred in Defendants' "Store #14417 - 568 W 125TH ST NEW YORK, NY."** (External Incident: IC10005749071, Bates No. DR 000157-159, attached to Morrison Decl., <u>EXHIBIT 5</u>, Bates No. 000157);

- Defendants' Internal Investigation Form was created on November 16, 2015, and it states that the **"Theft or Fraud" occurred on November 14, 2015."** (Id.)

5) <u>Defendants Did Not Assert Claims Against Plaintiff Until 3-5 Weeks After Plaintiff's Workplace Injuries And Medical Leave</u>

- **"Q: [] So before Plaintiff was robbed in December you never saw a video with respect to Plaintiff being involved in price modification, right? A: Correct. Q: And before Plaintiff was robbed in December you never saw any documentation or any other information related to Plaintiff allegedly being part of a price modification; is that correct? A: Correct."** (Ghobrial Dep., <u>EXHIBIT 3</u>, 112:5-15);

- Defendant Ghobrial further admitted that there was no indication that Plaintiff asked Mr. Spears to modify the prices of items in any way. (Ghobrial Dep., <u>EXHIBIT 3</u>, 136:24-137:23).

## <u>POINT II</u>
## <u>A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFF BASED ON PLAINTIFF'S DISABILITIES AND MEDICAL LEAVE</u>

### A.  DISCRIMINATION PRIMA FACIE CASE

1) <u>ADAAA and The New York State Human Rights Law</u>

The Americans with Disabilities Act, as amended (hereinafter, the "ADAAA"), grants protection from employment discrimination to any "qualified individual with a disability." 42 U.S.C. § 12112(a). Employment discrimination claims asserting disparate treatment are analyzed under the three-step burden-shifting framework set forth by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981).

Plaintiff defeats a motion for summary judgment by demonstrating by the preponderance of the evidence that: (1) Plaintiff fell within a protected class; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 45 (2d Cir. 2015) (quoting Burdine, 450 U.S. at 252-53).

"The requirements to establish a *prima facie* case are 'minimal,' and a plaintiff's burden is therefore not 'onerous.'" Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128 (2d Cir. 2012) (internal citations omitted).

2)   The New York City Law Is More Broadly Construed Than The ADAAA And The New York State Law

As the Second Circuit held in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., "federal courts reviewing [New York City Human Rights Law] NYCHRL claims must … analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." 715 F.3d 102, 112-113 (2d Cir. 2013) (internal citations and quotations omitted).  "[T]he totality of the circumstances must be considered because 'the overall context in which [the challenged conduct occurs] cannot be ignored.'" Id.

**B.  PLAINTIFF WAS DISABLED AS A MATTER OF LAW**

Addressing the first prong of the *prima facie* case, 2009 amendments sought to "reinstat[e] a broad scope of protection to be available under the ADA."  42 U.S.C. § 12101(b)(1).  Under the ADAAA, "disability" is still defined as "a physical or mental impairment that substantially limits

one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). However, Congress mandates that "disability" "shall be construed in favor of broad coverage" and the question of whether an impairment amounts to a disability "should not require extensive analysis." 42 U.S.C. §§ 12102(4)(A); 12102(4)(B); 28 CFR 35.101(b); 29 CFR 1630.1(c)(4).

A court's analysis of the ADAAA must now shift away from the complicated side-show of whether someone is disabled, and instead focus on the real question: whether there was illegal discrimination. 28 CFR 35.101(b); 29 CFR 1630.1(c)(4). The amendments make crystal clear that the primary focus in ADAAA cases "should be whether [covered] entities have complied with their obligations," not whether an individual's impairment amounts to a disability.  42 U.S.C. § 12101.

Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."   42 U.S.C. § 12102(2)(A).


1) <u>Defendants Regarded Plaintiff As Disabled</u>

Plaintiff was on leave from December 16, 2015 (date of workplace robbery and hospitalization) to February 22, 2016. Payroll records show that **on "12/29/15" and on "1/13/2016" -- during Plaintiff's leave --** Defendants paid Plaintiff a combined $262.21 for what Defendants called **"Temporary Total Disability."** (Defendants' Payroll Records, Bates No. 100-101, <u>EXHIBIT 1</u>). Therefore, Defendants themselves labeled Plaintiff as "disabled" after she was assaulted at work, hospitalized and placed on leave.

Defendant Germaine Allen, who was one of Plaintiff's direct supervisors, also testified that **"[he] was there at the time of the robbery, that's when [Plaintiff] said she get injured in her face, that when she went on relief [] I mean on medical leave."** (Allen Dep., <u>EXHIBIT 2</u>, 185:13-186:4). **Q: "Okay. So you know that she went on medical leave after the robbery? A: Yes."** (Allen Dep., <u>EXHIBIT 2</u>, 186:5-7).

Defendant Vivian Ghobrial, who is a supervisor in Defendants' HR department, advised that Plaintiff contact Defendants' medical benefits department during her leave to ensure that she receive coverage for her medical expenses; **"According to [Plaintiff] she went to the hospital and she's seeking medical benefits. I said it's to your benefit to contact the benefit department so you don't get hit with any bills so we can have a case for her case."** (Ghobrial Dep., <u>EXHIBIT 3</u>, 91:21-92:14).

2) <u>Plaintiff's Actual Disabilities</u>

It is indisputable that the December, 2015 robbery caused Plaintiff to be severely injured, hospitalized and placed on medical leave.  A police report and wanted poster state that the **"Detective Squad is attempting to identify the above individual in connection with a gun point Robbery which occurred inside of 568 West 125 street [Plaintiff's workplace]."** (Police Report & Flyer, attached to Morrison Decl., <u>EXHIBIT 6</u>).  The wanted poster further states that **"On December 16, 2015. The above suspect went inside the store and force victim into office and forcible removed property …"** (Id.).  An email from supervisor Robert Petrarchi further states that **"Store 14417 was the victim of a robbery [on December 16, 2015]."** (Email from Robert Petrarchi, date unknown, attached to Morrison Decl., <u>EXHIBIT 7</u>).

Records from Mount Sinai's Emergency Department where Plaintiff was rushed after the December Robbery read **"CLINICAL INDICATION: "Struck in head and face multiple times. Evaluate for fracture."** (Medical records from Mount Sinai Hospital Emergency Department, dated 12/16/15, attached to Morrison Decl., EXHIBIT 8, Bates No. Ciera Washington00021).   Those records further describe that **"PT arrives via ems s/p assault while working in Duane Reade. Pt states she was pistol whipped to the face and in the process fell over a chair injuring her left ankle. + swelling noted to right periorbital area and pt states left side of face is what is hurting her the most."** (EXHIBIT 8, Bates No. Ciera Washington00022).

Doctors further noted **"Periorbital and nasal tenderness ... Left ankle swelling and tenderness over the lateral mal ... A/P assault with facial trauma and left ankle sprain ... +Periorbital tenderness B/L ... +nasal bridge tenderness and swelling ... Assessment: Physical assault, Facial contusions r/o fx ... L ankle pain r/o fx"** (EXHIBIT 8, Bates No. Ciera Washington00024, 00033).

The above records indicate that Plaintiff's injuries substantially limited her ability to walk, to stand and to work. 42 U.S.C. § 12102(2)(A) (Major life activities "include, but are not limited to …walking, standing and working.").

Emergency room doctors also noted Plaintiff's emotional distress: **"Pt is very nervous as she states assailant took her state id with him"**, **"She appears distressed (upset and scared)"** (EXHIBIT 8, Bates No. Ciera Washington00034-35).

During Plaintiff's medical leave, Defendants also received a letter from Mount Sinai Hospital requesting medically required accommodations on Plaintiff's behalf: **"Ciera Washington was seen at the World Trade Center Health Program/Selikoff Centers for Occupational Health on**

**2/19/16. She may return to work on 02/22/16 at which if she feel any way nervous or threatened she may leave work to avoid a panic attack.**" (Letter from Mount Sinai Hospital, Bates No. DR 000034, attached to Morrison Decl., <u>EXHIBIT 4</u>).  There can be no question that Defendants received this letter during Plaintiff's employment -- because Defendants produced the letter to Plaintiff, as signified by Defendant Duane Reade's Bates Stamp No. "DR 000034."

Further demonstrating Plaintiff's disabilities, the above records indicate that Plaintiff also suffered from panic attacks and anxiety. 74 Fed. Reg. 48,442 (Sept. 23, 2009) (impairments that substantially limit major life activities include panic attacks and anxiety).

3)  <u>Plaintiff's Record Of Disabilities</u>

Plaintiff's disabilities are well-documented.  In addition to the above discussed documents, Defendants also received over 1,500 pages of certified medical records regarding Plaintiff's medical/health conditions since her assault and hospitalization in December, 2015.  To preserve the confidentiality of these records, and to avoid flooding the Court with voluminous files, Plaintiff did not file these records on ECF. However, their existence is indisputable, as Defendants bates stamped the documents DR 775-842, DR 852-2240 and DR 2706-2719.

In light of the above, there can be no doubt that Plaintiff was disabled under the ADAAA. The *purpose* of the ADAAA was to make it easier for individuals to meet the definition of disability and to therefore be protected from discrimination. *See* 42 U.S.C. 12102(4)(A).  To satisfy the definition of disabled, Plaintiff need only prove that her impairments substantially limit *one* major life activity -- which Plaintiff has far exceeded. 42 U.S.C. 12102(4)(C).

Further, the NYSHRL and NYCHRL "do not require[] *any* showing that the disability substantially limits a major life activity." <u>Giordano v. City of New York</u>, 274 F.3d. 740, 753 (2d

Cir. 2001) (emphasis added).  Accordingly, Plaintiff's several well-documented ailments qualify as disabilities under the NYSHRL and the NYCHRL as well.

At the very least, these are disputed issues *for a jury to decide* – *not* Defendants – which requires denial of Defendants' motion on this count. <u>Cronin v. Aetna Life Ins. Co.</u>, No. 94-7419, 1995 U.S. App. LEXIS 1552, *202 (2d Cir., Jan. 25, 1995) ("A motion for summary judgment may not be granted unless the court determines that there is *no* genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."); Fed. R. Civ. P. 56(c).

## C. <u>A REASONABLE JURY CAN FIND THAT PLAINTIFF WAS QUALIFIED TO PERFORM HER JOB</u>

The Supreme Court and Second Circuit are clear that demonstrating Plaintiff's qualification for her position is a *de minimus* task.  "As we have repeatedly held, the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that [s]he possesses the basic skills necessary for performance of [the] job." <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 91-92 (2d Cir.2001) (internal citations omitted).

"As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." <u>Id</u>; *see also* <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253-254 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous…."); <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 358 n.44 (1977) ("Although the McDonnell Douglas formula does not require direct proof of discrimination, it does demand that the alleged discriminatee demonstrate at least that his

rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought. Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one.")

Here, Plaintiff was qualified to perform the essential functions of her job, as Plaintiff did so for three months, without incident – until the December, 2015 robbery caused Plaintiff to be hospitalized and placed on medical leave.  As discussed below, Defendants' claims that Plaintiff was somehow not qualified because of Spears' price modifications and because of purported policy violations are highly questionable.

### D.  A REASONABLE JURY CAN FIND CAUSATION AND THAT DEFENDANTS' PROFFERED REASONS FOR SUSPENDING AND FIRING PLAINTIFF WERE PRETEXTUAL

The final element requires that plaintiff demonstrate that her disabilities and medical leave were causally related to Defendants' adverse employment actions.

Plaintiff can demonstrate the last element of a prima facie case by showing that adverse actions occurred in circumstances from which a reasonable jury could infer unlawful intent. Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002); Cifra v. GE, 252 F.3d 205, 217 (2d Cir. 2001).

An inference of discriminatory intent may also be gleaned from a variety of circumstances, including "…the sequence of events leading to the plaintiff's discharge." Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009).

#### 1)  Defendants' Questionable Timing Demonstrates Causation And Pretext

##### a.  Defendants Learned That Spears Price Modified Plaintiff's Items In October, 2015

**"On October 16, 2015, I Luis Guerrero reviewed the AP dashboard. I noticed prices were modified to less than the cost by another associate other than Ciera Washington."** (Luis Guerrero Witness Statement, dated February 22, 2016, attached to Morrison Decl., <u>EXHIBIT 9</u>).

Defendants' Internal Investigation Form further states that Defendants thoroughly investigated the price modifications in October and November, 2015, that Defendants fired Gregory Spears in November, 2015. (*See Ref.* <u>EXHIBITS 11 & 12</u>, attached to Morrison Decl.)

        b.  <u>Once Plaintiff Was Notified, She Reimbursed Defendants For The Total Amount That Spears Discounted In October, 2015</u>

Defendant Guerrero alerted Plaintiff of Spears' price modifications in October, 2015; **"Ciera Washington was approach with professionalism was told that the purchase that she made on October 8, 2015 were modify to less than the original cost of goods."** (Guerrero Witness Statement, <u>EXHIBIT 9</u>).

Once alerted, Plaintiff paid the total difference in pricing in October, 2015; **"Since she was new to the company she does not have any knowledge of company policy. I decide to ring her over and make her paying for the original retail price."** (Guerrero Witness Statement, <u>EXHIBIT 9</u>).

In light of the above, any issues related to Plaintiff's purchases were resolved in October, 2015. Therefore, Defendants suspending and firing Plaintiff 4 months later purportedly due to Spears' activities defies logic.

**2)  <u>Close Proximity Between Plaintiff's Workplace Injuries/Medical Leave And Defendants' Adverse Actions</u>**

The causal connection needed to prove causation and/or pretext "can be established indirectly by showing that the protected activity was closely followed in time by the adverse

action," which occurred in the instant case. <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996); <u>Treglia</u>, 313 F.3d at 720.

      a.  <u>Plaintiff's Suspension Pending Defendants' Investigation Was An Adverse Employment Action</u>

The Second Circuit defines an adverse employment action as a "materially adverse change in the terms and conditions of employment" – which includes suspensions pending investigations as occurred here. <u>Chung v. City of New York</u>, 605 F. App'x 20, 22 (2d Cir. 2015).

As the Second Circuit held in <u>Anemone v. Metro. Transp. Auth.</u>, "[a]llegations that [defendant] instigated an allegedly retaliatory investigation leading to [plaintiff's] suspension and firing were sufficient, if proven, to constitute an adverse employment action…" 629 F.3d 97, 112 (2d. Cir 2011).

"[Even if Plaintiff is later reimbursed], suspension without pay is sufficient to constitute an adverse employment action … The plaintiff thus may have at least suffered the loss of the use of her wages for a time. This would be sufficient to support a jury's finding that she suffered an adverse employment action." <u>Lovejoy-Wilson v. NOCO Motor Fuel, Inc.</u>, 263 F.3d 208, 223 (2d. Cir. 2001).

      b.  <u>Plaintiff's Firing Was An Adverse Employment Action</u>

"Recognized examples of adverse employment actions include, but are not limited to, "termination of employment …" <u>Sanders v. New York City Human Res. Admin.</u>, 361 F.3d 749, 755 (2d Cir. 2004).

    c.  <u>Defendants Suspended Plaintiff  11 Days After She Was Hospitalized And Placed On Medical Leave</u>

Plaintiff was injured at work and hospitalized on December 16, 2015, and Plaintiff went on approved leave thereafter. (*See Ref.* Police Report & Flyer, <u>EXHIBIT 6</u>; medical records from Mount Sinai Hospital Emergency Department, dated 12/16/15, Bates No. Ciera Washington00017-47, <u>EXHIBIT 8</u>).  On or around December 27, 2015 – *11 days later* -- Defendants notified Plaintiff that she was suspended from work pending investigation into alleged price modifications. (Amended Complaint, Dkt. #29, ¶¶ 224-225).

    d.  <u>Defendants Fired Plaintiff On The Same Day Plaintiff's Medical Leave Ended</u>

Defendant Ghobrial testified that she decided to fire Plaintiff on February 22, 2016[1] – the day that Plaintiff was scheduled to return from medical leave. (Ghobrial Dep., <u>EXHIBIT 3</u>, 296:17-297:8; letter from Mount Sinai Hospital, <u>EXHIBIT 4</u>). Defendant Ghobrial also sent an email stating that states that February 22, 2016 was Plaintiff's "Last day worked." (email from Defendant Vivian Ghobrial, dated unknown, attached to Morrison Decl., <u>EXHIBIT 10</u>).

The close temporal proximity between Plaintiff's disability/medical leave and Defendants' adverse actions suffice to establish both causation and pretext. <u>Treglia</u>, 313 F.3d at 720; *see also*, <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 769 (2d Cir. 1998) (two months between protected activity and adverse action sufficient to establish causation); <u>Johnson v. Palma</u>, No. 88-7846, 1991 U.S. App. LEXIS 7065 (2d Cir., April 2, 1991) (same).

---

[1] "Q: When did you make the decision to fire Plaintiff? A: I believe February 22. Q: What year, 2016? A: Yes. Q: Right after Plaintiff -- the day Plaintiff came back from medical leave? A: Right after her interview, loss prevention interview. Q: Understood, with Troy Hennessy? A: Yes. Q: And that was the date that Plaintiff returned to work after medical leave, right? A: Correct." (Ghobrial Dep., <u>EXHIBIT 3</u>,  296:17-297:8).

3) <u>**Defendants' Proffered Reasons For Their Adverse Actions Are "Unworthy Of Credence"**</u>

Plaintiff is not required to produce evidence that directly contradicts Defendants' purported reasons for Plaintiff's suspension and firing to defeat summary judgment. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993).

Rather, as the Supreme Court established in <u>Reeves v. Sanderson Plumbing Prods.</u>, "once the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reasons, that is, to prove that they are 'unworthy of credence,' there is no requirement that the plaintiff come forward with additional independent evidence of discrimination." 530 U.S. 133, 148-149 (2000). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." <u>Id</u>. at 147; <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. at 511. "Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination [and] no additional proof of discrimination is required." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. at 511; <u>Reeves</u>, 530 U.S. at 147.

It is undisputed that Defendant Vivian Ghobrial was the primary decision-maker in Plaintiff's suspension and firing[2]. Defendant Ghobrial claims that Defendants suspended and fired Plaintiff for the same reasons[3]: because Plaintiff was somehow involved in Gregory Spears' price modifications; and because of a purported "Violation of Rules." (Email from Defendant Vivian

---

[2] ; "Q: So you make the determination – you made the determination to fire Plaintiff, right? A: Yes." (Ghobrial Dep., ==EXHIBIT 3==, 108:7-10).

[3] "Q: You suspended Plaintiff for the same reasons that you fired her, correct? A: Correct. Q: So we can talk about your reasons for suspending and firing Plaintiff jointly because they are the exact same reasons? A: Correct." (Ghobrial Dep., ==EXHIBIT 3==, 296:9-16).

Ghobrial, attached to Morrison Decl., <u>EXHIBIT 10</u>).  Defendants do not assert any other reasons for their adverse employment actions against Plaintiff.[4]

### 4) <u>Defendants' Allegations Against Plaintiff Regarding Price Modifications Are Baseless</u>

#### a.   <u>Gregory Spears Price Modified Plaintiff's Items, Not Plaintiff</u>

It is undisputed that former employee, Gregory Spears, was the person who rang up items at modified prices – not Plaintiff; **"[Gregory Spears] admitted to price modifying the items for several employees … Q: So you know that Plaintiff didn't ring up the items, right? A: Yes."** (Ghobrial Dep., <u>EXHIBIT 3</u>, 135:20-22; 136:17-23).  Defendant Ghobrial further admitted that there was no indication that Plaintiff asked Mr. Spears to modify the prices of items in any way. (Ghobrial Dep., <u>EXHIBIT 3</u>, 136:24-137:23).

#### b.   <u>Spears' Price Modifications Regarding Plaintiff's Items Were $25</u>

As a threshold matter, the total amount at issue here is approximately $25.  That is the total discount that Plaintiff received -- and repaid Defendants -- as a result of Gregory Spears' price modifications on October 8, 2015.

#### c.   <u>Plaintiff Was Not Included As A "Person Of Interest" In Defendants' Primary Investigation</u>

The Investigation Form for Defendants' primary investigation lists 3 "persons of interest" regarding Spears' price modifications. (Internal Investigation Form, Read Only: IC10005624886, attached to Morrison Decl., <u>EXHIBIT 11</u>, Bates No. DR 000848)  Plaintiff's name is <u>*not*</u> included.

---

[4] "Q: And there are no other provisions in the employee handbook that you relied on to suspend or fire Plaintiff other than what you already testified to, correct? A: Correct." (Ghobrial Dep., <mark>EXHIBIT 3</mark>, 294:6-11).

Defendants' primary Investigation Form is identical to Defendants' subsequent Investigation Form – except that the former does not list Plaintiff as person of interest. (*Compare*, Internal Investigation Form, Read Only: IC10005624886, attached to Morrison Decl., <u>EXHIBIT 11</u>, Bates No. DR 000848 *verses* Internal Case Form, Read Only: IC10005966063, attached to Morrison Decl., <u>EXHIBIT 12</u>, Bates No. DR 000166).

Similar to Defendant Guerrero's witness statement, the Investigation File shows that Defendants knew Spears modified the prices of items that Plaintiff purchased in October/November, 2015.  "On 11/12/2015 Subject Spears was terminated by SM after HR recommendation." (Internal Investigation Form – Read Only: IC10005624886, <u>EXHIBIT 11</u>, Bates No. DR 000849).  "Further review of video shows [] (Subject Davis) and Ciera Washington (Subject Washington) receiving discounted merchandise from Subject Spears as well." (Id.).

The Form also reads "Date Created 11/2/2015" and "Date of Incident: 11/2/2015"; therefore, Defendants created this file contemporaneously with their investigation – yet Plaintiff is <u>*not*</u> included as a suspect in any way. (Internal Investigation Form – Read Only: IC10005624886, <u>EXHIBIT 11</u>, Bates No. DR 000847).

Defendants claim that "Subject Washington is currently on medical leave" during their primary investigation – which is simply not true. (Internal Investigation Form – Read Only: IC10005624886, <u>EXHIBIT 11</u>, Bates No. DR 000849)  It is undisputed that Plaintiff's medical leave did not begin until December 16, 2015.  Therefore, Plaintiff was at work and available to be investigated in October – Mid-December, 2015.  Still, Defendants did not investigate Plaintiff in any way.

      d.  <u>Defendants Have No Explanation For Why Plaintiff Was Not Included As A "Person Of Interest" In Their Primary Investigations</u>

Defense witness Troy Henessey, who investigated Defendants' claims against Plaintiff, testified that he did not know why Plaintiff was not included as a person of interest in Defendants' primary investigation. (Hennessey Dep., April 3, 2018, attached to Morrison Decl., <u>EXHIBIT 13</u>, 274:12-16).  **"Q: So you cannot state for certain as to why Ciera Washington is not listed as the subject of allegation on DR848, correct? A: No, I cannot."** (Hennessey Dep., April 3, 2018, <u>EXHIBIT 13</u>, 274:12-16).

### C. <u>Defendants Fired Every Person Allegedly Involved In Spears' Activities In October/November, 2015</u>

Every person allegedly involved in Spears' price modifications were fired in October/November, 2015, respectively. (Internal Investigation Form – Read Only: IC10005624886, <u>EXHIBIT 11</u>, Bates No. DR 000847-848).  Plaintiff, however, was not fired until February 23, 2016 – *3 months later.*  (Internal Investigation Form – Read Only: IC10005624886, <u>EXHIBIT 11</u>, Bates No. DR 000848).

### D. <u>Defendants Did Not Investigate Plaintiff Until 4 Months After The Price Modifications Occurred And Spears Was Fired</u>

Defendants' Investigation Form regarding Plaintiff reads **"Date of Incident: 11/2/15"** and **"Date Created: 3/1/2016"** – meaning Defendants did not create their Investigation Form until <u>*4 months*</u> after the incident occurred. (Internal Case Form, Read Only: IC10005966063, attached to Morrison Decl., <u>EXHIBIT 12</u>, Bates No. DR 000165).

Defendant Ghobrial further testified that **"there was a request to fire the Plaintiff for theft … sometime in January 2016."** (Ghobrial Dep., <u>EXHIBIT 3</u>, 108:15-109:21).  **"Q: [] So before Plaintiff was robbed in December you never saw a video with respect to Plaintiff being involved in price modification, right? A: Correct. Q: And before Plaintiff was robbed in December you**

**never saw any documentation or any other information related to Plaintiff allegedly being part of a price modification; is that correct? A: Correct."** (Ghobrial Dep., <u>EXHIBIT 3</u>, 112:5-15).

          i.    <u>Defendants Did Not Interview Witnesses Regarding Plaintiff Until 4 Months Later</u>

Defendant Guerrero claimed that he reported Spears' price modifications to Defendants' Asset Purchase ("AP") department in October, 2015. (Luis Guerrero's Witness Statement, dated February 22, 2016, <u>EXHIBIT 9</u>). However, Defendants did not interview Defendant Guerrero regarding Plaintiff until February 22, 2016 – *4 months later*. (Guerrero Witness Statement, <u>EXHIBIT 9</u>).

Defendants also did not interview Plaintiff until February, 22, 2016. (*See Ref.* Washington Witness Statement, dated February 22, 2016, attached to Morrison Decl., <u>EXHIBIT  14</u>).

          ii.    <u>Defendants Did Not Investigate The November, 2015 Robbery Until 5 Weeks Later -- After Plaintiff Was Robbed For A Second Time</u>

Defendants' Internal Investigation Form states that **"Reporting Party" Ciera Washington reported that a "Theft or Fraud" occurred in Defendants' "Store #14417 - 568 W 125TH ST NEW YORK, NY."** (External Incident: IC10005749071, <u>EXHIBIT 5,</u> Bates No. DR 000157).

Defendants' Internal Investigation Form was created on November 16, 2015, and it states that the **"Theft or Fraud" occurred on November 14, 2015."**  (I External Incident: IC10005749071, <u>EXHIBIT 5,</u> Bates No. DR 000157).

Defendants' Internal Investigation Form reads **"Please Complete This Investigation Within 30 Days."** (<u>EXHIBIT 5</u>, at Bates No. DR 000157). However, Defendants did not begin their investigation until December 22, 2015 – over *5 weeks later*. (<u>EXHIBIT 5</u>, at Bates No. DR 000158).

Specifically, the Internal Investigation Form reads, in relevant part, that **"Asset Protection Manager (APM) Kristin Catucci spoke with Assistant Store Manager 14417 (ASM) Crystal Bectrum on 12/23/15 regarding the concern brought up by Shift Lead (STL) 14417 Ciera Washington."** (EXHIBIT 5, at Bates No. DR 000158).

Therefore, Defendants did not investigate the November, 2015 robbery until *after* the second robbery occurred on December 16, 2015 – which resulted in Plaintiff being beaten, hospitalized and placed on medical leave. Defendants' claims of ignorance with respect to the November, 2015 robbery further calls into question their motives and activities.

### E.  Defendants' Claims Are Contradicted By Their Own Investigation File

Defendant Guerrero alleged that Plaintiff and Mr. Spears were "working together and they created a pattern of price modification that lead to termination of Gregory Spears on November, 2015." (Guerrero Witness Statement, EXHIBIT 9).    However, the evidentiary record thoroughly undermines Guerrero's claims.

Investigator Troy Hennessey interviewed Defendant Guerrero and was present when Guerrero drafted and signed his witness statement on February 22, 2016. According to Mr. Hennessey, **"the entirety of the items that Gregory Spears price modified that Ciera Washington purchased were four transactions in total"**[5], and all of those transactions occurred in early October, 2015. (Hennessey Dep., EXHIBIT 13, 194:8-195:12).  This hardly indicates a purported "pattern" of conduct as Defendant Guerrero claimed.

---

[5] "Q: The entirety of the items that Gregory Spears price modified that Ciera Washington purchased were four transactions in total, correct, do you remember? A: Correct." (Hennessey Dep., Feb. 13, 2018, ==EXHIBIT 13==, 194:8-195:12).

Mr. Hennessey further testified that Defendant Guerrero mentioned nothing about a purported "pattern" of conduct on Plaintiff's part; that no one ever mentioned to him that Plaintiff was supposedly involved in any such pattern; that no one ever asked Mr. Hennessey to look into any sort of pattern with respect to Plaintiff; and that there was nothing in Defendants' Investigation File to indicate that any such pattern occurred in any way. (Hennessey Dep., <u>EXHIBIT 13</u>, 195:13-196:23).

**5)  <u>Defendants Suspended And Fired Plaintiff In Violation Of Their Own Company Policies</u>**

As the Second Circuit held in <u>Norville v. Staten Island University Hosp.</u>, 196 F.3d 89, 97 (2d Cir. 1999), evidence that the employer "departed from its usual employment practices and procedures" in dealing with the plaintiff supports an inference of discrimination.

Similarly, in <u>Cosgrove v. Sears, Roebuck & Co.</u>, the Second Circuit affirmed the employer's liability for unlawful retaliation where, as here, the employer did not follow its own procedures before it fired the plaintiff after his legally protected complaint. No. 92-7197, 1993 U.S. App. LEXIS 30041, *1040 (2d. Cir., Nov. 19, 1993).

Company policy required that Defendants investigate Plaintiff within a reasonably short time period after Spears' October, 2015 price modifications – *not 4 months later* as Defendants did here.

According to 30(b)(6) witness, Michael Geyer, company policy required that **"If someone's suspended, that would be investigated, the reasons before they are suspended [] A: As Policy, yes."** (Geyer Dep., <u>EXHIBIT 15</u>, 120:18-22). **"Q: And [there] would generally be voluntary statements before the suspension [.] A: Typically, yes."** (Geyer Dep., Feb. 7, 2018, <u>EXHIBIT 15</u>, 120:23-121:2).  Neither of these requirements occurred in Plaintiff's case.

Company policy further required that Plaintiff be interviewed before she was fired – but that did not occur either. (Geyer Dep., <u>EXHIBIT 15</u>, 121:3-15).  Defendant Ghobrial testified that she suspended Plaintiff on February 22, 2015 -- before Plaintiff was interviewed. (Ghobrial Dep., <u>EXHIBIT 15</u>, 302:3-14).

Mr. Geyer also confirmed that it was **"Not Typical"** for Defendants to interview witnesses regarding Plaintiff 3 months after Gregory Spears was fired. (Geyer Dep., EXHIBIT 15, 116:16-21, 117:13-118:7).

**6)** **<u>Defendants' Allegations Regarding Purported Violations Of Company Policies Are Baseless</u>**

    a.   <u>Defendants Do Not Have A Company Policy Regarding Price Modifications Performed By Third Parties</u>

Defendant Ghobrial stated that Plaintiff's employment was terminated for "Violation of Rules" "…due to an investigation that shows her accepting items that were price modified by another associate …." (Email from Defendant Vivian Ghobrial, dated unknown, Bates No. DR 000169, attached to Morrison Decl., <u>EXHIBIT 10</u>). In reality, however, no such company policies exist.

Defense witness, Michael Geyer, testified that Defendants did not have any company policies against an employee accepting items that were price modified by another associate. (Geyer Dep., <u>EXHIBIT 15</u>, 123:7-11).  Mr. Geyer also reviewed Defendant Ghobrial's email and confirmed that the purported violation asserted, did not in fact exist. (Geyer Dep., <u>EXHIBIT 15</u>, 121:16-124:10):

> Q: But according to this e-mail it says terminated due to investigation that shows her accepting items that were price modified for her by another associate.
> A: Right.
> Q: So to your knowledge of the rules, policies, practices in effect during Plaintiff's employment, accepting items that were price modified by another associate is not a violation of any rule, correct?
> Q: You've already testified to this.

A: Yeah, you're right, but again I don't know what specifically happened here.

(Geyer Dep., <u>EXHIBIT 15</u>, 123:18-124:10).

> b. <u>Defendants Did Not Have A Company Policy Requiring Termination For Not Checking Bags Before Leaving Defendants' Store</u>

Defendant Ghobrial's email further claims that Plaintiff's employment was terminated for "Violation of Rules" "…for failure to get a bag check prior to leaving the store." (Email from Defendant Vivian Ghobrial, <u>EXHIBIT 10</u>). However, again, no such company policy existed.

As 30(b)(6) witness Michael Geyer confirmed: **"Q: Do you know of any written or verbal or otherwise policy in effect during Plaintiff's employment saying an employee will be filed for not getting a bag check prior to leaving the store? A: To be fired? No…"** (Geyer Dep., <u>EXHIBIT 15</u>, 124:11-23).

Mr. Geyer further testified that Defendants did not have a policy requiring employee bag checks prior to leaving Defendants' store, as Defendant Ghobrial claimed. (Geyer Dep., <u>EXHIBIT 15</u>, 124:16-125:19). Rather, Defendants' policy required *random* bag checks. (Geyer Dep., <u>EXHIBIT 15</u>, 124:16-125:19).

Defendant Ghobrial also admitted that she never heard of an employee being fired for not having their bag checked before leaving Defendants' store. (Ghobrial Dep., <u>EXHIBIT 3</u>, 196:17-197:4).

> c. <u>Defendants Recanted Their Claim That Plaintiff Purchased Items During Working Hours</u>

Defendants also claimed that video recordings show Plaintiff allegedly purchasing items during working hours in violation of company policies. (Ghobrial Dep., <u>EXHIBIT 3</u>, 141:25-142:14). However, this too was inaccurate.

Upon further review and cross examination, Defendant Ghobrial admitted that the video shows that Plaintiff purchased the items after her shift ended and she subsequently left the store. (Ghobrial Dep., <u>EXHIBIT 3</u>, 141:25-142:14).

**7)** <u>**Plaintiff's Account Of The December, 2015 Robbery Is Consistent With The Police Report And With Defendants' Investigation File**</u>

Belying Defendants' claims that Plaintiff's account of the December, 2015 robbery was somehow questionable, the police report and flyer reiterate that "**a gun point Robbery [] occurred inside of 568 West 125 street [Plaintiff's workplace]."** (Police Report & Flyer, attached to Morrison Decl., <u>EXHIBIT 6</u>). The wanted poster further states that **"On December 16, 2015. The [] suspect went inside the store and force victim into office and forcible removed property ..."** (Id.).

Defendants' Internal Investigation file further reiterates that Plaintiff's account of the December, 2015 robbery, and reads **"Were Weapons Involved? Yes"**, **"Weapon: Gun."** (External Incident: IC10005749071, attached to Morrison Decl., <u>EXHIBIT 5</u>, DR 000157-159). Defendants' Internal Investigation file does not question the veracity of Plaintiff's account in any way. (*See Ref.* <u>EXHIBIT 5</u>, DR 000157-159).

<u>**POINT III**</u>
<u>**A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFF BASED ON RACE/COLOR, ETHNICITY, SEX AND GENDER**</u>

**1)** <u>**Plaintiff Sets Forth Discriminatory Comments Directed Towards Plaintiff's Protected Classes**</u>

Demonstrating discriminatory animus, Plaintiff charges that Defendants called her **"Bitch"**; **"Morena" (Spanish for "Black Girl")**; **"Black Bitch"**; claimed that Plaintiff's skin color was **as Black as [her] sweater!"**; **"You can't see your tattoo because your skin is too**

25

**Black!"** and other racist, sexist comments. (Amended Complaint, ¶¶ 29-155; Washington Dep., dated May 14, 2018, attached to Morrison Decl., <u>EXHIBIT 16</u>, 115:3-8, 116:6-117:9, 119:10-125:11, 127:11-24, 128:10-129:4).

### 2) <u>Scheduling Plaintiff To Open Defendants' Store Alone Was An Adverse Employment Action</u>

The United States Supreme Court has long recognized that "adverse actions" are not limited to those actions which are economic or tangible. <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 786 (1998). Indeed, claims against employers for discriminatory employment actions such as change in work assignments have resulted in employer liability. <u>Id</u>. At 790 (emphasis added).

Adverse employment actions further include "[r]equiring an employee to endanger [their] person" – which repeatedly occurred in the instant case. <u>Santana v. Rent A Throne, Inc.</u>, 2:15-cv-2563, 2018 U.S. Dist. LEXIS 27874, *25 (E.D.N.Y., Feb. 21, 2018).

Plaintiff charges that as an African American woman, Defendants scheduled her to open Defendants' store alone on a regular basis – which resulted in Plaintiff being robbed in November, 2015, and violently assaulted and hospitalized in December, 2015. (Amended Complaint, ¶¶ 29-155; Pl. Dep., <u>EXHIBIT 16</u>, 154:17-155:8, 156:17-157:4, 160:13-22).

It is undisputed that Defendants scheduled Plaintiff to open the store alone during the December 16, 2015 assault and robbery. (Email from Robert Petrarchi, <u>EXHIBIT 7</u>). It is also undisputed that opening Defendants' store alone violated company safety policies. (Email from Robert Petrarchi, <u>EXHIBIT 7</u>).

In light of the above, a reasonable jury could find that Defendants discriminated against Plaintiff based on race, color, ethnicity, sex and gender. At the very least, these are disputed facts *for a jury to decide* – which requires denial of Defendants' motion on this count. <u>Cronin v. Aetna</u>

Life Ins. Co., No. 94-7419, 1995 U.S. App. LEXIS 1552, *202 (2d Cir., Jan. 25, 1995) ("A motion for summary judgment may not be granted unless the court determines that there is _no_ genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."); Fed. R. Civ. P. 56(c).

## POINT IV
## A REASONABLE JURY CAN FIND THAT DEFENDANTS CREATED A HOSTILE WORK ENVIRONMENT

### A. Prima Facie Case

Plaintiff demonstrates a prima facie case of hostile work environment under the ADAAA[6], Title VII, Section 1981 and the New York Human Rights Law ("NYSHRL")[7] by a showing that the "workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014); Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) (same).

However, "[w]hile the law requires that the incidents of alleged harassment be 'severe or pervasive,' this does not mean that an employer may be held liable only in 'the most egregious cases.'" Mills v. George R. Funaro & Co., No. 99 Civ. 4816, 2001 U.S. Dist. LEXIS 396, *29 (S.D.N.Y. Jan. 18, 2001) _citing_ Torres v. Pisano, 116 F.3d 625, 631 (2d. Cir. 1997). "Any relevant factor may be taken into account, [but] no single factor is required." Id.

---

[6] Hostile work environment claims under the ADAAA are evaluated under the same standards as hostile work environment claims under Title VII. Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).

[7] "New York courts require the same standard of proof for claims brought under the [NYSHRL] as those brought under Title VII." Mills v. George R. Funaro & Co., No. 99 Civ. 4816, 2001 U.S. Dist. LEXIS 396, *29 (S.D.N.Y. Jan. 18, 2001) _citing_ Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n.4 (2d Cir. 1995).

Further, "the federal severe or pervasive standard of liability no longer applies to NYCHRL claims, and the severity or pervasiveness of conduct is relevant only to the scope of damages." Mills v. George R. Funaro & Co., No. 99 Civ. 4816, 2001 U.S. Dist. LEXIS 396, *29 (S.D.N.Y. Jan. 18, 2001). Accordingly, "even a single comment may be actionable in the proper context" and summary judgment is appropriate "*only if* the record establishes as a matter of law that a reasonable jury could not find the employer liable under *any* theory." Id. (emphasis added).

### B. The Evidence Must Be Evaluated As A Whole, Not Separately As Defendants Incorrectly Assert

Defendants segregate Plaintiff's evidence and evaluates each item individually as isolated instances, which directly violates controlling legal authority.

The Second Circuit is clear that courts must view Plaintiff's evidence on summary judgment as a whole, as a jury would do at trial. Walsh v. New York City Housing Authority, Docket No. 14-181-cv (2d Cir., July 7, 2016); Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001). As the Second Circuit held in Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 102, "[a] court is to examine the entire record to determine whether the plaintiff could satisfy h[er] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Id. Plaintiff defeats a motion for summary judgment where "[P]laintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id.

In Walsh v. N.Y. City Hous. Auth., the plaintiff asserted claims of sex discrimination pursuant to Title VII and to the New York Human Rights Law. 2013 U.S. Dist. LEXIS 178514 (S.D.N.Y., Dec. 16, 2013) (NRB). The Second Circuit vacated the District Court's Order granting

28

summary judgment because "The district court erred when it failed to view [the plaintiff's] evidence as a whole and instead set aside each piece of evidence after deeming it insufficient to create a triable issue of fact that [the employer's] refusal to hire [the plaintiff] was based in part on the fact that she is female." 828 F.3d 70, 76 (2d Cir. 2016).

In Friedman v. Swiss Re Am. Holding Corp., the Second Circuit vacated the decision of the district court, in part, because "the district court failed to consider the record as a whole …[but instead] viewed each piece of evidence in isolation." 643 Fed. Appx. 69, 72 (2d Cir. 2016). "For instance, the district court discounted the allegation that [the employer replaced the plaintiff with a younger employee] because the [district court held that] replacement of an older worker with a younger worker or workers does not *itself* prove unlawful discrimination." Id. (internal quotes and citation omitted). "But [the plaintiff] did not make this allegation in isolation. Instead, he bolstered his case with evidence of ageist comments by superiors …." Id. Accordingly, the Second Circuit determined that the plaintiff's "prima facie case, combined with [his] additional evidence of pretext . . . , has created material issues of disputed fact … sufficient to survive summary judgment." Id. (internal quotes and citations omitted).

### C. Plaintiff's Claims Demonstrate A Hostile Work Environment

A hostile environment can be comprised of various types of conduct, including offensive jokes, slurs, epithets or name calling, ridicule or mockery, and insults or put-downs – all of which are alleged in the instant case. See EEOC Compliance Manual, §15-VII.A.  Furthermore, even one instance of discriminatory conduct can give rise to an actionable hostile work environment claim. Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (holding that even one instance of

a harassing tirade could give rise to a hostile work environment claim depending on the totality of the circumstances).

As discussed above, Plaintiff charges that she was repeatedly called a **"Bitch"**; **"Morena" (Spanish for "Black Girl")**; **"Black Bitch"**; that Defendants claimed Plaintiff's skin color was **"as Black as [her] sweater!"**; **"You can't see your tattoo because your skin is too Black!"; "you should have gotten color shaded in your tattoo because your skin is blacker than your tattoo"; "Where's the Morena at?"; "Ciera, you know I can't stand that Black Bitch!"** and other racist, sexist comments. (Amended Complaint, ¶¶ 29-155; Washington Dep., dated May 14, 2018, attached to Morrison Decl., <u>EXHIBIT 16</u>, 115:3-8, 116:6-117:9, 119:10-125:11, 127:11-24, 128:10-129:4).

Defendants further scheduled Plaintiff to open their store alone on several occasions, which resulted in Plaintiff being robbed in November, 2015, and in Plaintiff being assaulted and disabled in December, 2015.

In light of the above pattern of abuse, a reasonable jury can certainly find that Defendants subjected Plaintiff to a hostile work environment pursuant to Federal, State and Local law.

## POINT V
## A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY RETALIATED AGAINST PLAINTIFF

Plaintiff establishes a prima facie case of retaliation by demonstrating that: (1) she engaged in an activity protected by the law[8]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against Plaintiff; and (4) a causal connection exists between the

---

[8] The NYHRL contains similar provisions against retaliation and are governed in this respect by the same standards as the ADAAA. See 29 U.S.C. § 794(d); N.Y. Exec. Law § 296(7); <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002); <u>Weissman v. Dawn Joy Fashions, Inc.</u>, 214 F.3d 224, 234 (2d Cir. 2000) (applying ADA analysis to plaintiff's retaliation claim under both ADA and NYHRL).

alleged adverse action and the protected activity. <u>Treglia</u>, 313 F.3d at 719. A plaintiff's burden at this prima facie stage is *de minimis*. <u>Id</u>; <u>Richardson v. New York State Dept. of Correctional Serv.</u>, 180 F.3d 426, 444 (2d Cir. 1999) (same).

### A.  <u>Plaintiff Complained Against Defendants' Unlawful Activities</u>

Plaintiff testified that she complained against Defendants' unlawful discrimination and harassment on several occasions. (Washington Dep., <u>EXHIBIT 16</u>, 115:3-8, 116:6-117:9, 119:10-125:11, 127:11-24, 128:10-129:4; Amended Complaint, ¶¶ 29-155).

Further, defense witness, Michael Geyer, recalled hearing that Plaintiff complained of retaliation during her employment. (Geyer Dep., <u>EXHIBIT 15</u>, 198:11-25).

Within days of Plaintiff's legally protected complaints, Defendants put Plaintiff in direct physical harm by requiring that she open their store alone on several occasions; they suspended Plaintiff; fired her; and refused to pay all of Plaintiff's disability benefits.

As stated in the previous section, the close temporal proximity between Plaintiff's legally protected complaints and Defendants' adverse actions suffice to establish both causation and pretext. <u>Treglia</u>, 313 F.3d at 720; *see, e.g.*, <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 769 (2d Cir. 1998) (two months between protected activity and adverse action sufficient to establish causation); <u>Johnson v. Palma</u>, No. 88-7846, 1991 U.S. App. LEXIS 7065 (2d Cir., April 2, 1991) (same).

Accordingly, a reasonable jury can also find that Defendants retaliated against Plaintiff in violation of the Federal, State and Local Law.

### <u>POINT VI</u>

### <u>A REASONSBLE JURY COULD FIND THAT DEFENDANTS VIOLATED THE FLSA AND THE NEW YORK LABOR LAW</u>

Defendants' own payroll records show that Defendants stopped paying Plaintiff on January 18, 2016 – five weeks before Defendants fired her on February 23, 2016. (Payroll Records, attached to Morrison Decl., <u>EXHIBIT 17</u>).

Defendants' payroll records further state that on January 12, 2016, Defendants' claims representative **"M.Perry" "let [Plaintiff] know that the amount of her check would be $262.21 per week"** for Plaintiff's 10-week medical leave from December 16, 2015 (Robbery, Plaintiff hospitalized) to February 22, 2016 (Return to Work Date). (Payroll Notes, Bates No. 200, attached to Morrison Decl., <u>EXHIBIT 18</u>). **M.Perry "explained to [Plaintiff] that was the pay for one week. I explained to her again there is a 7-day waiting period which applied from 12/17/2015-12/23/2015. I paid her out of work from 12/24/2015-12/30/2015."** (Payroll Notes, Bates No. 200, <u>EXHIBIT 18</u>).

Thus, Plaintiff was supposed to receive approximately $2622.10 total, which represents Plaintiff's $262.21/week entitlement for 10 weeks of medical leave. However, payroll records show that Defendants paid Plaintiff a total amount of $262.21 only. (Defendants' Payroll Records, Bates No. 100-101, attached to Morrison Decl., <u>EXHIBIT 1</u>). Accordingly, Defendants still owe Plaintiff approximately $2360 in earned benefits.

<u>**CONCLUSION**</u>

In light of the above, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety and that the Court resolve all undisputed issues of fact in Plaintiff's favor as required by Federal Rule of Civil Procedure 56

Dated:  New York, NY
        July 16, 2018

                                    Respectfully submitted,

                                    LAW OFFICES OF LAURIE E. MORRISON

By: _____

Laurie E. Morrison, Esq.
*Attorney for Plaintiff*
100 Church Street, Suite 801
New York, New York 10007
(212) 721-4051 (office)
(646) 651-4821 (fax)
morrison@lemorrisonlaw.com