# EXHIBIT 3

Page 1

1
2   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
3   Civil Case No. 17-CV-02393
    - - - - - - - - - - - - - - - - - - - -x
4   CIERA WASHINGTON,
                        Plaintiff,
5           -against-
    WALGREENS; WALGREENS CO.; DUANE READE;
6   DUANE READE INC.; DUANE READE
    INTERNATIONAL, LLC; and Individually and
7   Jointly; LUIS GUERRERO; GERMAINE ALLEN;
    VIVIAN GHOBRIAL; and CRYSTAL BECKRUM,
8                       Defendants.
    - - - - - - - - - - - - - - - - - - - -x
9
                        1250 Broadway
10                      New York, New York
                        February 13, 2018
11                      10:25 a.m.
12
13          PORTIONS CONFIDENTIAL,
            ATTORNEYS' EYES ONLY
14
15      DEPOSITION of VIVIAN GHOBRIAL, one of
16  the Defendants in the above-entitled
17  action, held at the above time and place,
18  taken before Brian Brenner, a Shorthand
19  Reporter and Notary Public of the State of
20  New York, pursuant to the Federal Rules of
21  Civil Procedure, Court Order and
22  stipulations between Counsel.
23
24
25

```
 1              V. GHOBRIAL
 2   and I need for her to contact benefits and
 3   provide the supporting documents for her
 4   injury.  I explained, you know, so we will
 5   have on record just in case -- we didn't
 6   want her to get hit with any bills or
 7   whatever because this was a Workers' Comp
 8   case, so her best bet is to contact
 9   benefits.
10       Q     Because it's a Workers' Comp
11   case?
12       A     It would be a Workers' Comp
13   case.  According to her she had injuries
14   from the robbery, and she was going to
15   hospitals and doctors and stuff, so I said
16   it would be a Workers' Comp case.  It's
17   just you need to contact benefits in order
18   for you to discuss your options with
19   benefits, and she said she would.  That
20   was it.
21       Q     So before you were saying that
22   you were contacting Plaintiff -- you were
23   communicating with Plaintiff because you
24   were trying to get Plaintiff to submit
25   documentation to benefits to support that
```

1               V. GHOBRIAL
2  she was on medical leave, but now you seem
3  to be talking about that you spoke with
4  Plaintiff for her benefit so that she
5  could make sure to get Workers' Comp
6  payments?
7      A     It's the same conversation.
8  It's pretty much proceeding to say, you
9  know, because -- she said -- according to
10 her she went to the hospital and she's
11 seeking medical benefits.  I said it's to
12 your benefit to contact the benefit
13 department so you don't get hit with any
14 bills so we can have a case for her case.
15     Q     At that time did Plaintiff have
16 medical benefits as an employee of the
17 company?
18     A     I didn't check, but again I told
19 her to discuss her options with benefits
20 department.
21     Q     What was your position at the
22 company?  When I say the company you know
23 I mean Walgreens and Duane Reade, right?
24     A     Yes.
25     Q     What was your position at the

```
 1              V. GHOBRIAL
 2   conducting an investigation, and it
 3   involved a few people and Ciera Washington
 4   as part of it.
 5        Q     Understood.  So before Plaintiff
 6   was robbed in December you never saw a
 7   video with respect to Plaintiff being
 8   involved in price modification, right?
 9        A     Correct.
10        Q     And before Plaintiff was robbed
11   in December you never saw any
12   documentation or any other information
13   related to Plaintiff allegedly being part
14   of a price modification; is that correct?
15        A     Correct.
16        Q     Now, when you say there's a
17   request to fire Plaintiff, you were saying
18   part of the procedure is that someone
19   makes a request to fire an employee.  Then
20   you look into that, right?
21        A     Correct.
22        Q     What form is that request to
23   fire in?  Is it paper, e-mail, virtual, in
24   person, verbal?  What is it?
25        A     Depending on the case.
```

```
                                      Page 136
 1              V. GHOBRIAL
 2              MR. WARSHAW:    Objection to
 3      form.
 4      Q      To price modify the items for
 5   her?
 6              MR. WARSHAW:    Objection to
 7      form.
 8      Q      Against policy?
 9      A      His statement.
10      Q      Gregory Spear said that?
11      A      No, but his statement admitting
12   that he conducted it for her, and for her
13   to accept it and for her to hand him $20,
14   that means she knowingly knew he was price
15   modifying for her.  She knew that he was
16   going to price modify for her.
17      Q      Let's break that down.  You said
18   Gregory Spear saying he's price modifying
19   this for Plaintiff.  Is that what you're
20   saying?
21      A      He admitted to price modifying
22   the items for several employees.  One of
23   them was Ms. Washington.
24      Q      Did he ever say that Ciera
25   Washington asked him to do it?
```

```
 1              V. GHOBRIAL
 2   failed to come back from their leave.
 3       Q    Understood, but is that the same
 4   -- does that apply to Plaintiff's case as
 5   well?
 6       A    Yes.
 7       Q    So you said you make the
 8   determination -- you made the
 9   determination to fire Plaintiff, right?
10       A    Correct.
11       Q    Was there a request made for her
12   firing?
13       A    Just for loss prevention, not
14   for medical.
15       Q    My question is simple: Yes or
16   no, was there a request to fire Plaintiff?
17       A    From loss prevention, yes, there
18   was a request to fire the Plaintiff for
19   theft.
20       Q    And when did that request come
21   in?
22       A    I am not sure of the exact date.
23       Q    Do you know what month?
24       A    Not sure.
25       Q    Was it after Plaintiff was
```

```
 1              V. GHOBRIAL
 2    robbed?
 3         A     Correct.
 4         Q     How long after Plaintiff was
 5    robbed was there a request to fire
 6    Plaintiff from loss prevention?
 7         A     I am not sure.
 8         Q     One week?
 9         A     Not sure.
10         Q     Two weeks?
11         A     Not sure.
12         Q     Three weeks?
13         A     I am not sure.
14         Q     Four weeks?
15         A     Same answer, I am not sure.
16         Q     Do you know if it was before
17    Christmas?
18         A     I believe sometime in January.
19    I am not sure.
20         Q     January 2016?
21         A     January 2016.
22         Q     Just trying to get the record
23    straight.  There was no request to fire
24    Plaintiff before January 2016?
25         A     I am not sure.
```

```
                                    Page 135

 1               V. GHOBRIAL

 2   training as a shift leader?  Yes.

 3        Q     And do you know that as part of

 4   Ms. Washington's training as a shift

 5   leader she was taught that she has to know

 6   as part of her job the price of every

 7   single item at any given time regardless

 8   of if it's ever on sale, discounted,

 9   whatever?

10               MR. WARSHAW:   Objection to the

11        form.

12        A     No.

13        Q     You said that Plaintiff stole --

14               MS. MORRISON:   Strike that.

15        Q     You said that Plaintiff rang up

16   the items, right?

17        A     No.

18               MR. WARSHAW:   Objection to the

19        form.

20        Q     So you know that Plaintiff

21   didn't ring up the items, right?

22        A     Correct.

23        Q     What, if anything, gave you the

24   indication that Plaintiff told Gregory

25   Spear to ring up the items?
```

```
 1              V. GHOBRIAL
 2              MR. WARSHAW:   Objection to
 3      form.
 4      Q     To price modify the items for
 5   her?
 6              MR. WARSHAW:   Objection to
 7      form.
 8      Q     Against policy?
 9      A     His statement.
10      Q     Gregory Spear said that?
11      A     No, but his statement admitting
12   that he conducted it for her, and for her
13   to accept it and for her to hand him $20,
14   that means she knowingly knew he was price
15   modifying for her.  She knew that he was
16   going to price modify for her.
17      Q     Let's break that down.  You said
18   Gregory Spear saying he's price modifying
19   this for Plaintiff.  Is that what you're
20   saying?
21      A     He admitted to price modifying
22   the items for several employees.  One of
23   them was Ms. Washington.
24      Q     Did he ever say that Ciera
25   Washington asked him to do it?
```

Page 137

```
 1              V. GHOBRIAL
 2     A      No.
 3     Q      Did anyone ever say that Ciera
 4   Washington asked him to do it?
 5     A      Not that I know of.
 6     Q      Did you read anything that said
 7   Ciera Washington asked Gregory Spear to
 8   price modify these items for her?
 9     A      No.
10     Q      Did anything in the tape show
11   you that Ciera Washington said -- by the
12   way, was the tape you reviewed -- did it
13   have any audio?
14     A      No.
15     Q      It was just video?
16     A      Correct.
17     Q      So you didn't hear anything
18   anyone said?
19     A      Correct.
20     Q      So did anything in the tape show
21   you that the Plaintiff said to Gregory
22   Spear "price modify these items for me"?
23     A      No.
24     Q      Any other indication that --
25            MS. MORRISON:   Strike that.
```

```
                                     Page 137
 1                 V. GHOBRIAL
 2      A      No.
 3      Q      Did anyone ever say that Ciera
 4   Washington asked him to do it?
 5      A      Not that I know of.
 6      Q      Did you read anything that said
 7   Ciera Washington asked Gregory Spear to
 8   price modify these items for her?
 9      A      No.
10      Q      Did anything in the tape show
11   you that Ciera Washington said -- by the
12   way, was the tape you reviewed -- did it
13   have any audio?
14      A      No.
15      Q      It was just video?
16      A      Correct.
17      Q      So you didn't hear anything
18   anyone said?
19      A      Correct.
20      Q      So did anything in the tape show
21   you that the Plaintiff said to Gregory
22   Spear "price modify these items for me"?
23      A      No.
24      Q      Any other indication that --
25             MS. MORRISON:   Strike that.
```

Page 141

```
 1              V. GHOBRIAL
 2      Q     Every time you leave the store,
 3  you say?
 4      A     Correct.
 5      Q     And because the Plaintiff -- and
 6  is that policy?  You said it's in the
 7  handbook?
 8      A     Yes.  To get a bag check and
 9  coat check.
10      Q     And because Ciera Washington
11  didn't get a bag check and because she
12  gave $20 to Gregory Spear, that's the
13  entire reason for your support for saying
14  that Plaintiff wanted Gregory Spear to
15  price modify all those items for her?
16            MR. WARSHAW:   Objection to the
17      form.
18      Q     Is that what you're saying?
19      A     It's various, the facts, but
20  those two facts were part of it too, yes.
21  She didn't follow company policy when it
22  comes to employee purchase.  She didn't
23  follow company policy when it comes --
24  with regards to bag checks when she
25  leaves.
```

```
1              V. GHOBRIAL
2      Q     Anything else?
3      A     Instead of making a purchase off
4   the clock, not on the clock.
5      Q     There's a policy that you can't
6   buy items as an employee when you are not
7   working?
8      A     You are supposed to be off the
9   clock.  Not on the clock when you purchase
10  items.
11     Q     So there's a policy saying you
12  will be disciplined if you purchase an
13  item while you are working?
14     A     Correct.
15     Q     What else supported your
16  reasoning that Plaintiff stole items, as
17  you said?
18     A     The fact that she selected items
19  that she knows is high-priced items, and
20  loss prevention asks for these items to be
21  locked due to being high-priced items --
22     Q     Wait, stop.  You said loss
23  prevention told her she should lock these
24  items, the price of these items in her
25  brain? Is that what you mean?
```

1                    V. GHOBRIAL
2     they will be held accountable and it will
3     include up to and including termination.
4     I'm trying to find it for you.
5          Q     Are you saying anywhere every
6     single bullet point, every single thing
7     within this employee handbook, if the
8     employee does it mean that they are
9     subject to discipline up to and including
10    termination?
11         A     I am only saying when it comes
12    to violation of company policies and
13    rules.  Not everything in bullet points in
14    here.
15         Q     Understood, but now you pointed
16    to employee shopping at the end of
17    employee's shift.  Does it say anything
18    there if you do not do this you violate
19    company policy?
20         A     Again I am going to try to find
21    you where it says any violation of company
22    policies could lead to termination.
23         Q     I understand, but I'm asking you
24    a different question.  Please focus on my
25    question that I'm asking.  I am asking you

```
1              V. GHOBRIAL
2   -- because you said there's something in
3   the handbook that says any violation of
4   company policy could subject you to
5   termination, right?
6       A     Yes.
7       Q     Is there anything in the
8   employee bullet point that says if you
9   don't follow this you are violating
10  company policy?
11      A     Not right next to it --
12      Q     Anywhere --
13      A     -- like, in the same handbook.
14      Q     You mean in the same handbook?
15      A     In the same handbook that every
16  policy and procedure, fail to follow
17  company policy and procedure can lead to
18  up and including termination.
19      Q     Understood, but is there
20  anything here in the bullet point that
21  indicates it includes this particular
22  bullet point?
23      A     No handbook says right next to
24  each bullet point if "and you fail to do
25  so it will be termination, and if you fail
```

Page 165

```
 1              V. GHOBRIAL
 2   to do so will be termination, and if you
 3   fail to do so will be termination."
 4      Q     Understood, but my question to
 5   you is different again.
 6              MS. MORRISON:   Please mark that
 7        the witness is --
 8      A     No.
 9      Q     Okay, now you finally answered
10   it.  So there's nothing here that says
11   while the employee is shopping, blah,
12   blah, blah, blah, and if you don't do this
13   you are violating a company policy?
14              MR. WARSHAW:   Objection to
15        form.
16      Q     Right?
17      A     No.  Unfortunately not every
18   bullet point, we don't have -- you will be
19   violating company policy.
20      Q     There's nothing here? That's my
21   question.
22      A     Right next to it, no.  There's
23   nothing here --
24      Q     But --
25      A     There's --
```

```
 1              V. GHOBRIAL
 2      Q     Hold on.  Is there anything in
 3  sum and substance near any of these bullet
 4  points that you just pointed to at the top
 5  of DR62 that say these are company
 6  policies that if you violate -- these are
 7  company policies, indicating that they
 8  cannot be violated?
 9      A     I will find it for you, yes.
10      Q     No.  I'm saying, anything here
11  in these five bullet points?
12      A     On this paper, no.
13      Q     It says at the top heading
14  employee shopping, correct?
15      A     Yes.
16      Q     It doesn't say this is a policy
17  that you must follow or you could be
18  fired, right?
19              MR. WARSHAW:   Objection to
20      form.
21      Q     Right?
22      A     Right.
23      Q     Now, do you see above on DR161
24  lateness?  Do you see that?
25      A     I am sorry?
```

```
 1              V. GHOBRIAL
 2   their bag checked?
 3       A    I -- no.
 4            MR. WARSHAW:   Same objection.
 5       Q    Have you ever disciplined
 6   anybody because they exited the store
 7   without having their bag checked?
 8            MR. WARSHAW:   Same objection.
 9       A    No.
10       Q    Any discipline of any kind?
11            MR. WARSHAW:   Same objection.
12       A    I don't discipline.  I only get
13   requests for termination when it's final.
14   I get that, so managers, I'm sure, do
15   discipline people, or if there's an issue
16   like that -- I get the final end of it.
17       Q    Understood.  Thank you for
18   clarifying.  Have you ever been involved
19   in or heard of someone being disciplined
20   because they left the store without having
21   their bag checked?
22            MR. WARSHAW:   Objection to
23       form.
24       A    Not sure.
25       Q    Do you recall?
```

Page 197

```
 1              V. GHOBRIAL
 2              MR. WARSHAW:   Objection to
 3      form.
 4      A     No.
 5      Q     You don't recall?
 6              MR. WARSHAW:   Objection to
 7      form.
 8      A     No.
 9      Q     And we can go back to where we
10 are trying to find where in the employee
11 handbook it says that if you don't have
12 your bag or coat, belongings checked every
13 time you leave the store you will be
14 subject to discipline.
15              MR. WARSHAW:   Objection to
16      form.
17              MS. MORRISON:   While she is
18      looking, may I ask for the grounds for
19      the objection?
20              MR. WARSHAW:   It's the same
21      objection.  You told me not to make a
22      speaking objection, so it's an
23      objection to the form.
24              MS. MORRISON:   No.  According
25      to the rules, when you're actually
```

```
 1                V. GHOBRIAL
 2   other purported violations contained in
 3   the employee handbook that you allege
 4   Plaintiff violated, correct?
 5        A     Correct.
 6        Q     And there are no other
 7   provisions in the employee handbook that
 8   you relied on to suspend or fire Plaintiff
 9   other than what you already testified to,
10   correct?
11        A     Correct.
12        Q     And then you --
13              MS. MORRISON:   Just noting for
14        the record that we have to stop
15        quickly because defense counsel needs
16        to patch somebody in on the phone.
17              Is it okay to speak?
18              MR. WARSHAW:   Go.
19              MS. MORRISON:   The phone's
20        ringing but I'll ask a question.
21        Q     You said the other written
22   policies you relied on to suspend and fire
23   Plaintiff were in modules, correct?
24        A     Yes.
25        Q     So let me hand you what was
```

                         V. GHOBRIAL

1

2    Exhibit 15 consists of documents Bates

3    stamped DR127 through, to, and including

4    DR140.  Please, within Plaintiff's Exhibit

5    15, point to all the provisions that you

6    relied on to suspend and fire the

7    Plaintiff.  Actually, before we begin on

8    that, though, I want to make sure it's

9    clear.  You suspended Plaintiff for the

10   same reasons that you fired her, correct?

11       A    Correct.

12       Q    So we can talk about your

13   reasons for suspending and firing

14   Plaintiff jointly because they are the

15   exact same reasons?

16       A    Correct.

17       Q    When did you make the decision

18   to fire Plaintiff?

19            MR. WARSHAW:   Objection.

20       A    I believe February 22.

21       Q    What year, 2016?

22       A    Yes.

23       Q    Right after Plaintiff -- the day

24   Plaintiff came back from medical leave?

25       A    Right after her interview, loss

Page 297

```
 1              V. GHOBRIAL
 2   prevention interview.
 3       Q     Understood, with Troy Hennessy?
 4       A     Yes.
 5       Q     And that was the date that
 6   Plaintiff returned to work after medical
 7   leave, right?
 8       A     Correct.
 9       Q     And when did you make the
10   decision to fire Plaintiff?
11       A     February 23, I believe.
12             MR. WARSHAW:   Objection to
13       form.
14       Q     February 23, you believe?
15       A     February 23, 2016.
16       Q     You're sure about that?
17       A     I think so, yes.
18       Q     Is there possibly any other
19   date?
20       A     No.
21       Q     When were discussions about
22   suspending Plaintiff?
23             MR. WARSHAW:   Objection to
24       form.
25       A     After the interview, February
```

```
                                          Page 302

 1                  V. GHOBRIAL

 2       A      Yes.

 3       Q      The top e-mail says HR has

 4   reviewed Ciera's paperwork and video

 5   recording her suspension.  Do you see

 6   that?

 7       A      Yes.

 8       Q      And you wrote that, right?

 9       A      Yes.

10       Q      So Plaintiff was already

11   suspended by the time this e-mail was

12   written, right?

13       A      She was suspended on the 22nd.

14   Yes.

15       Q      So she was suspended before this

16   e-mail that you said was dated February

17   23, correct?

18       A      Correct.

19       Q      And supports the decision to

20   terminate, right?

21       A      Yes.

22       Q      So the decision to terminate

23   also occurred before your e-mail about you

24   saying -- one that you say is February 23,

25   2016?
```