# EXHIBIT 13

Page 1

```
 1
 2   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 3   Civil Case NO.  17-CV-02393
     ------------------------------------------X
 4   CIERA WASHINGTON,
 5                         Plaintiff,
 6       -against-
 7   WALGREENS; WALGREENS CO.; DUANE READE; DUANE
     READE INC.; DUANE READE INTERNATIONAL, LLC;
 8   and Individually and Jointly; LUIS GUERRERO;
     GERMAINE ALLEN; VIVIAN GHOBRIAL; and CRYSTAL
 9   BECKRUM,
                          Defendants.
10
     ------------------------------------------X
11
                   1250 Broadway
12                 New York, New York
13                 February 14, 2018
                   1:34 p.m.
14
15            PORTIONS CONFIDENTIAL
              ATTORNEYS' EYES ONLY
16
17       EXAMINATION BEFORE TRIAL of TROY
18   HENNESSY, on behalf of Defendants, by the
19   Plaintiff in the above-entitled action, held
20   at the above time and place, taken before
21   JENNIFER CRUZ, a Professional Shorthand
22   Reporter and Notary Public of the State of New
23   York, pursuant to Notice and stipulations
24   between Counsel.
25
```

```
                                              Page 182
 1                    T. HENNESSY
 2   when she purchased those price modified
 3   items, that she was aware that Gregory Spears
 4   modified those prices in a questionable --
 5   that it was questionable -- when I say
 6   "questionable," I mean in a bad way.
 7           MR. WARSHAW:  Objection to form.
 8       A.  Yes.
 9       Q.  Meaning that -- I'm saying bad, I'm
10   trying to find a better way.
11           That she knew that he violated
12   company policy.  Let's put it that way.
13           MR. WARSHAW:  Objection to form.
14       Q.  Did anyone ever tell you that?
15       A.  Yes.
16       Q.  Who?
17       A.  Ciera Washington.
18       Q.  Ciera Washington told you that she
19   knew -- at the time when she purchased the
20   items, that she knew that he modified them in
21   a way that was a violation of company policy?
22           MR. WARSHAW:  Objection to form.
23       A.  No.
24       Q.  Okay.  So what are you saying that
25   Ciera Washington told you?
```

Page 183

1                    T. HENNESSY
2        A.   I'm saying that she told me that
3    during her tenure with the company she knew
4    general prices of items in the store and that
5    if an item was -- if an item was rung up at
6    the wrong price, that she would be aware of
7    it.  As part of my interview, she stated
8    that, so yeah.
9        Q.   That's it, though?
10       A.   Correct.
11       Q.   Okay.  So other than that
12   statement -- and you are aware that at the
13   time when the price modifications happened,
14   the store that Ciera Washington worked in had
15   thousands of products; correct?
16            MR. WARSHAW:  Objection to form.
17       A.   Yes.
18       Q.   Okay.  So did Ciera Washington ever
19   say to you, I knew when I purchased the
20   items, that Gregory Spears changed those
21   prices in a way that was a violation of
22   company policy?
23       A.   She did not.
24       Q.   Okay.  Or in sum and substance make
25   that statement?

|     |     |
| --- | --- |
|     | Page 188 |

1                    T. HENNESSY
2            Did Luis Guerrero -- do you know the
3    timing of when Luis Guerrero told her she was
4    suspended versus the timing of when Ciera
5    Washington gave her statement, her voluntary
6    statement?
7        A.    Yes.
8        Q.    What was the timing?
9        A.    It was after.
10       Q.    Okay.  So after Ciera Washington
11   wrote down her voluntary statement, Luis
12   Guerrero said you're suspended?
13       A.    Not directly after, but --
14       Q.    During that meeting?
15       A.    During that meeting, correct.
16       Q.    Okay.  Do you know what else
17   happened in that meeting?
18             You were there.
19             What else happened in that meeting?
20       A.    In that meeting I interviewed her, I
21   explained who I am and what I do, I
22   interviewed her, I got her statement and then
23   I handed it off to Luis after that.
24       Q.    He was in the room?
25       A.    Correct.

Page 189

1      T. HENNESSY
2      Q.   What do you mean, you handed what
3   off?
4      A.   So that's the end of my job, is to
5   collect the facts.  And then I said, you
6   know, the next steps are up to operations, so
7   he'll talk to you about, you know, what's
8   going to happen next.
9      Q.   Understood.  Okay.
10          When you said "handed off," you were
11  using it, I believe, colloquially.
12     A.   Correct.
13     Q.   So I'm trying to understand, did you
14  physically hand any documents to anyone,
15  meaning did you physically hand documents to
16  Luis Guerrero?
17     A.   Yes.
18     Q.   And were those documents Ciera's
19  voluntary statement?
20     A.   Correct.
21     Q.   Okay.  And there was also a
22  voluntary statement from Luis Guerrero;
23  right?
24     A.   Yes.
25     Q.   Okay.  And that statement -- you

```
                                              Page 194
 1                T. HENNESSY
 2    and information that you reviewed in
 3    investigating Ciera Washington, did you see a
 4    pattern of price modification --
 5         A.   Can --
 6         Q.   I'm sorry, I don't even know what it
 7    means.
 8              You looked in terms of four -- it
 9    was four transactions with respect to Gregory
10    Spears in connection with Ciera Washington,
11    correct, remember we talked about that?
12         A.   Correct.
13         Q.   Okay.  And again, the entirety of
14    the items that Gregory Spears price modified
15    that Ciera Washington purchased were four
16    transactions in total, correct, do you
17    remember?
18         A.   Correct.
19         Q.   Okay.  And those were all dated --
20    we already talked about those.
21              They were dated in early October,
22    10/13, 10/8; right?
23         A.   Yes.
24         Q.   Another one, 10/2/15; correct?
25         A.   Correct.
```

```
                                              Page 195
 1                T. HENNESSY
 2        Q.   And another one, 10/2/15; correct?
 3        A.   Correct.
 4        Q.   Okay.  So it's just four
 5   transactions; correct?
 6        A.   Correct.
 7        Q.   And none of them occurred in
 8   November 2015; correct?
 9        A.   That's correct.
10        Q.   They all occurred in early October;
11   correct?
12        A.   Correct.
13        Q.   Okay.  Did anyone ever say to you at
14   any time that Ciera Washington had any
15   involvement in a pattern of price
16   modification?
17        A.   Not that I recall.
18        Q.   Has anyone ever said to you in sum
19   and substance that Ciera Washington was
20   involved in any way in a purported pattern of
21   price modification at all?
22        A.   Not that I recall.
23        Q.   Okay.  And when Luis Guerrero wrote
24   down this voluntary statement on
25   February 22nd, 2016, did anyone tell you to
```

Veritext Legal Solutions
212-279-9424                 www.veritext.com                 212-490-3430

Page 196

1       T. HENNESSY
2   look into any sort of pattern of price
3   modification involving Ciera Washington?
4       A.   No.
5       Q.   Did you look into a pattern of price
6   modification allegedly regarding Ciera
7   Washington?
8       A.   Yes.
9       Q.   Did you write anywhere down that you
10  believe that there was a pattern of price
11  modification?
12      A.   No.
13      Q.   And in your investigative report
14  with respect to Ciera Washington, there is
15  nothing there -- you didn't write anything
16  down indicating that Ciera was part of a
17  purported pattern of price modification;
18  correct?
19          MR. WARSHAW:  Objection.
20      Q.   You didn't state those words
21  anywhere in your full narrative; correct?
22      A.   The words pattern of price
23  modifications, no, I did not.
24      Q.   Okay.  In fact, all you wrote with
25  respect to Ciera Washington and any price

Page 274

1      T. HENNESSY
2  to be listed here.  So if you choose to be
3  -- if you choose Ciera Washington, then
4  they wouldn't be listed here.
5      Q    When you say here, she wouldn't
6  be listed as the subject allegation?
7      A    Correct.  I believe that's how
8  it works.
9      Q    So you don't know for certain
10 how that works?
11     A    No.
12     Q    So you can't state for certain
13 as to why Ciera Washington is not listed
14 as the subject of allegation on DR848,
15 correct?
16     A    No, I cannot.
17     Q    But Shayna Davis is listed as a
18 subject, right?
19     A    Yes.
20     Q    And Gregory spears is listed as
21 a subject?
22     A    Yes.
23     Q    And Janyll Perez is listed as a
24 subject; is that right?
25     A    Correct.