# EXHIBIT 15

Page 1

1

2  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
3  Civil Case No. 17-CV-02393
   - - - - - - - - - - - - - - - - - - - -x
4  CIERA WASHINGTON,
                        Plaintiff,
5          -against-
   WALGREENS; WALGREENS CO.; DUANE READE;
6  DUANE READE INC.; DUANE READE
   INTERNATIONAL, LLC; and Individually and
7  Jointly; LUIS GUERRERO; GERMAINE ALLEN;
   VIVIAN GHOBRIAL; and CRYSTAL BECKRUM,
8                        Defendants.
   - - - - - - - - - - - - - - - - - - - -x
9

10                     1250 Broadway
                       New York, New York
11                     February 7, 2018
                       10:00 a.m.
12

13          PORTIONS CONFIDENTIAL,
            ATTORNEYS' EYES ONLY
14

15      DEPOSITION of MICHAEL GEYER, a witness
16  appearing on behalf of the Defendants in
17  the above-entitled action, held at the
18  above time and place, taken before Brian
19  Brenner, a Shorthand Reporter and Notary
20  Public of the State of New York, pursuant
21  to the Federal Rules of Civil Procedure,
22  Court Order and stipulations between
23  Counsel.

24

25

1                  M. GEYER

2      Q      You've just spoken with the

3  court reporter and he put you under oath.

4  Do you recall that?

5      A      Yes.

6      Q      Have you ever been a part of a

7  deposition before?

8      A      I have.

9      Q      In connection --

10             MS. MORRISON:   Strike that.

11      Q      Who is your current employer?

12      A      Duane Reade which is part of the

13  Walgreens family of companies.

14      Q      It's a subsidiary of Walgreens?

15      A      We are owned and aligned to

16  Walgreens as a parent company, but we are

17  a separate company because we are a

18  unionized shop, if you will, versus

19  Walgreens which is not.  We are part of

20  the Walgreens family of companies but we

21  are independent of them because of the

22  union affiliation.

23      Q      Is it accurate to say that Duane

24  Reade is a subsidiary of Walgreens?

25      A      Yes.

1          M. GEYER

2     Q    Do you know who might have

3  reviewed any records related to that?

4          MS. WELCH:   Objection.

5          You can answer.

6     A    I don't know.  I don't know.

7     Q    Are you aware that Plaintiff was

8  employed with Walgreens and Duane Reade in

9  2015?

10    A    I believe that to be accurate,

11  yes.

12    Q    And in the early part of 2016 as

13  well, are you aware of that?

14    A    I believe that to be accurate.

15    Q    And why do you believe that to

16  be accurate?

17    A    Just based on the information

18  that I pulled, that I recall viewing, you

19  know, the date of hire information, like

20  that.

21    Q    So in terms of any sort of

22  discipline that Plaintiff may have

23  received including termination,

24  suspension, what have you, are you

25  familiar with any of that?

```
                                        Page 116
 1                    M. GEYER
 2   that Gregory Spears was fired on November
 3   2015, according to this voluntary
 4   statement, right?
 5        A       Seemingly so, yes.
 6        Q       But do you see the date of the
 7   voluntary statement from Mr. Guerrero?
 8        A       Yes, I do.
 9        Q       What date is it?
10        A       2/22/16.
11        Q       This voluntary statement was
12   done in February 2016 after Gregory Spears
13   was allegedly fired in November of 2015,
14   right?
15        A       Correct.
16        Q       So the voluntary statement from
17   Mr. Guerrero was actually done November,
18   December, January -- three months after
19   Gregory Spears was fired and you said
20   that's not typically done, right?
21        A       Not typical.
22        Q       Turn to the next page Bates
23   stamped DR173.  Do you see there's another
24   voluntary statement there?
25        A       I do.
```

```
 1               M. GEYER
 2       Q     Have you ever seen this
 3  particular one with Ms. Washington's
 4  handwriting on it?  So you know, her
 5  voluntary statement consists of three
 6  pages, DR173, 174, and 175 as it is in
 7  this statement, as it is in the documents
 8  produced by Defendants.  Do you see that?
 9       A     I do.
10       Q     Did you say that you had never
11  seen this before?
12       A     I have not seen this before.
13       Q     Did you know that Ms. Washington
14  did a voluntary statement?
15       A     I did not.
16       Q     Again we have an incident that
17  we are talking about that occurred in
18  October of 2015, right?
19       A     Um-hmm, yes.
20       Q     But Ms. Washington's voluntary
21  statement was in February 2016.  That
22  again is not really conforming with
23  company policy, right?
24            MS. WELCH:   Objection.
25       A     It's not typical so I'm not sure
```

```
 1                    M. GEYER
 2   what the circumstances were or are that
 3   something was written later, you know,
 4   months later.
 5        Q     Because that's unusual, correct?
 6              MS. WELCH:   Objection.
 7        A     It's not typical.
 8        Q     If someone --
 9              MS. MORRISON:   Strike that.
10        Q     Again you said you've never --
11   you don't know anything specific about
12   Plaintiff with respect to this at all,
13   right?
14        A     I do not.
15        Q     How about the following pages of
16   this document, 177 through 188?  Do you
17   have any knowledge of the significance of
18   these documents produced by Defendant with
19   respect to Plaintiff?
20        A     Specifically to her, no, I do
21   not.  I mean, I know what they are.
22        Q     What are they?
23        A     So these are electronic captures
24   of specific transactions.  That's on 177.
25   Then after that, 178 through 188, they
```

```
                                            Page 120
 1                    M. GEYER
 2   transactions?
 3       A      Correct.
 4       Q      In 177 at the top it says
 5   receipt details, start date 10/13/15, end
 6   date 10/13/15.  Do you see that?
 7       A      177, you said?
 8       Q      Receipt details.
 9       A      Yes.
10       Q      Does that mean that this receipt
11   is from 10/13/15?
12       A      It appears that way.
13       Q      If someone is suspended -- we
14   are talking about with reference to
15   Plaintiff only -- for allegedly being
16   involved in --
17              MS. MORRISON:   Strike that.
18       Q      If someone's suspended, that
19   would be investigated, the reasons before
20   they are suspended, as policy?
21              MS. WELCH:   Objection.
22       A      As policy, yes.
23       Q      And they would generally be
24   voluntary statements before the suspension
25   related to --
```

1                    M. GEYER

2       A       Typically, yes.

3       Q       And in your experience most of

4    the time you will have voluntary

5    statements occurring before a suspension

6    occurs if they are related to the reasons

7    for the suspension?

8       A       Typically, yes.

9       Q       You've already testified to

10    typically about voluntary statements.

11    That's before a person's fired?

12       A       Typically, yes.

13       Q       As a policy and practice of the

14    company?

15       A       Yes.

16       Q       Turn to the same exhibit,

17    Plaintiff's Exhibit 6, Bates DR169.  Do

18    you see that that's an e-mail, e-mail

19    communication?

20       A       I do.

21       Q       At the top there doesn't appear

22    to be a date to this e-mail, but it's from

23    Vivian Ghobrial, correct?

24       A       Correct.

25       Q       But there's no date on this

Page 122

```
 1                    M. GEYER
 2    particular document e-mail, but below
 3    there, there's a date of February 19,
 4    2016.  Do you see that?
 5         A     I do.
 6         Q     And that's a communication with
 7    the subject Ciera Washington,
 8    communications between Troy Hennessy and
 9    Vivian Ghobrial, correct?
10         A     Correct.
11         Q     Now, going back up to the top,
12    Vivian Ghobrial's e-mail doesn't have a
13    date on it, but do you see that it says HR
14    has reviewed Ciera Washington's paperwork
15    and video regarding her suspension and
16    supports the decision to terminate?  Do
17    you see that?
18         A     I do.
19         Q     It says: "Please contact
20    Ms. Washington and inform her that her
21    employment is terminated due to an
22    investigation that shows her accepting
23    items that were price modified for her by
24    another associate and for failure to get a
25    bag check prior to leaving the store."
```

```
                                      Page 123
 1                   M. GEYER
 2            Do you see that?
 3      A     I do.
 4      Q     And above it says violation of
 5   rules.  Do you see that?
 6      A     I do.
 7      Q     Now, we already said there were
 8   no rules against an employee accepting
 9   items that were price modified by another
10   associate, right?
11      A     We did.
12      Q     So that wasn't a violation of
13   rules, correct?
14            MS. WELCH:   Objection.
15      A     Apparently -- you know,
16   seemingly no, but again, I don't know the
17   particulars of what really happened here.
18      Q     But according to this e-mail it
19   says terminated due to investigation that
20   shows her accepting items that were price
21   modified for her by another associate.
22      A     Right.
23      Q     So to your knowledge of the
24   rules, policies, practices in effect
25   during Plaintiff's employment, accepting
```

```
                                    Page 124
 1                M.  GEYER
 2   items that were price modified by another
 3   associate is not a violation of any rule,
 4   correct?
 5             MS.  WELCH:    Objection.
 6       Q     You've already testified to
 7   this.
 8       A     Yeah, you're right, but again I
 9   don't know what specifically happened
10   here.
11       Q     It also says: "And for failure
12   to get a bag check prior to leaving the
13   store."
14             Do you see that?
15       A     I do.
16       Q     Do you know of any written or
17   verbal or otherwise policy in effect
18   during Plaintiff's employment saying an
19   employee will be filed for not getting a
20   bag check prior to leaving the store?
21       A     To be fired?  No, but it is
22   required that you get a bag check when you
23   leave the store.
24       Q     Is that policy written anywhere
25   in the employee handbook?
```

Page 125

                    M. GEYER

1

2       A       I believe it is in here

3   somewhere.

4       Q       Can you find it?

5       A       At the bottom of page 81 --

6       Q       Bates stamp 81?

7       A       Yes.  All employees are subject

8   to bag checks and locker checks at random

9   intervals.

10      Q       It doesn't say prior to leaving

11  the store, right?

12      A       Correct.

13      Q       So there is no policy -- there's

14  a policy with respect to you being subject

15  to it randomly, but there was no policy in

16  effect during Plaintiff's employment that

17  you have to get a bag check prior to

18  leaving the store, period, right?

19      A       At the time, correct.

20      Q       And there's certainly no policy

21  at any time during Plaintiff's employment

22  that there was a violation of --

23              MS. MORRISON:  Strike that.

24      Q       There was certainly no violation

25  during Plaintiff's employment, written,

```
 1                    M. GEYER
 2      Q      Got it, but you don't recall
 3   what information you reviewed
 4   specifically?
 5      A      No.  I could tell you that what
 6   I did review did not -- did not reveal
 7   anything like that, at least what I've
 8   seen.  Maybe someone else has something
 9   different.  I don't recall.  I don't know
10   that, so I can't say that.
11      Q      Got it, so when you're saying
12   that, you may have seen information; is
13   that correct, in sum and substance?
14      A      Yeah, or read something or that
15   line something, you know, somewhere, but,
16   you know, I don't have specific
17   information.
18      Q      Got it.  I just want to
19   understand.  So you're saying you may have
20   reviewed information regardless of whether
21   it's written or what have you that
22   indicated that Plaintiff may have made
23   complaints that she was being retaliated
24   dense during her employment?
25      A      Yes.
```