UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

| | |
|---|---|
| CIERA WASHINGTON, | : |
| | : |
|             Plaintiff, | : |
| | : |
|       -against- | : |
| | :    Case No.: 17-cv-2393 (JMF) |
| WALGREENS; WALGREENS CO.; DUANE | : |
| READE; DUANE READE INC.; DUANE READE | : |
| INTERNATIONAL, LLC; and Individually and | : |
| Jointly, LUIS GUERRERO; GERMAINE ALLEN; | : |
| VIVIAN GHOBRIAL; and CRYSTAL | : |
| BECKRUM. | : |
| | : |
|           Defendants. | : |

----------------------------------------------------------------x

## DEFENDANTS WALGREEN CO., DUANE READE INC., DUANE READE INTERNATIONAL, LLC, GERMAINE ALLEN, AND VIVIAN GHOBRIAL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Dated:  New York, New York
       July 23, 2018

Aaron Warshaw
Shabri Sharma
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
1745 Broadway, 22nd Floor
New York, New York 10019
(212) 492-2500

*Attorneys for Defendants Walgreens, Walgreens Co.,
Duane Reade, Duane Reade Inc., Duane Reade
International, LLC, Germaine Allen, and Vivian Ghobrial*

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     ARGUMENT ................................................................................................... 1

     A.     Plaintiff's Blatant Breaches of the Court's Orders, Individual Rules, and Local Rules Warrant Treating Defendants' Summary Judgment Motion as Unopposed. 1

     B.     The Court Should Not Credit Washington's Numerous Misstatements of the Salient Factual Issues ................................................................................ 3

          1.     There Is No Genuine Issue of Material Fact Regarding Duane Reade's Policies Against Theft .............................................................. 3

          2.     There Is No Genuine Issue of Material Fact that Washington Was Treated No Worse Than Her Co-workers When Scheduled to Work Alone Prior to Opening Store No. 14417 at 7:00am ................................. 4

          3.     There Is No Genuine Issue of Material Fact That Washington Suffered No Physical Injuries Due to the Robbery ........................................... 4

          4.     There Is No Genuine Issue of Material Fact That Washington Refused to Provide Sufficient Documentation to Support Her Need to Remain on Leave, Yet the Company Allowed Her to Take an Unapproved Leave ..... 5

          5.     It Is Not Evidence of Pretext That Hennessy Did Not Discover or Conclude That Washington Was Involved in Improper Transactions Until After She Was Off Work Following the December 16, 2015 Robbery ...... 6

          6.     There Is No Genuine Issue of Material Fact that Washington's Employment Was Terminated for Legitimate Business Reasons .............. 7

     C.     Washington's Discrimination Claims Should Be Dismissed ................................ 8

          1.     Washington Was Not Qualified for Her Position ...................................... 8

          2.     Washington Has Failed to Prove Discrimination Based Upon Her Race, Color and Ethnicity, National Origin, or Gender ....................................... 8

          3.     Washington Has Failed to Prove Disability Discrimination ...................... 8

     D.     Washington Has Failed to Prove Retaliation ........................................................ 9

     E.     Washington Has Failed to Prove Hostile Work Environment ............................. 10

     F.     Washington Has Failed to Prove Her NYLL/FLSA Claims ................................ 10

G.      Washington Abandoned Her Aiding and Abetting Claims................................... 10

III.    CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................3

*Dearden v. GlaxoSmithKline LLC*, 2017 WL 4084049
    (S.D.N.Y. Sept. 14, 2017) ...................................................................................8

*Holtz v. Rockefeller & Co., Inc.*,
    258 F.3d 62 (2d Cir. 2001)...................................................................................3

*Lewis v. Rawson*,
    564 F.3d 569 (2d Cir. 2009).................................................................................2

*LoSacco v. City of Middletown*,
    71 F.3d 88 (2d Cir. 1995).....................................................................................2

*Lucas v. Miles*,
    84 F.3d 532 (2d Cir. 1996)...................................................................................2

*Mickle v. Morin*,
    297 F.3d 114 (2d Cir. 2002).................................................................................2

*Monahan v. New York City Dept. of Corrections*,
    214 F.3d 275 (2d Cir. 2000).................................................................................2

*N.Y.S. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*,
    426 F.3d 640 (2d Cir. 2005).................................................................................2

*Scaria v. Rubin*, 117 F.3d 652
    (2d Cir. 1997) ......................................................................................................8

*U.S. v. Hing Shair Chan*,
    680 F. Supp. 521 (E.D.N.Y. 1988) .....................................................................3

## I.     PRELIMINARY STATEMENT

Defendants respectfully submit this reply memorandum of law in further support of their summary judgment motion.[1] First, Washington's flouting of the Court's Orders, Individual Rules, and Local Rules warrants reviewing Defendants' summary judgment motion as through it were unopposed – just as the Court warned Washington that it would do. Second, even if the Court were inclined to review Washington's scattershot response papers, she merely relies upon her own self-serving allegations and blanket assertions that flatly contradict the evidentiary record. Third, Washington's recitations of boilerplate case law and specious legal arguments in no way establish her discrimination or retaliation claims as a matter of law. As described below and in Defendants' Opening Brief, Washington's claims therefore should be dismissed with prejudice.

## II.     ARGUMENT

### A.     Plaintiff's Blatant Breaches of the Court's Orders, Individual Rules, and Local Rules Warrant Treating Defendants' Summary Judgment Motion as Unopposed

As Plaintiff and her counsel have done throughout this litigation, Washington's response to Defendants' summary judgment motion violates the Court's Orders, Individual Rules, and Local Rules. Pursuant to the Civil Case Management Plan and Scheduling Order, Washington's response papers were due two weeks after Defendants' opening papers, or July 5, 2018. (Dkt. 52, ¶ 13.) Yet, on July 10, 2018 – five days *after* her deadline elapsed – Washington sought an extension. (Dkt. 136 & 137.) By Order dated July 11, 2018, the Court granted Washington's request, but ordered that "failure to file the opposition by July 16, 2018, *will result* in the motion being treated as unopposed." (Dkt. 138) (emphasis added). Despite this clear warning, Plaintiff did not timely file

---

[1]     The abbreviated and capitalized terms used in this reply are defined in "Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment" ("Defs. Mem."). "Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment" is cited herein as "Pl.'s Mem."; and the parties' Local Rule 56.1 Statements are cited as "Pl. 56.1" and "Defs. 56.1," respectively.

her response papers, and instead did so on July 17 without any explanation or excuse. Defendants' summary judgment motion should therefore be treated as unopposed, just as the Court warned would occur if Washington yet again breached her filing deadline

Moreover, Washington's response papers are replete with blatant violations of this Court's Individual and Local Rules. For instance, Washington's Memorandum of Law does not contain a statement of facts, despite the Court's unambiguous rule that "[p]arties should not merely incorporate by reference their Local Rule 56.1 Statements or Counterstatements." Individual Rule § 3.C.v. Further, Washington's Memorandum of Law spans 32 pages of substantive arguments, despite the Court's rule that "memoranda of law in support of and in opposition to motions are limited to 25 pages." *Id.* § 3.D. In addition, Washington failed to submit text-searchable exhibits. *Id.* § 6. Should the Court consider Washington's non-compliant papers, Defendants will be prejudiced because they have – by contrast – adhered to each of these rules.

It is well-established that the Court "has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for . . . disobeying the court's orders." *Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2002); *see also Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009) (district court's power to dismiss action is inherent); *Monahan v. N.Y. City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) ("A district court has the discretion to adopt local rules that are necessary to carry out the conduct of its business."); *Lucas v. Miles*, 84 F.3d 532, 534-35 (2d Cir. 1996) (abuse of discretion standard for district court's decision to impose sanctions for failure to comply with orders); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) ("considerable deference" to district court's application of local rules). Where, as here, a nonmoving party fails to comply with the local rules governing summary judgment, the district court may rely on the moving party's statement of undisputed facts supported by the record. *N.Y.S. Teamsters Conference*

*Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005). Under this standard, the Court should review Defendants' summary judgment motion as unopposed.

**B.     The Court Should Not Credit Washington's Numerous Misstatements of the Salient Factual Issues**

Even if the Court were to examine Washington's arguments, which it need not do, Washington "must set forth *specific facts* showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (emphasis added); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("[A] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record. Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently."). Washington's Opposition Brief and Rule 56.1 Statement makes numerous arguments that are wholly unsupported by the evidentiary record.

**1.     There Is No Genuine Issue of Material Fact Regarding Duane Reade's Policies Against Theft**

In a desperate attempt to sustain her claims, Washington argues that Duane Reade's applicable policies somehow did not address her involvement in price modifications. (Pl. Mem. at 23-24; Pl. 56.1, ¶¶ 14-22.) Yet, Washington has not refuted, and largely admits, that: Duane Reade strictly enforces a policy of zero tolerance regarding theft of merchandise; "theft" includes "ringing merchandise into the register for under the regular price"; any employee who becomes aware of employee theft must immediately report it; "[i]rresponsible and unacceptable behavior" includes "[g]ross insubordination, misconduct or negligence, [d]ishonesty, [and] stealing"; and failure to follow these policies subjected Washington to disciplinary action, up to and including termination of employment. (Defs. & Pl. 56.1, ¶¶ 14-21.) As shown, Washington's involvement in price modifications violated these policies, and therefore the company was entitled to exercise its business judgment and terminate her employment.

2.      **There Is No Genuine Issue of Material Fact that Washington Was Treated No Worse Than Her Co-workers When Scheduled to Work Alone Prior to Opening Store No. 14417 at 7:00am**

Washington disputes the documentary evidence showing that her co-workers were also scheduled to open Store No. 14417 alone. (Def. & Pl. 56.1, ¶¶ 32-34.) Duane Reade's written schedules are generally deemed reliable due to "a complex organization's need to keep accurate records, and on its internal discipline: employees who keep inaccurate records will be reprimanded or lose their jobs." *U.S. v. Hing Shair Chan*, 680 F. Supp. 521, 525 (E.D.N.Y. 1988). Indeed, Washington's only evidence to dispute the schedules' accuracy is her own conclusory and vague testimony. (Pl. 56.1, ¶¶ 32-34) (citing Washington Dep. at 147:14-24 ("A. From what I am seeing, these are not schedules I've seen at all. Q. Why is that? A. Because from what I am looking at is not accurate, how she used to do the schedules whatsoever. Q. What is inaccurate about these documents? A. The times of the opening. The times of the other people. It was never like this.")). Yet, consistent with the written schedules, Washington's co-Shift Leader Moss testified that he too opened Store No. 14417 alone. (Defs. 56.1, ¶¶ 30-31.) The schedules are therefore conclusive evidence that Washington was not somehow singled out to open Store 14417 alone.

3.      **There Is No Genuine Issue of Material Fact That Washington Suffered No Physical Injuries Due to the Robbery**

Washington asserts that she suffered physical injuries due to the December 2015 robbery. (Pl. Mem. at 8-10; Pl. 56.1, ¶¶ 44, 46, 50, 69.) Yet, the only evidence she cites to support her version of the December 2015 robbery is her own demonstrably false statements. (*Id.*) For instance, Washington cites the intake portion of her medical records to show that she allegedly suffered injuries. (Pl. 56.1 ¶ 69) (citing Decl. of Laurie Morrison ("Morrison Decl."), Ex. 8 at Washington00024, 00033.) This purported evidence merely reflects what she told EMS and intake at the Emergency Room. (Pl. Mem. at 9) ("*Pt states* she was pistol whipped to the face and in the

process fell over a chair injuring her left ankle. + swelling noted to right periorbital area and *pt states* left side of face is what is hurting her the most.") (emphasis added). In fact, Washington's X-rays and CT scan showed that she did not suffer any fractures, dislocations, or hemorrhages, and she was simply prescribed pain medicine and discharged.[2] (Morrison Decl., Ex. 8 at Washington00017, 37-46.) Moreover, no reasonable jury would accept Washington's fantastic version of events because the video evidence speaks for itself: the incident does not appear to be physically violent, and the video contains no indication that the man carried or used a gun or weapon.[3] (Defs. 56.1, ¶¶ 50-51.) In response, Washington merely asserts that "[t]he video was dark." (Pl. 56.1, ¶ 51.) That false assertion is insufficient to create a material issue of disputed fact.

### 4. There Is No Genuine Issue of Material Fact That Washington Refused to Provide Sufficient Documentation to Support Her Need to Remain on Leave, Yet the Company Allowed Her to Take an Unapproved Leave

Washington wholly mischaracterizes her leave of absence following the robbery. The contemporaneous evidentiary record shows that Walgreens' leave department contacted Washington seeking additional documentation to support her continued leave of absence. (Defs. 56.1, ¶ 77.) Washington does not dispute that she told the leaves department she had already submitted documentation from the Emergency Room, and that she became hostile. (Defs. & Pl. 56.1, ¶ 78.) Rather, Washington merely points to her doctor's note dated February 19, 2016 as

---

[2]     Indeed, Washington's versions of events at the Emergency Room was contradictory, and reflects that she alternatively claimed that: she was hit with a gun across the left side of her face and thrown over a chair; she fell over a chair injuring her left ankle; she sustained multiple blows to the face and head with a gun; she was pushed multiple times toward the safe and tripped over a chair; and the perpetrator hit her with the butt of a gun multiple times to the face and pushed her down into a chair. (Morrison Decl., Ex. 8.)

[3]     That conclusion is consistent with statements that police officers made after the robbery, including that: the officers did not believe a gun was involved; Washington's statements had changed between the incident and by the time she got to the hospital; and Washington's account of the incident did not match what the officers saw on the surveillance cameras and what she relayed at the hospital. (Defs. 56.1, ¶¶ 72-74.) As such, Washington's reliance on the police report regarding the robbery is misplaced because, like the Emergency Room records, it merely reflects Washington's own false statements that are refuted by the video evidence from the robbery.

documentation that she supplied.[4] (Pl. 56.1, ¶¶ 78-82.) Yet, there is no dispute that the *only* documents that Washington ever submitted to justify her leave of absence were her Emergency Room records from December 16, 2015 (showing no fractures, dislocations, or hemorrhages) and her doctor's note dated February 19, 2016 (merely stating that "if she feel [sic] any way nervous or threatened she may leave work to avoid a panic attack"). (Morrison Decl., Exs. 4, 8.) Nonetheless, Duane Reade nonetheless allowed Washington to remain on unapproved leave for approximately two months and return when she chose on February 22, 2016.

     **5.**     **It Is Not Evidence of Pretext That Hennessy Did Not Discover or Conclude That Washington Was Involved in Improper Transactions Until After She Was Off Work Following the December 16, 2015 Robbery**

Washington has failed to raise any material issue of disputed fact to show that Walgreens' investigation into her involvement in price modifications was false or pretextual. Notably, Washington does not dispute that, during the October 8th transaction, she should have paid a total of $38.74, but Spears rang up the items for between $0.37 and $0.42, such that the total price came to $2.47; and, during the October 13th transaction, Washington should have paid a total of $69.98, but Spears rang up only two items for $0.42 each, such that the total price came to $0.84. (Pl. & Defs. 56.1 ¶¶ 85-89.) This unrefuted evidence alone establishes that Walgreens was justified in terminating Washington's employment because the fraudulent transactions were obvious, and therefore Washington violated company policies and reasonable expectations regarding employee theft. In response, Washington merely questions the *timing* of the company's investigation. (Pl. Mem. at 17-21; Pl. 56.1, ¶ 100.) However, the evidentiary record shows that Hennessy *did*

---

[4]     Washington also asserts that she "was supposed to receive approximately $2622.10 total, which represents Plaintiff's $262.21/week entitlement for 10 weeks of medical leave." (Pl. 56.1, ¶ 76.) Yet, she does not cite any evidence to support this assertion. In fact, Walgreens' leave department attempted for months to contact Washington seeking additional documentation to support her time off work and potential claim for Workers' Compensation benefits, but she did not provide anything further. (Defs. 56.1, ¶¶ 81-82.)

investigate Washington and her co-workers between October and mid-December 2015 even though, as she argues, she was not initially identified as a person of interest. (Pl. Mem. at 18-19.) As of mid-November 2015, Hennessy interviewed Spears, whose employment was terminated, and Davis resigned before Hennessy could interview her. (Defs. & Pl. 56.1, ¶¶ 94-96.) Thereafter, Hennessy continued to investigate and discovered Washington's involvement by reviewing the October 8 and 13, 2015 transactions. (*Id.*, ¶ 98.) As such, Hennessy's mere delay in discovering Washington's involvement and seeking to interview her is not evidence of pretext.

### 6. There Is No Genuine Issue of Material Fact that Washington's Employment Was Terminated for Legitimate Business Reasons

Washington also wholly mischaracterizes the evidentiary record relating to the decision to terminate her employment. For instance, Washington suggests that Ghobrial somehow decided to terminate her employment *prior* to her interview. (Pl. 56.1, ¶¶ 101, 111; Pl. Mem. at 22-23.) In fact, on February 22, 2016, Washington was suspended following her interview with Hennessy. (Reply Decl. or Aaron Warshaw, Ex. A, Ghobrial Dep. at 302:10-304:9.)[5] Ghobrial further testified that her decision to terminate Washington's employment occurred the next day, on February 23, 2016, *after* Washington was interviewed and *after* Ghobrial reviewed Hennesey's investigation report. (*Id.*) Further, there is no dispute that Hennessy concluded that Washington was aware of "general prices of items" and that, "if an item was wrong up at the wrong price, she would be aware of it." (Pl. 56.1, ¶ 109.) Indeed, Ghobrial concluded that Washington was aware – or should have been aware – that she was involved in employee theft, including because the items were rung up for "ridiculous" and "suspicious" amounts. (Warshaw Decl., Ex. I (Ghobrial Dep.) at 236:24-237:23.) Finally, Washington admits that Spears' employment was also terminated for his

---

[5]     Defendants submit this further portion of Ghobrial's deposition transcript to show that Washington has misconstrued and misstated Ghobrial's testimony.

involvement in the fraudulent price modifications, and Davis quit her employment before she could be interviewed, (Defs. & Pl. 56.1, ¶¶ 94-95), thus refuting any possible inference of pretext.

**C.    Washington's Discrimination Claims Should Be Dismissed**

**1.    Washington Was Not Qualified for Her Position**

As an initial matter, Washington has not refuted that her involvement in the price modifications rendered her unqualified for her position. Instead, Washington merely argues that she was minimally qualified to "perform the essential functions of her job." (Pl. Mem. at 12.) The Court need only review the evidentiary record, including the video recordings of the transactions, to conclude otherwise. (Defs. Mem. at 12-13.)

**2.    Washington Has Failed to Prove Discrimination Based Upon Her Race, Color and Ethnicity, National Origin, or Gender**

Washington concedes that she has failed to prove causation between Guerrero and Beckum's alleged comments and actions toward her and the termination of her employment. (Defs. Mem. at 13-15.) Rather, she argues that the decision to schedule her to open Store 14417 alone was an adverse employment action. (Pl. Mem. at 26-27.) Yet, the evidentiary record shows that Washington was treated no worse than her co-workers, including Beckum, who were also scheduled to open Store 14417 alone. (Defs. 56.1 ¶ 29; *supra* B.2.) Moreover, such a decision to schedule Washington to open the store alone (assuming *arguendo* that it was made) is not "more disruptive than a mere inconvenience or an alteration of job responsibilities," and therefore is not an adverse employment action. *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted). Moreover, as to the termination of her employment, Washington has failed to prove pretext. (Defs. Mem. at 18-20.)

**3.    Washington Has Failed to Prove Disability Discrimination**

Washington argues that, as a result of the December 2015 robbery, she was disabled or regarded as disabled. (Pl. Mem. at 6-11.) Yet, the evidentiary record shows that Washington did not suffer any significant injuries as a result of the purported robbery. (*Supra* B.2, B.3; Defs. Mem at 16-18.) Although Washington cites her "voluminous" medical records that are part of the record, (Pl. Mem. at 10), such records relate to medical issues *other than* the December 2015 robbery. As such, the record shows that Washington was not disabled.

Even assuming *arguendo* that Washington became disabled following the December 2015 robbery, or that she was perceived as disabled, she has failed to rebut the legitimate, nondiscriminatory reason for her dismissal. (Defs. Mem. at 18-20; *supra* C.2) In response, Washington relies upon timing alone to demonstrate pretext. (Pl. Mem. at 12-14.) "With no additional evidence, the timing of events alone, even if sufficient to meet the plaintiff's prima facie burden, cannot defeat summary judgment in the face of defendant's proffered legitimate reason." *Dearden v. GlaxoSmithKline LLC*, 2017 WL 4084049, at *11 (S.D.N.Y. Sept. 14, 2017) (finding no pretext and granting summary judgment on disability discrimination claims where plaintiff failed to introduce evidence that termination of employment was for any reason other than violation of company policy). Although Washington questions at length the timing and circumstances of how Hennessy and Ghobrial's conclusions, that is insufficient to prove pretext. *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.") (citation omitted). She has not refuted that Defendants exercised business judgment when they concluded that Washington's involvement in the price modifications had violated company policy.

## D.     **Washington Has Failed to Prove Retaliation**

Washington's retaliation claim is largely repetitive of her other claims. (Pl. Mem. at 31.) Even assuming that Washington engaged in a protected activity by complaining about

discrimination, harassment, or retaliation, which is disputed, (Defs. 56.1, ¶ 121), she has not proved that she was singled out to open Store 14417 alone, or that it was an adverse employment action. Moreover, to the extent that Washington relies on timing alone to prove retaliation, the evidentiary record regarding the termination of her employment shows that it was solely for business reasons having nothing to do with her purported protected activity.

**E.    Washington Has Failed to Prove Hostile Work Environment**

In support of her hostile work environment claim, Washington merely cites boilerplate case law. (Pl. Mem. at 27-30.) Even if the Court were to credit Washington's uncorroborated allegations, her purported evidence fails to sustain a hostile work environment claim as a matter of federal, state, or city law. (Def. Mem. 23-24.)

**F.    Washington Has Failed to Prove Her NYLL/FLSA Claims**

In her Response Brief, Washington asserts that she is owed "earned benefits." (Pl. Mem. at 32.) Even assuming that Washington's claim were colorable as a matter of law, which it is not, the evidentiary record shows that Washington was not paid benefits because – despite the company's leaves department's best efforts – she failed to submit documentation to support her continued absence from work.

**G.    Washington Abandoned Her Aiding and Abetting Claims**

Finally, Washington's aiding and abetting claims against Allen and Ghobrial are unaddressed in Washington's voluminous response papers, and therefore should be dismissed as abandoned.

### III.    CONCLUSION

Based on the foregoing reasons and those in their Opening Brief, Defendants respectfully request that the Court grant summary judgment in favor of Defendants and dismiss Washington's claims in full and with prejudice, and award such other relief as the Court deems just and proper.

Dated:  New York, New York
       July 23, 2018

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

By /s Aaron Warshaw
     Aaron Warshaw
     Shabri Sharma
599 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 492-2500
aaron.warshaw@ogletree.com
shabri.sharma@ogletree.com

*Attorneys for Defendants Walgreens, Walgreens Co., Duane Reade, Duane Reade Inc., Duane Reade International, LLC, Germaine Allen, and Vivian Ghobrial*

34934529.1

11