# EXHIBIT A

Page 290

```
 1
 2    UNITED STATES DISTRICT COURT
 3    SOUTHERN DISTRICT OF NEW YORK
      - - - - - - - - - - - - - - - - - - - -x
 4    CIERA WASHINGTON,
                      Plaintiff,
 5         -against-
      WALGREENS; WALGREENS CO.; DUANE READE;
 6    DUANE READE INC.; DUANE READE
      INTERNATIONAL, LLC; and Individually and
 7    Jointly; LUIS GUERRERO; GERMAINE ALLEN;
      VIVIAN GHOBRIAL; and CRYSTAL BECKRUM,
 8                      Defendants.
      Civil Case No. 17-CV-02393
 9    - - - - - - - - - - - - - - - - - - - -x
10                    1250 Broadway
                      New York, New York
11
                      February 20, 2018
12                    10:01 a.m.
13
14       CONTINUED DEPOSITION of
15    VIVIAN GHOBRIAL, one of the Defendants in
16    the above-entitled action, held at the
17    above time and place, taken before Brian
18    Brenner, a Shorthand Reporter and Notary
19    Public of the State of New York, pursuant
20    to the Federal Rules of Civil Procedure,
21    Court Order and stipulations between
22    Counsel.
23
24
25
```

Page 299

```
 1           V. GHOBRIAL
 2    Q    You testified in your
 3  deposition, the first session, that you
 4  relied on the investigative file and video
 5  to fire Plaintiff, correct?
 6    A    Correct.
 7    Q    And to suspend Plaintiff,
 8  correct?
 9    A    Yes.
10    Q    I'm trying to narrow it down.
11  Were there any discussions -- when I say
12  discussions it's broad.  Understand that I
13  mean communications and that it's
14  interpreted broadly.  I mean Snapchat,
15  Facebook, whatever, e-mails, phone calls,
16  whatever.  When were discussions,
17  communications, regarding discussing
18  Plaintiff, the first ones?
19    A    I don't remember.
20    Q    Before February 22, 2016?
21    A    Same answer.  I don't really
22  remember.
23    Q    Let me show you an e-mail then.
24  I'm handing you Plaintiff's Exhibit 6
25  (handing).
```

Page 300

```
 1           V. GHOBRIAL
 2         In Plaintiff's Exhibit 6, turn
 3  to the document Bates stamped DR169 and
 4  DR170.  Do you see those, those two
 5  documents?
 6         [Witness peruses the documents.]
 7    A    Yes.
 8    Q    Do you see those are e-mails
 9  between you and other people, right?
10  Correct?
11    A    Yes.
12    Q    And the dates of those e-mails,
13  DR170, for instance, is dated Wednesday,
14  February 3, 2016.  Do you see that? Do you
15  see that?
16    A    Yes.
17    Q    And these conversations between
18  you and Robert Petrarchi regarding when
19  Plaintiff will return to work, can she be
20  terminated for job abandonment?  Do you
21  see that?
22    A    Yes.
23    Q    And you see the next page,
24  DR169, dated February 18, still regarding
25  when Plaintiff's coming back, and then we
```

Page 301

```
 1           V. GHOBRIAL
 2  see your e-mail talking about HR has
 3  reviewed Ciera's paperwork.  When you say
 4  HR, you mean yourself?
 5    A    And my manager.
 6    Q    Who?
 7    A    Paul Loggoso.
 8    Q    Reviewed Ciera's paperwork and
 9  video regarding her suspension and
10  supports the decision to terminate, right?
11    A    Yes.
12    Q    Now, it says reviewed --
13         MS. MORRISON:  Strike that.
14    Q    Do these communications
15  occurring in early February up through,
16  to, and including February 18, and what
17  you said, February 23, refresh your
18  recollection as to whether conversations
19  regarding suspending and firing Plaintiff,
20  whether they occurred before February 22?
21    A    Yes.
22    Q    And they did, right?
23    A    Yes.
24    Q    Meaning they did occur before
25  February 22, 2016?
```

Page 302

```
 1           V. GHOBRIAL
 2    A    Yes.
 3    Q    The top e-mail says HR has
 4  reviewed Ciera's paperwork and video
 5  recording her suspension.  Do you see
 6  that?
 7    A    Yes.
 8    Q    And you wrote that, right?
 9    A    Yes.
10    Q    So Plaintiff was already
11  suspended by the time this e-mail was
12  written, right?
13    A    She was suspended on the 22nd.
14  Yes.
15    Q    So she was suspended before this
16  e-mail that you said was dated February
17  23, correct?
18    A    Correct.
19    Q    And supports the decision to
20  terminate, right?
21    A    Yes.
22    Q    So the decision to terminate
23  also occurred before your e-mail about you
24  saying -- one that you say is February 23,
25  2016?
```

Page 303

```
 1           V. GHOBRIAL
 2        MR. WARSHAW:  Objection to
 3   form.
 4    A    No.
 5    Q    Not correct?
 6    A    No.  The decision was on the
 7   23rd.
 8    Q    When you wrote down -- when you
 9   forwarded the documents on DR169, it says
10   HR has reviewed Ciera's paperwork and
11   supports the decision to terminate, you're
12   saying her suspension occurred on the
13   22nd?
14    A    Right after her interview.
15    Q    You told her she was suspended
16   on February 22?
17    A    No.
18    Q    When did you tell her that she
19   was suspended?
20    A    Her manager suspended her after
21   the interview.  I didn't say it.  Her
22   manager suspended her.
23    Q    What manager?
24    A    Luis Guerrero.
25    Q    So Luis Guerrero is the one who
```

Page 304

```
 1           V. GHOBRIAL
 2   said she was suspended?
 3    A    Yes.
 4    Q    And that happened on February
 5   23?
 6    A    After her interview, yes.
 7    Q    After her interview with Troy
 8   Hennessy?
 9    A    Loss prevention, yes.
10    Q    About how long after her
11   interview with Troy Hennessy did Luis
12   Guerrero tell Plaintiff that she was
13   suspended?
14    A    I'm not sure.
15    Q    Three hours?
16    A    Not sure.
17    Q    Five minutes?
18    A    Not sure.
19    Q    When did you decide to suspend
20   Plaintiff?
21    A    After the interview.
22    Q    How long after the interview did
23   you decide to suspend Plaintiff?
24    A    After I had conversations with
25   people involved.
```

Page 305

```
 1           V. GHOBRIAL
 2    Q    What people involved?
 3    A    Luis, Troy, Robert Petrarchi.
 4    Q    Anyone else?
 5    A    I believe that's it.
 6    Q    And you spoke with Troy
 7   specifically about suspending the
 8   Plaintiff, about the decision to suspend
 9   the Plaintiff?
10    A    No.
11    Q    So when you just said the people
12   who were involved, you didn't mean to say
13   that you spoke with Troy specifically
14   about suspending Plaintiff?
15    A    I had him read me the statement
16   and send me some paperwork.
17    Q    What statement?
18    A    Her statement.  Ms. Washington's
19   statement.
20    Q    You had Troy read you
21   Plaintiff's statement?
22    A    Yes, and send it to me.
23    Q    How did he send it to you?
24    A    I am not sure.  I believe
25   through e-mail -- oh, no.  I am not sure.
```

Page 306

```
 1           V. GHOBRIAL
 2   I think he read it to me and then came to
 3   my office and handed it to me.  I am not
 4   sure.
 5    Q    Understood, but how did he read
 6   it to you, over the phone?
 7    A    Yes.
 8    Q    Why did he read it to you if he
 9   apparently was already in the office and
10   could have handed it to you?
11        MR. WARSHAW:  Objection to
12   form.
13    A    He was in the store, not in my
14   office.
15    Q    But he -- was your office in the
16   store?
17    A    No.
18    Q    Where was your office?
19    A    40 Wall Street in New York.
20    Q    So Troy on February 22 went from
21   Ciera Washington's store all the way down
22   to Wall Street to your office to hand you
23   her voluntary statement?
24    A    Everything.  To hand me
25   everything including the video again.  To
```